# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  7:14-cv-00014 |
| | § | |
| HTC CORPORATION, | § | |
| HTC AMERICA, INC., | § | |
| LG ELECTRONICS, INC., | § | |
| LG ELECTRONICS USA, INC., | § | |
| LG ELECTRONICS MOBILECOMM | § | JURY TRIAL DEMANDED |
| USA, INC., | § | |
| MOTOROLA MOBILITY LLC, | § | |
| APPLE INC., and | § | |
| TWITTER INC., | § | |
| | § | |
| **Defendants.** | § | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Summit 6 LLC ("Summit 6") files this Original Complaint for Patent Infringement against Defendants HTC Corporation ("HTC Corp."), HTC America, Inc. ("HTC America"), LG Electronics, Inc. ("LGE Inc."), LG Electronics USA, Inc. ("LGE USA"), LG Electronics Mobilecomm USA, Inc. ("LGE MobileComm"), Motorola Mobility LLC ("Motorola"), Apple Inc. ("Apple"), and Twitter Inc. ("Twitter") (HTC Corp., HTC America, LGE Inc., LGE USA, LGE MobileComm, Motorola, Apple, and Twitter, collectively "Defendants") and allege as follows:

## BACKGROUND

1.      For approximately two decades, Summit 6 and its predecessor companies PictureWorks and AdMission have pioneered the development of numerous digital content technologies, resulting in several patents.  When the first digital cameras came to the U.S. market in the early 1990s, the inventors, while working at a company called PictureWorks, developed

image-transfer software that allowed users to transfer pictures from their cameras to their computers.  Through its partnerships with Kodak, Casio, Epson, Fuji and others, PictureWorks was able to bundle its software with the leading digital imagery hardware of the day, reaching users all across America.

2.      Although their camera-to-computer software was successful, the inventors recognized the next hurdle users would face: sharing images with others over a network. Noticing the difficulties the digital imaging industry encountered on this front, the inventors devoted their expertise to developing a simple solution to this problem.  This solution culminated in the ideas patented in U.S. Patent Nos. 6,895,557 ("the '557 Patent"), 7,765,482 ("the '482 Patent"), and 8,612,515 ("the '515 Patent") (collectively "the Patents-in-Suit").

3.      Summit 6's patented ideas help countless users and companies easily and efficiently transfer digital content such as digital photos.   Websites and smartphone manufacturers such as eBay, Facebook, The Dallas Morning News, Cars.com, Yellowpages.com, The New York Times, Photobucket, and Blackberry (formerly Research in Motion) have all recognized the value associated with Summit 6's technology and have taken licenses to the Patents-in-Suit.  And in April 2013, a jury validated Summit 6's innovation by finding that the multimedia messaging service ("MMS") on Samsung's phones infringed Summit 6's '482 Patent.

## **PARTIES**

4.      Plaintiff Summit 6 is a Delaware limited liability company with its principal place of business at 14850 Quorum Drive, Suite 325, Dallas, Texas 75254.

5.      Defendant HTC Corp. is a Taiwanese corporation with its principal place of business at No. 88, Section 3, Zhongxing Road, Xindian District, New Taipei City, 231, Taiwan. HTC Corp. designs, manufactures, uses, imports into the United States, sells, and/or offers for

sale in the United States cell phones, tablets, and other computing devices that obtain digital content, pre-process it, and transmit it to another device, server, or location via multimedia messages ("MMS messages"), applications, Application Programing Interfaces ("APIs"), and/or functionality added to the native content sharing options (collectively "upload services and/or devices"). HTC Corp.'s upload services and/or devices are marketed, offered for sale, and/or sold throughout the United States, including within this District. HTC Corp. can be served with process by way of letters rogatory, in accordance with Fed. R. Civ. P. 4(f).

6.    Defendant HTC America is a Washington corporation with its principal place of business at 13920 SE Eastgate Way, Suite 400, Bellevue, Washington 98005. HTC America designs, manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States cell phones, tablets, and other computing devices that obtain digital content, pre-process it, and transmit it to another device, server, or location via multimedia messages ("MMS messages"), applications, Application Programing Interfaces ("APIs"), and/or functionality added to the native content sharing options (collectively "upload services and/or devices"). HTC America's upload services and/or devices are marketed, offered for sale, and/or sold throughout the United States, including within this District. HTC America can be served with process by serving National Registered Agents, Inc., 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

7.    Defendant LGE Inc. is a Korean corporation with its principal place of business at LG Twin Tower 128, Yeoui-daero, Yengdeungpo-gu, Seoul 150-721, Korea. LGE Inc. designs, manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States cell phones, tablets, and other computing devices that obtain digital content, pre-process it, and transmit it to another device, server, or location via multimedia messages ("MMS messages"), applications, Application Programing Interfaces ("APIs"), and/or functionality added to the native content sharing options (collectively "upload services and/or devices"). LGE

Inc.'s upload services and/or devices are marketed, offered for sale, and/or sold throughout the United States, including within this District. LGE Inc. can be served with process, by serving in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, in accordance with Fed. R. Civ. P. 4(f).

8.    Defendant LGE USA is a Delaware corporation with its principal place of business at 920 Sylvan Avenue, Englewood Cliffs, New Jersey 07632. LGE USA designs, manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States cell phones, tablets, and other computing devices that obtain digital content, pre-process it, and transmit it to another device, server, or location via multimedia messages ("MMS messages"), applications, Application Programing Interfaces ("APIs"), and/or functionality added to the native content sharing options (collectively "upload services and/or devices"). LGE USA's upload services and/or devices are marketed, offered for sale, and/or sold throughout the United States, including within this District. LGE USA can be served with process by serving United States Corporation Company, 211 E. 7th Street Suite 620, Austin, Texas 78701.

9.    Defendant LGE MobileComm is a California corporation with its principal place of business at 10101 Old Grove Road, San Diego, CA 92131. LGE MobileComm designs, manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States cell phones, tablets, and other computing devices that obtain digital content, pre-process it, and transmit it to another device, server, or location via multimedia messages ("MMS messages"), applications, Application Programing Interfaces ("APIs"), and/or functionality added to the native content sharing options (collectively "upload services and/or devices"). LGE MobileComm's upload services and/or devices are marketed, offered for sale, and/or sold throughout the United States, including within this District. LGE MobileComm can be served

with process by serving National Registered Agents, Inc., 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

10.    Defendant Motorola is a Delaware corporation with its principal place of business at 600 North U.S. Highway 45, Libertyville, Illinois 60048.  Motorola designs, manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States cell phones, tablets, and other computing devices that obtain digital content, pre-process it, and transmit it to another device, server, or location via multimedia messages ("MMS messages"), applications, Application Programing Interfaces ("APIs"), and/or functionality added to the native content sharing options (collectively "upload services and/or devices").  Motorola's upload services and/or devices are marketed, offered for sale, and/or sold throughout the United States, including within this District.  Motorola can be served with process by serving CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

11.    Defendant Apple is a California corporation, with its principal place of business at 1 Infinite Loop, M/S 38-3TX, Cupertino, California 95014.  Apple designs, manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States cell phones, tablets, and other computing devices that obtain digital content, pre-process it, and transmit it to another device, server, or location via multimedia messages ("MMS messages"), iMessages, applications, Application Programing Interfaces ("APIs"), and/or functionality added to the native content sharing options (collectively "upload services and/or devices").  Apple's upload services and/or devices are marketed, offered for sale, and/or sold throughout the United States, including within this District.  Apple can be served with process by serving CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

12.    Defendant Twitter is a Delaware corporation, with its principal place of business at 1355 Market Street, Suite 900, San Francisco, California 94103.    Twitter designs,

manufactures, uses, imports into the United States, sells, and/or offers for sale in the United States services, servers, applications, Application Programming Interfaces ("APIs"), and/or functionality added to the native content sharing options within cell phones, tablets, and other computing devices that transmit pre-processing parameters; receive pre-processed digital content; obtain digital content, pre-process it, and transmit it to another device, server, or location; and/or distribute pre-processed digital content to a another device, server, or location (collectively "upload services"). Twitter makes, uses, sells, imports, and/or offers applications, APIs, and/or functionality added to the native content sharing options for devices from co-defendants HTC Corp., HTC America, LGE Inc., LGE USA, LGE MobileComm, Motorola, and Apple. Twitter's upload services are marketed, offered for sale, and/or sold throughout the United States, including within this District. Twitter can be served with process by way of the Texas Secretary of State, in accordance with Fed. R. Civ. P. 4(h).

## JURISDICTION AND VENUE

13.     This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq*., including 35 U.S.C. §§ 271 and 281-285. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1338.

14.     Venue is proper in the Wichita Falls Division of the Northern District of Texas pursuant to 28 U.S.C. §§ 1391 and 1400(b).

15.     This Court has personal jurisdiction over Defendants. Defendants have conducted and do conduct business within the State of Texas. Defendants, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), ship, distribute, offer for sale, sell, design, manufacture, and advertise products and/or services that infringe the Patents-in-Suit in the United States, the State of Texas, and the Northern District of Texas. Defendants, directly and through subsidiaries and intermediaries, have purposefully and voluntarily placed one or

more of their infringing upload services and/or devices, as described below, into the stream of commerce with the expectation that they will be purchased and used by consumers in the Northern District of Texas. These infringing upload services and/or devices have been and continue to be purchased and used by consumers in the Northern District of Texas. Defendants have committed acts of patent infringement with the State of Texas and, more particularly, within the Northern District of Texas.

## THE ASSERTED PATENTS

16.     On May 17, 2005, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 6,895,557, entitled "Web-Based Media Submission Tool," to Lisa T. Wood, Scott M. Lewis, and Robin T. Fried. Summit 6 is the owner by assignment of the '557 Patent and possesses all rights of recovery under the '557 Patent. A true and correct copy of the '557 Patent is attached hereto as Exhibit A and incorporated herein by reference.

17.     On July 27, 2010, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,765,482, entitled "Web-Based Media Submission Tool," to Lisa T. Wood, Scott M. Lewis, and Robin T. Fried. Summit 6 is the owner by assignment of the '482 Patent and possesses all rights of recovery under the '482 Patent. A true and correct copy of the '482 Patent is attached hereto as Exhibit B and incorporated herein by reference.

18.     On December 17, 2013, The U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,612,515, entitled "System, Method, and Apparatus for Media Submission," to Lisa T. Wood, Scott M. Lewis, and Robin T. Fried. Summit 6 is the owner by assignment of the '515 Patent and possesses all rights of recovery under the '515 Patent. A true and correct copy of the '515 Patent is attached hereto as Exhibit C and incorporated herein by reference.

19.     The Patents-in-Suit are valid and enforceable.

McKool 950190v2

## GENERAL ALLEGATIONS

20.     Defendants have and continue to make, use, import into the United States, market, offer for sale, and/or sell in the United States upload services and/or devices that infringe the Patents-in-Suit, and/or induce or contribute to the infringement of the Patents-in-Suit by others, including other co-defendants and end users.

21.     Summit 6 has been damaged as a result of Defendants' infringing conduct. Defendants are therefore liable to Summit 6 in an amount that adequately compensates Summit 6 for Defendants' infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT I

### Infringement of the '482 Patent

22.     Summit 6 repeats and realleges the allegations in paragraphs 1-21 as though fully set forth herein.

### HTC Corp. Infringes the '482 Patent

23.     HTC Corp. has and continues to directly infringe the '482 Patent by making, using, selling, offering for sale, or importing into the United States products and/or methods covered by at least claims 1, 4, 6, 8-10, 12-14, 16-19, 21-23, 25, 35, 38, 40-42, 44-46, and 49-50 of the '482 Patent (hereinafter the "'482 HTC Asserted Claims"), including, but not limited to HTC Corp.'s upload services and/or devices.  The accused upload services and/or devices that infringe one or more of the above-listed claims include, but are not limited to, at least the following: Desire, One, One max, One mini, Droid DNA, Evo 4G LTE, Droid Incredible 4G LTE, One SV, One X+, Desire C, One X, One VX, One S, One V, EVO Design 4G, Vivid, Rezound, Rhyme, Sensation, Hero S, and any other HTC Corp. mobile device capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or

location; the HTC Messaging Application, including its MMS functionality; HTC Corp.'s Messaging-related APIs; the integrated Twitter content upload functionality; and the MMS-to-Twitter functionality.  Further discovery may reveal additional infringing products, models, and/or functionality.

24.    HTC Corp. makes, uses, sells, offers for sale, or imports into the United States these upload services and/or devices and thus directly infringes at least the '482 HTC Asserted Claims.  Upon information and belief, HTC Corp. also uses these upload services and/or devices via its internal use and testing in the United States, directly infringing each of the '482 HTC Asserted Claims.  HTC Corp. also directly infringes the '482 HTC Asserted Claims when its mobile devices execute the code responsible for the operation of the accused upload services and/or devices.

25.    HTC Corp. has and continues to induce and contribute to infringement of the '482 Patent by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by the '482 HTC Asserted Claims, including, but not limited to HTC Corp.'s upload services and/or devices listed above.  HTC Corp. provides these upload services and/or devices to others, such as manufacturers, customers, resellers, and end-use consumers who in turn use, offer for sale, or sell in the United States these upload services and/or devices that infringe the '482 HTC Asserted Claims.

26.    HTC Corp. indirectly infringes the '482 Patent by inducing infringement by others, such as manufacturers, customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, customers, resellers, and/or end-use customers of the accused upload services and/or devices.  HTC Corp. received notice of the '482 Patent at least as of the date this lawsuit was filed.  HTC Corp. provides the accused upload

services and/or devices to others, such as manufacturers, customers, resellers, and/or end-use customers, in the United States, who, in turn, offer for sale, sell, or use these upload services and/or devices to infringe the '482 Patent. Through its manufacture and sale of the accused upload services and/or devices, HTC Corp. specifically intended its manufacturers, customers, resellers, and/or end-use customers to infringe the '482 Patent.

27.    HTC Corp. specifically intends for others, such as manufacturers, customers, resellers, and end-use customers, to directly infringe the '482 HTC Asserted Claims in the United States. For example, HTC Corp. provides instructions to manufacturers, customers, resellers and end-use customers regarding the use and operation of HTC Corp.'s products in an infringing way. Such instructions include at least "HTC Desire 601 User Guide,"[1] "Your HTC One User Guide,"[2] "HTC One Max User Guide,"[3] and other similar user guides and support documentation available on HTC Corp.'s support website.[4] When manufacturers, customers, resellers, and end-use customers follow such instructions, they directly infringe the '482 HTC Asserted Claims. HTC Corp. knows that by providing such instructions, manufacturers, customers, resellers, and end-use customers follow those instructions, and directly infringe the '482 HTC Asserted Claims. HTC Corp. thus knows that its actions actively induce infringement. HTC Corp. performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '482 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

28.    HTC Corp. indirectly infringes the '482 Patent, by contributing to infringement by others, such as customers, resellers, and end-use customers, in accordance with 35 U.S.C. §

---

[1] Available on HTC Corp.'s website at
http://dl4.htc.com/web_materials/Manual/HTC_Desire_601/HTC_Desire_601_Virgin_Mobile_User_Guide.pdf.
[2] Available on HTC Corp.'s website at
http://dl4.htc.com/web_materials/Manual/HTC_One/HTC_One_ATT_User_Guide.pdf.
[3] Available on HTC Corp.'s website at
http://dl4.htc.com/web_materials/Manual/HTC_One_max/HTC_One_max_Sprint_User_Guide.pdf.
[4] *See* http://www.htc.com/us/support/.

271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the customers, resellers, and/or end-use customers of the accused upload services and/or devices.  HTC Corp. received notice of the '482 Patent at least as of the date this lawsuit was filed.

29.    HTC Corp.'s upload services and/or devices allow for the obtaining of digital content, pre-processing it, and transmitting it to another device, server, or location.  When the accused upload services and/or devices are used to send digital content of a certain size and/or dimension over carrier networks and/or wi-fi networks, the accused upload services and/or devices must necessarily pre-process and transmit digital media in an infringing manner.  Upon information and belief, the accused upload services and/or devices cannot operate in an acceptable manner absent the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location.

30.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is especially made or especially adapted to operate on HTC Corp.'s upload services and/or devices.

31.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is not a staple article or commodity of commerce and that its use is required for operation of the accused upload services and/or devices.   Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

32.    HTC Corp.'s accused upload services and/or devices, with the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location, are each a material part of the invention of the '482 Patent and are especially made for the infringing manufacturing, offering for sale, sales, and use of the accused upload services and/or devices.

The accused upload services and/or devices are especially made or adapted to infringe the '482 Patent. Because the manufacturing, offering for sale, sales, and use of the accused upload services and/or devices infringe the '482 Patent, HTC Corp.'s sales of its infringing products have no substantial non-infringing uses.

33.     Accordingly, a reasonable inference is that HTC Corp. offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '482 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

34.     HTC Corp.'s acts have caused, and unless restrained and enjoined, will continue to cause irreparable injury and damage to Summit 6 and its affiliates for which there is no adequate remedy at law. Unless enjoined by this Court, HTC Corp. will continue to infringe the '482 Patent.

## HTC America Infringes the '482 Patent

35.     HTC America has and continues to directly infringe the '482 Patent by making, using, selling, offering for sale, or importing into the United States products and/or methods covered by the '482 HTC Asserted Claims, including, but not limited to HTC America's upload services and/or devices. The accused upload services and/or devices that infringe one or more of the above-listed claims include, but are not limited to, at least the following: Desire, One, One max, One mini, Droid DNA, Evo 4G LTE, Droid Incredible 4G LTE, One SV, One X+, Desire C, One X, One VX, One S, One V, EVO Design 4G, Vivid, Rezound, Rhyme, Sensation, Hero S, and any other HTC America mobile device capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or location; the HTC Messaging

Application, including its MMS functionality; HTC America's Messaging-related APIs; the integrated Twitter content upload functionality; and the MMS-to-Twitter functionality. Further discovery may reveal additional infringing products, models, and/or functionality.

36.    HTC America makes, uses, sells, offers for sale, or imports into the United States these upload services and/or devices and thus directly infringes at least the '482 HTC Asserted Claims. Upon information and belief, HTC America also uses these upload services and/or devices via its internal use and testing in the United States, directly infringing each of the '482 HTC Asserted Claims. HTC America also directly infringes the '482 HTC Asserted Claims when its mobile devices execute the code responsible for the operation of the accused upload services and/or devices.

37.    HTC America has and continues to induce and to contribute to infringement of the '482 Patent by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by the '482 HTC Asserted Claims, including, but not limited to HTC America's upload services and/or devices listed above. HTC America provides these upload services and/or devices to others, such as manufacturers, customers, resellers, and end-use consumers who in turn use, offer for sale, or sell in the United States these upload services and/or devices that infringe the '482 HTC Asserted Claims.

38.    HTC America indirectly infringes the '482 Patent by inducing infringement by others, such as manufacturers, customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, customers, resellers, and/or end-use customers of the accused upload services and/or devices. HTC America received notice of the '482 Patent at least as of the date this lawsuit was filed. HTC America provides at least the accused upload services and/or devices to others, such as manufacturers, customers, resellers,

and/or end-use customers, in the United States, who, in turn, offer for sale, sell, or use these upload services and/or devices to infringe the '482 Patent. Through its manufacture and sale of the accused upload services and/or devices, HTC America specifically intended its manufacturers, customers, resellers, and/or end-use customers to infringe the '482 Patent.

39. HTC America specifically intends for others, such as manufacturers, customers, resellers, and end-use customers, to directly infringe the '482 HTC Asserted Claims in the United States. For example, HTC America provides instructions to manufacturers, customers, resellers and end-use customers regarding the use and operation of HTC America's products in an infringing way. Such instructions include at least "HTC Desire 601 User Guide,"[5] "Your HTC One User Guide,"[6] "HTC One Max User Guide,"[7] and other similar user guides and support documentation available on HTC America's support website.[8] When manufacturers, customers, resellers, and end-use customers follow such instructions, they directly infringe the '482 HTC Asserted Claims. HTC America knows that by providing such instructions, manufacturers, customers, resellers, and end-use customers follow those instructions, and directly infringe the '482 HTC Asserted Claims. HTC America thus knows that its actions actively induce infringement. HTC America performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '482 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

40. HTC America indirectly infringes the '482 Patent, by contributing to infringement by others, such as customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of

---

[5] Available on HTC America's website at
http://dl4.htc.com/web_materials/Manual/HTC_Desire_601/HTC_Desire_601_Virgin_Mobile_User_Guide.pdf.
[6] Available on HTC America's website at
http://dl4.htc.com/web_materials/Manual/HTC_One/HTC_One_ATT_User_Guide.pdf.
[7] Available on HTC America's website at
http://dl4.htc.com/web_materials/Manual/HTC_One_max/HTC_One_max_Sprint_User_Guide.pdf.
[8] *See* http://www.htc.com/us/support/.

activities performed by the customers, resellers, and/or end-use customers of the accused upload services and/or devices.  HTC America received notice of the '482 Patent at least as of the date this lawsuit was filed.

41.    HTC America's upload services and/or devices allow for the obtaining of digital content, pre-processing it, and transmitting it to another device, server, or location.  When the accused upload services and/or devices are used to send digital content of a certain size and/or dimension over carrier networks and/or wi-fi networks, the accused upload services and/or devices must necessarily pre-process and send digital media in an infringing manner.  Upon information and belief, the accused upload services and/or devices cannot operate in an acceptable manner absent the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location.

42.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is especially made or especially adapted to operate on HTC America's upload services and/or devices.

43.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is not a staple article or commodity of commerce and that its use is required for operation of the accused upload services and/or devices.   Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

44.    HTC America's accused upload services and/or devices, with the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location, are each a material part of the invention of the '482 Patent and are especially made for the infringing manufacturing, offering for sale, sales, and use of the accused upload services and/or devices.

The accused upload services and/or devices are especially made or adapted to infringe the '482 Patent. Because the manufacturing, offering for sale, sales, and use of the accused upload services and/or devices infringe the '482 Patent, HTC America's sales of its infringing products have no substantial non-infringing uses.

45.    Accordingly, a reasonable inference is that HTC America offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '482 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

46.    HTC America's acts have caused, and unless restrained and enjoined, will continue to cause irreparable injury and damage to Summit 6 and its affiliates for which there is no adequate remedy at law. Unless enjoined by this Court, HTC America will continue to infringe the '482 Patent.

### LGE Inc. Infringes the '482 Patent

47.    LGE Inc. has and continues to directly infringe the '482 Patent by making, using, selling, offering for sale, or importing into the United States products and/or methods covered by claims 1, 4, 6, 8-10, 12-14, 16-19, 21-23, 25, 35, 38, 40-42, 44-46, and 49-50 of the '482 Patent (hereinafter the "'482 LGE Asserted Claims"), including, but not limited to LGE Inc.'s upload services and/or devices. The accused upload services and/or devices that infringe one or more of the above-listed claims include, but are not limited to, at least the following: D820 Red, Optimus F3Q D520, G Flex AT&T D950, G Flex T-Mobile D959, G Flex Sprint LS995, G2 Verizon VS980 White, D820 T-Mobile Black, D820 Sprint Black, D820 Sprint White, G2 Verizon VS980, G2 AT&T D800, G2 T-Mobile D801, G2 Sprint LS980, G2 Sprint LS980 White, G2

AT&T D800 White, D2 T-Mobile D801 White, Wine III UN530, Optimus F6 MS500, Optimus F6 D500, Enact VS890, Exalt VN360, Optimus F3 MS659, Optimus F3 P659, Optimus F3 VM720, Rumor Reflex S LN272S Blue, Rumor Reflex S LN272S Red, Fluid AN160, Optimus F7 LG870, Optimus F3 LS720 Titanium Silver, Optimus F7 US780, Optimus F3 LS720 Purple, LGE960W, Optimus F5 AS870, Optimus G Pro E980, Optimus G Pro E980 White, Envoy II UN160, Optimus Exceed VS840PP, Revere 2 VN150S, Cosmos 3 VN251S, Optimus Zone VS410PP, Lucid2 VS870, Spirit 4G MS870, LGE960, Optimus REGARD LW770, Mach LS860, Optimus G LS970, Optimus L9 P769, Freedom UN272, Optimus G E970, Venice LG730, Escape P870, Spectrum 2 VS930, Splendor US730, Intuition VS950, Motion 4G MS770, Optimus Zip LGL75C, Optimus Plus AS695, Optimus Elite VM696, Elite LS696, Viper LS840, Xpression C395, A340, Rumor Reflex LG272, Rumor Reflex LN272, Optimus M+ MS695, Lucid VS840, Spectrum VS920, Connect 4G MS840, Extravert VN271, Optimus Net L45C, and any other LGE Inc. mobile device capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or location; the LG Messaging Application, including its MMS functionality; LGE Inc.'s Messaging-related APIs; the integrated Twitter content upload functionality; and the MMS-to-Twitter functionality. Further discovery may reveal additional infringing products, models, and/or functionality.

48.    LGE Inc. makes, uses, sells, offers for sale, or imports into the United States these upload services and/or devices and thus directly infringes at least the '482 LGE Asserted Claims. Upon information and belief, LGE Inc. also uses these upload services and/or devices via its internal use and testing in the United States, directly infringing each of the '482 LGE Asserted Claims. LGE Inc. also directly infringes the '482 LGE Asserted Claims when its mobile devices execute the code responsible for the operation of the accused upload services and/or devices.

49.    LGE Inc. has and continues to induce and to contribute to infringement of the '482 Patent by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by the '482 LGE Asserted Claims, including, but not limited to LGE Inc.'s upload services and/or devices listed above.  LGE Inc. provides these upload services and/or devices to others, such as manufacturers, customers, resellers, and end-use consumers who in turn use, offer for sale, or sell in the United States these upload services and/or devices that infringe the '482 LGE Asserted Claims.

50.    LGE Inc. indirectly infringes the '482 Patent by inducing infringement by others, such as manufacturers, customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, customers, resellers, and/or end-use customers of the accused upload services and/or devices.  LGE Inc. received notice of the '482 Patent at least as of the date this lawsuit was filed.  LGE Inc. provides at least the accused upload services and/or devices to others, such as manufacturers, customers, resellers, and/or end-use customers, in the United States, who, in turn, offer for sale, sell, or use these upload services and/or devices to infringe the '482 Patent.  Through its manufacture and sale of the accused upload services and/or devices, LGE Inc. specifically intended its manufacturers, customers, resellers, and/or end-use customers to infringe the '482 Patent.

51.    LGE Inc. specifically intends for others, such as manufacturers, customers, resellers, and end-use customers, to directly infringe the '482 LGE Asserted Claims in the United States.  For example, LGE Inc. provides instructions to manufacturers, customers, resellers and end-use customers regarding the use and operation of LGE Inc.'s products in an infringing way.  Such instructions include at least "LG G2 User Guide,"[9] "User Guide, LG Optimus F3,"[10]

---

[9] Available on LGE Inc.'s website at http://www.lg.com/us/support/software-manuals#.

"Owner's Manual, LG Envoy II,"[11] and other similar user guides and support documentation available on LGE Inc.'s support website.[12]  When manufacturers, customers, resellers, and end-use customers follow such instructions, they directly infringe the '482 LGE Asserted Claims.  LGE Inc. knows that by providing such instructions, manufacturers, customers, resellers, and end-use customers follow those instructions, and directly infringe the '482 LGE Asserted Claims.  LGE Inc. thus knows that its actions actively induce infringement.  LGE Inc. performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '482 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

52.    LGE Inc. indirectly infringes the '482 Patent, by contributing to infringement by others, such as customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the customers, resellers, and/or end-use customers of the accused upload services and/or devices.  LGE Inc. received notice of the '482 Patent at least as of the date this lawsuit was filed.

53.    LGE Inc.'s upload services and/or devices allow for the obtaining of digital content, pre-processing it, and transmitting it to another device, server, or location.  When the accused upload services and/or devices are used to send digital content of a certain size and/or dimension over carrier networks and/or wi-fi networks, the accused upload services and/or devices must necessarily pre-process and send digital media in an infringing manner.  Upon information and belief, the accused upload services and/or devices cannot operate in an

---

[10] Available on LGE Inc.'s website at http://www.lg.com/us/support/software-manuals#.
[11] Available on LGE Inc.'s website at http://www.lg.com/us/support/software-manuals#.
[12] *See* http://www.lg.com/us/support.

acceptable manner absent the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location.

54.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is especially made or especially adapted to operate on LGE Inc.'s upload services and/or devices.

55.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is not a staple article or commodity of commerce and that its use is required for operation of the accused upload services and/or devices.    Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

56.    LGE Inc.'s accused upload services and/or devices, with the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location, are each a material part of the invention of the '482 Patent and are especially made for the infringing manufacturing, offering for sale, sales, and use of the accused upload services and/or devices. The accused upload services and/or devices are especially made or adapted to infringe the '482 Patent.    Because the manufacturing, offering for sale, sales, and use of the accused upload services and/or devices infringe the '482 Patent, LGE Inc.'s sales of its infringing products have no substantial non-infringing uses.

57.    Accordingly, a reasonable inference is that LGE Inc. offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '482 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

58.    LGE Inc.'s acts have caused, and unless restrained and enjoined, will continue to cause irreparable injury and damage to Summit 6 and its affiliates for which there is no adequate remedy at law.   Unless enjoined by this Court, LGE Inc. will continue to infringe the '482 Patent.

### LGE USA Infringes the '482 Patent

59.    LGE USA has and continues to directly infringe the '482 Patent by making, using, selling, offering for sale, or importing into the United States products and/or methods covered by the '482 LGE Asserted Claims, including, but not limited to LGE USA's upload services and/or devices.  The accused upload services and/or devices that infringe one or more of the above-listed claims include, but are not limited to, at least the following: D820 Red, Optimus F3Q D520, G Flex AT&T D950, G Flex T-Mobile D959, G Flex Sprint LS995, G2 Verizon VS980 White, D820 T-Mobile Black, D820 Sprint Black, D820 Sprint White, G2 Verizon VS980, G2 AT&T D800, G2 T-Mobile D801, G2 Sprint LS980, G2 Sprint LS980 White, G2 AT&T D800 White, D2 T-Mobile D801 White, Wine III UN530, Optimus F6 MS500, Optimus F6 D500, Enact VS890, Exalt VN360, Optimus F3 MS659, Optimus F3 P659, Optimus F3 VM720, Rumor Reflex S LN272S Blue, Rumor Reflex S LN272S Red, Fluid AN160, Optimus F7 LG870, Optimus F3 LS720 Titanium Silver, Optimus F7 US780, Optimus F3 LS720 Purple, LGE960W, Optimus F5 AS870, Optimus G Pro E980, Optimus G Pro E980 White, Envoy II UN160, Optimus Exceed VS840PP, Revere 2 VN150S, Cosmos 3 VN251S, Optimus Zone VS410PP, Lucid2 VS870, Spirit 4G MS870, LGE960, Optimus REGARD LW770, Mach LS860, Optimus G LS970, Optimus L9 P769, Freedom UN272, Optimus G E970, Venice LG730, Escape P870, Spectrum 2 VS930, Splendor US730, Intuition VS950, Motion 4G MS770, Optimus Zip LGL75C, Optimus Plus AS695, Optimus Elite VM696, Elite LS696, Viper LS840, Xpression C395, A340, Rumor Reflex LG272, Rumor Reflex LN272, Optimus M+

MS695, Lucid VS840, Spectrum VS920, Connect 4G MS840, Extravert VN271, Optimus Net L45C, and any other LGE USA mobile device capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or location; the LG Messaging Application, including its MMS functionality; LG USA's Messaging-related APIs; the integrated Twitter content upload functionality; and the MMS-to-Twitter functionality. Further discovery may reveal additional infringing products, models, and/or functionality.

60.    LGE USA makes, uses, sells, offers for sale, or imports into the United States these upload services and/or devices and thus directly infringes at least the '482 LGE Asserted Claims. Upon information and belief, LGE USA also uses these upload services and/or devices via its internal use and testing in the United States, directly infringing each of the '482 LGE Asserted Claims. LGE USA also directly infringes the '482 LGE Asserted Claims when its mobile devices execute the code responsible for the operation of the accused upload services and/or devices.

61.    LGE USA has and continues to induce and to contribute to infringement of the '482 Patent by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by the '482 LGE Asserted Claims, including, but not limited to LGE USA's upload services and/or devices listed above. LGE USA provides these upload services and/or devices to others, such as manufacturers, customers, resellers, and end-use consumers who in turn use, offer for sale, or sell in the United States these upload services and/or devices that infringe the '482 LGE Asserted Claims.

62.    LGE USA indirectly infringes the '482 Patent by inducing infringement by others, such as manufacturers, customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, customers, resellers, and/or end-use

customers of the accused upload services and/or devices.  LGE USA received notice of the '482 Patent at least as of the date this lawsuit was filed.  LGE USA provides at least the accused upload services and/or devices to others, such as manufacturers, customers, resellers, and/or end-use customers, in the United States, who, in turn, offer for sale, sell, or use these upload services and/or devices to infringe the '482 Patent.  Through its manufacture and sale of the accused upload services and/or devices, LGE USA specifically intended its manufacturers, customers, resellers, and/or end-use customers to infringe the '482 Patent.

63.     LGE USA specifically intends for others, such as manufacturers, customers, resellers, and end-use customers, to directly infringe the '482 LGE Asserted Claims in the United States.  For example, LGE USA provides instructions to manufacturers, customers, resellers and end-use customers regarding the use and operation of LGE USA's products in an infringing way.  Such instructions include at least "LG G2 User Guide,"[13] "User Guide, LG Optimus F3,"[14] "Owner's Manual, LG Envoy II,"[15] and other similar user guides and support documentation available on LGE USA's support website.[16]  When manufacturers, customers, resellers, and end-use customers follow such instructions, they directly infringe the '482 LGE Asserted Claims.  LGE USA knows that by providing such instructions, manufacturers, customers, resellers, and end-use customers follow those instructions, and directly infringe the '482 LGE Asserted Claims.  LGE USA thus knows that its actions actively induce infringement.  LGE USA performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '482 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

---

[13] Available on LGE USA's website at http://www.lg.com/us/support/software-manuals#.
[14] Available on LGE USA's website at http://www.lg.com/us/support/software-manuals#.
[15] Available on LGE USA's website at http://www.lg.com/us/support/software-manuals#.
[16] *See* http://www.lg.com/us/support.

64.     LGE USA indirectly infringes the '482 Patent, by contributing to infringement by others, such as customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the customers, resellers, and/or end-use customers of the accused upload services and/or devices.  LGE USA received notice of the '482 Patent at least as of the date this lawsuit was filed.

65.     LGE USA's upload services and/or devices allow for the obtaining of digital content, pre-processing it, and transmitting it to another device, server, or location.  When the accused upload services and/or devices are used to send digital content of a certain size and/or dimension over carrier networks and/or wi-fi networks, the accused upload services and/or devices must necessarily pre-process and send digital media in an infringing manner.  Upon information and belief, the accused upload services and/or devices cannot operate in an acceptable manner absent the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location.

66.     A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is especially made or especially adapted to operate on LGE USA's upload services and/or devices.

67.     A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is not a staple article or commodity of commerce and that its use is required for operation of the accused upload services and/or devices.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

68.     LGE USA's accused upload services and/or devices, with the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location, are each a

material part of the invention of the '482 Patent and are especially made for the infringing manufacturing, offering for sale, sales, and use of the accused upload services and/or devices. The accused upload services and/or devices are especially made or adapted to infringe the '482 Patent.  Because the manufacturing, offering for sale, sales, and use of the accused upload services and/or devices infringe the '482 Patent, LGE USA's sales of its infringing products have no substantial non-infringing uses.

69.     Accordingly, a reasonable inference is that LGE USA offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '482 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

70.     LGE USA's acts have caused, and unless restrained and enjoined, will continue to cause irreparable injury and damage to Summit 6 and its affiliates for which there is no adequate remedy at law.  Unless enjoined by this Court, LGE USA will continue to infringe the '482 Patent.

### LGE MobileComm Infringes the '482 Patent

71.     LGE MobileComm has and continues to directly infringe the '482 Patent by making, using, selling, offering for sale, or importing into the United States products and/or methods covered by the '482 LGE Asserted Claims, including, but not limited to LGE MobileComm's upload services and/or devices.  The accused upload services and/or devices that infringe one or more of the above-listed claims include, but are not limited to, at least the following: D820 Red, Optimus F3Q D520, G Flex AT&T D950, G Flex T-Mobile D959, G Flex Sprint LS995, G2 Verizon VS980 White, D820 T-Mobile Black, D820 Sprint Black, D820

Sprint White, G2 Verizon VS980, G2 AT&T D800, G2 T-Mobile D801, G2 Sprint LS980, G2

Sprint LS980 White, G2 AT&T D800 White, D2 T-Mobile D801 White, Wine III UN530,

Optimus F6 MS500, Optimus F6 D500, Enact VS890, Exalt VN360, Optimus F3 MS659,

Optimus F3 P659, Optimus F3 VM720, Rumor Reflex S LN272S Blue, Rumor Reflex S

LN272S Red, Fluid AN160, Optimus F7 LG870, Optimus F3 LS720 Titanium Silver, Optimus

F7 US780, Optimus F3 LS720 Purple, LGE960W, Optimus F5 AS870, Optimus G Pro E980,

Optimus G Pro E980 White, Envoy II UN160, Optimus Exceed VS840PP, Revere 2 VN150S,

Cosmos 3 VN251S, Optimus Zone VS410PP, Lucid2 VS870, Spirit 4G MS870, LGE960,

Optimus REGARD LW770, Mach LS860, Optimus G LS970, Optimus L9 P769, Freedom

UN272, Optimus G E970, Venice LG730, Escape P870, Spectrum 2 VS930, Splendor US730,

Intuition VS950, Motion 4G MS770, Optimus Zip LGL75C, Optimus Plus AS695, Optimus

Elite VM696, Elite LS696, Viper LS840, Xpression C395, A340, Rumor Reflex LG272, Rumor

Reflex LN272, Optimus M+ MS695, Lucid VS840, Spectrum VS920, Connect 4G MS840,

Extravert VN271, Optimus Net L45C, and any other LGE MobileComm mobile device capable

of obtaining digital content, pre-processing it, and transmitting it to another device, server, or

location; the LG Messaging Application, including its MMS functionality; LGE MobileComm's

Messaging-related APIs; the integrated Twitter content upload functionality; and the MMS-to-

Twitter functionality.  Further discovery may reveal additional infringing products, models,

and/or functionality.

72.    LGE MobileComm makes, uses, sells, offers for sale, or imports into the United

States these upload services and/or devices and thus directly infringes at least the '482 LGE

Asserted Claims.  Upon information and belief, LGE MobileComm also uses these upload

services and/or devices via its internal use and testing in the United States, directly infringing

each of the'482 LGE Asserted Claims.  LGE MobileComm also directly infringes the '482 LGE

Asserted Claims when its mobile devices execute the code responsible for the operation of the accused upload services and/or devices.

73.     LGE MobileComm has and continues to induce and to contribute to infringement of the '482 Patent by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by the '482 LGE Asserted Claims, including, but not limited to LGE MobileComm's upload services and/or devices listed above.  LGE MobileComm provides these upload services and/or devices to others, such as manufacturers, customers, resellers, and end-use consumers who in turn use, offer for sale, or sell in the United States these upload services and/or devices that infringe the '482 LGE Asserted Claims.

74.     LGE MobileComm indirectly infringes the '482 Patent by inducing infringement by others, such as manufacturers, customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, customers, resellers, and/or end-use customers of the accused upload services and/or devices.  LGE MobileComm received notice of the '482 Patent at least as of the date this lawsuit was filed.  LGE MobileComm provides at least the accused upload services and/or devices to others, such as manufacturers, customers, resellers, and/or end-use customers, in the United States, who, in turn, offer for sale, sell, or use these upload services and/or devices to infringe the '482 Patent.  Through its manufacture and sale of the accused upload services and/or devices, LGE MobileComm specifically intended its manufacturers, customers, resellers, and/or end-use customers to infringe the '482 Patent.

75.     LGE MobileComm specifically intends for others, such as manufacturers, customers, resellers, and end-use customers, to directly infringe the '482 LGE Asserted Claims in the United States.  For example, LGE MobileComm provides instructions to manufacturers, customers, resellers and end-use customers regarding the use and operation of LGE

MobileComm's products in an infringing way. Such instructions include at least "LG G2 User Guide,"[17] "User Guide, LG Optimus F3,"[18] "Owner's Manual, LG Envoy II,"[19] and other similar user guides and support documentation available on LGE MobileComm's support website.[20] When manufacturers, customers, resellers, and end-use customers follow such instructions, they directly infringe the '482 LGE Asserted Claims. LGE MobileComm knows that by providing such instructions, manufacturers, customers, resellers, and end-use customers follow those instructions, and directly infringe the '482 LGE Asserted Claims. LGE MobileComm thus knows that its actions actively induce infringement. LGE MobileComm performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '482 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

76.     LGE MobileComm indirectly infringes the '482 Patent, by contributing to infringement by others, such as customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the customers, resellers, and/or end-use customers of the accused upload services and/or devices. LGE MobileComm received notice of the '482 Patent at least as of the date this lawsuit was filed.

77.     LGE MobileComm's upload services and/or devices allow for the obtaining of digital content, pre-processing it, and transmitting it to another device, server, or location. When the accused upload services and/or devices are used to send digital content of a certain size and/or dimension over carrier networks and/or wi-fi networks, the accused upload services and/or devices must necessarily pre-process and send digital media in an infringing manner.

---

[17] Available on LGE MobileComm's website at http://www.lg.com/us/support/software-manuals#.
[18] Available on LGE MobileComm's website at http://www.lg.com/us/support/software-manuals#.
[19] Available on LGE MobileComm's website at http://www.lg.com/us/support/software-manuals#.
[20] *See* http://www.lg.com/us/support.

Upon information and belief, the accused upload services and/or devices cannot operate in an acceptable manner absent the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location.

78.     A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is especially made or especially adapted to operate on LGE MobileComm's upload services and/or devices.

79.     A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is not a staple article or commodity of commerce and that its use is required for operation of the accused upload services and/or devices.   Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

80.     LGE MobileComm's accused upload services and/or devices, with the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location, are each a material part of the invention of the '482 Patent and are especially made for the infringing manufacturing, offering for sale, sales, and use of the accused upload services and/or devices. The accused upload services and/or devices are especially made or adapted to infringe the '482 Patent.  Because the manufacturing, offering for sale, sales, and use of the accused upload services and/or devices infringe the '482 Patent, LGE MobileComm's sales of its infringing products have no substantial non-infringing uses.

81.     Accordingly, a reasonable inference is that LGE MobileComm offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '482 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for

use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

82.     LGE MobileComm's acts have caused, and unless restrained and enjoined, will continue to cause irreparable injury and damage to Summit 6 and its affiliates for which there is no adequate remedy at law.  Unless enjoined by this Court, LGE MobileComm will continue to infringe the '482 Patent.

**Motorola Infringes the '482 Patent**

83.     Motorola has and continues to directly infringe the '482 Patent by making, using, selling, offering for sale, or importing into the United States products and/or methods covered by claims 1, 4, 6, 8-10, 12-14, 16-19, 21-23, 25, 35, 38, 40-42, 44-46, and 49-50 of the '482 Patent (hereinafter the "'482 Motorola Asserted Claims"), including, but not limited to Motorola's upload services and/or devices.  The accused upload services and/or devices that infringe one or more of the above-listed claims include, but are not limited to, at least the following: Moto X, Moto G, Droid Maxx, Droid Ultra, Droid Mini, Moto X Developer Edition (GSM Networks), Moto X Developer Edition Verizon, Droid Maxx Developer Edition, Droid Razr M, Droid Razr Maxx HD, Motorola Photon Q 4G LTE, and any other Motorola mobile device capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or location; the Motorola MMS Application, including its MMS functionality; Motorola's Messaging-related APIs; the integrated Twitter content upload functionality; and the MMS-to-Twitter functionality.  Further discovery may reveal additional infringing products, models, and/or functionality.

84.     Motorola makes, uses, sells, offers for sale, or imports into the United States these upload services and/or devices and thus directly infringes at least the '482 Motorola Asserted Claims.  Upon information and belief, Motorola also uses these upload services and/or devices

via its internal use and testing in the United States, directly infringing each of the '482 Motorola Asserted Claims. Motorola also directly infringes the '482 Motorola Asserted Claims when its mobile devices execute the code responsible for the operation of the accused upload services and/or devices.

85.     Motorola has and continues to induce and to contribute to infringement of the '482 Patent by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by the '482 Motorola Asserted Claims, including, but not limited to Motorola's upload services and/or devices listed above. Motorola provides these upload services and/or devices to others, such as manufacturers, customers, resellers, and end-use consumers who in turn use, offer for sale, or sell in the United States these upload services and/or devices that infringe the '482 Motorola Asserted Claims.

86.     Motorola indirectly infringes the '482 Patent by inducing infringement by others, such as manufacturers, customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, customers, resellers, and/or end-use customers of the accused upload services and/or devices. Motorola received notice of the '482 Patent at least as of the date this lawsuit was filed. Motorola provides at least the accused upload services and/or devices to others, such as manufacturers, customers, resellers, and/or end-use customers, in the United States, who, in turn, offer for sale, sell, or use these upload services and/or devices to infringe the '482 Patent. Through its manufacture and sale of the accused upload services and/or devices, Motorola specifically intended its manufacturers, customers, resellers, and/or end-use customers to infringe the '482 Patent.

87.     Motorola specifically intends for others, such as manufacturers, customers, resellers, and end-use customers, to directly infringe the '482 Motorola Asserted Claims in the

United States.  For example, Motorola provides instructions to manufacturers, customers, resellers and end-use customers regarding the use and operation of Motorola's products in an infringing way.  Such instructions include at least "Moto G User Guide,"[21] "Moto X User Guide,"[22] "User's Guide, Droid Ultra,"[23] and other similar user guides and support documentation available on Motorola's support website.[24]  When manufacturers, customers, resellers, and end-use customers follow such instructions, they directly infringe the '482 Motorola Asserted Claims.  Motorola knows that by providing such instructions, manufacturers, customers, resellers, and end-use customers follow those instructions, and directly infringe the '482 Motorola Asserted Claims.  Motorola thus knows that its actions actively induce infringement.  Motorola performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '482 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

88.    Motorola indirectly infringes the '482 Patent, by contributing to infringement by others, such as customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the customers, resellers, and/or end-use customers of the accused upload services and/or devices.  Motorola received notice of the '482 Patent at least as of the date this lawsuit was filed.

89.    Motorola's upload services and/or devices allow for the obtaining of digital content, pre-processing it, and transmitting it to another device, server, or location.  When the accused upload services and/or devices are used to send digital content of a certain size and/or

---

[21] Available on Motorola's website at https://motorola-global-portal.custhelp.com/ci/fattach/get/745538/1385483328/redirect/1/filename/68017554027a.pdf.
[22] Available on Motorola's website at https://motorola-global-portal.custhelp.com/ci/fattach/get/753825/1386258990/redirect/1/filename/Xfon_UG_KK_68017630001b.pdf.
[23] Available on Motorola's website at https://motorola-global-portal.custhelp.com/ci/fattach/get/675621/1377023134/redirect/1/filename/68017476001A.pdf.
[24] *See* https://motorola-global-portal.custhelp.com/app/home/.

dimension over carrier networks and/or wi-fi networks, the accused upload services and/or devices must necessarily pre-process and send digital media in an infringing manner. Upon information and belief, the accused upload services and/or devices cannot operate in an acceptable manner absent the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location.

90.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is especially made or especially adapted to operate on Motorola's upload services and/or devices.

91.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is not a staple article or commodity of commerce and that its use is required for operation of the accused upload services and/or devices. Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

92.    Motorola's accused upload services and/or devices, with the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location, are each a material part of the invention of the '482 Patent and are especially made for the infringing manufacturing, offering for sale, sales, and use of the accused upload services and/or devices. The accused upload services and/or devices are especially made or adapted to infringe the '482 Patent. Because the manufacturing, offering for sale, sales, and use of the accused upload services and/or devices infringe the '482 Patent, Motorola's sales of its infringing products have no substantial non-infringing uses.

93.    Accordingly, a reasonable inference is that Motorola offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '482 Patent, constituting a

material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

94.    Motorola's acts have caused, and unless restrained and enjoined, will continue to cause irreparable injury and damage to Summit 6 and its affiliates for which there is no adequate remedy at law.  Unless enjoined by this Court, Motorola will continue to infringe the '482 Patent.

### Apple Infringes the '482 Patent

95.    Apple has and continues to directly infringe the '482 Patent by making, using, selling, offering for sale, or importing into the United States products and/or methods covered by claims 1, 4, 6, 8-10, 12-14, 16-23, 25, 35-38, 40-42, 44-46, and 49-51 of the '482 Patent (hereinafter the "'482 Apple Asserted Claims"), including, but not limited to Apple's upload services and/or devices.  The accused upload services and/or devices that infringe one or more of the above-listed claims include, but are not limited to, at least the following: iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S, iPhone 5, iPhone 5S, iPhone 5C, iPad (first generation), iPad 2, iPad (third generation), iPad (fourth generation), iPad Air, iPad Mini (first generation), iPad Mini (second generation), iPod Touch (third generation), iPod Touch (fourth generation), iPod Touch (fifth generation), and any other Apple mobile device capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or location; Apple's Messages Application, including both its MMS functionality and its iMessage functionality and infrastructure; Apple's Messaging-related APIs; the integrated Twitter content upload functionality; and the MMS-to-Twitter functionality.  Further discovery may reveal additional infringing products, models, and/or functionality.

96.     Apple makes, uses, sells, offers for sale, or imports into the United States these upload services and/or devices and thus directly infringes at least the '482 Apple Asserted Claims.  Additionally, upon information and belief Apple creates the source code related to at least some of these upload services and/or devices.  These acts are a direct infringement of the '482 Apple Asserted Claims.  Upon information and belief, Apple also uses these upload services and/or devices via its internal use and testing in the United States, directly infringing each of the '482 Apple Asserted Claims.  Apple also directly infringes the '482 Apple Asserted Claims when its mobile devices and/or servers execute the code responsible for the operation of the accused upload services and/or devices.

97.     Apple has and continues to induce and to contribute to infringement of the '482 Patent by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by the '482 Apple Asserted Claims, including, but not limited to Apple's upload services and/or devices listed above.  Apple provides these upload services and/or devices to others, such as manufacturers, customers, resellers, and end-use consumers who in turn use, offer for sale, or sell in the United States these upload services and/or devices that infringe the '482 Apple Asserted Claims.

98.     Apple indirectly infringes the '482 Patent by inducing infringement by others, such as manufacturers, customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, customers, resellers, and/or end-use customers of the accused upload services and/or devices.  Apple received notice of the '482 Patent at least as of the date this lawsuit was filed.  Apple provides at least the accused upload services and/or devices to others, such as manufacturers, customers, resellers, and/or end-use customers, in the United States, who, in turn, offer for sale, sell, or use these upload services

and/or devices to infringe the '482 Patent. Through its manufacture and sale of the accused upload services and/or devices, Apple specifically intended its manufacturers, customers, resellers, and/or end-use customers to infringe the '482 Patent.

99.    Apple specifically intends for others, such as manufacturers, customers, resellers, and end-use customers, to directly infringe the '482 Apple Asserted Claims in the United States. For example, Apple provides instructions to manufacturers, customers, resellers and end-use customers regarding the use and operation of Apple's products in an infringing way. Such instructions include at least "iPhone User Guide for iPhone OS 3.1 Software,"[25] "iPhone User Guide For iOS 7 (October 2013),"[26] "iPad User Guide For iOS 7 (October 2013),"[27] "iPod touch User Guide For iOS 7 (October 2013),"[28] "MFMessageComposeViewController Class Reference,"[29] and other similar user guides and support documentation available on Apple's support[30] and developer[31] websites. When manufacturers, customers, resellers, and end-use customers follow such instructions, they directly infringe the '482 Apple Asserted Claims. Apple knows that by providing such instructions, manufacturers, customers, resellers, and end-use customers follow those instructions, and directly infringe the '482 Apple Asserted Claims. Apple thus knows that its actions actively induce infringement. Apple performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of

---

[25] Available on Apple's website at
http://manuals.info.apple.com/MANUALS/0/MA616/en_US/iPhone_iOS3.1_User_Guide.pdf.
[26] Available on Apple's website at
http://manuals.info.apple.com/MANUALS/1000/MA1565/en_US/iphone_user_guide.pdf.
[27] Available on Apple's website at
http://manuals.info.apple.com/MANUALS/1000/MA1595/en_US/ipad_user_guide.pdf.
[28] Available on Apple's website at
http://manuals.info.apple.com/MANUALS/1000/MA1596/en_US/ipod_touch_user_guide.pdf.
[29] Available on Apple's website at
https://developer.apple.com/library/ios/documentation/MessageUI/Reference/MFMessageComposeViewController_class/Reference/Reference.html.
[30] *See* http://www.apple.com/support/.
[31] *See* https://developer.apple.com/.

McKool 950190v2

the '482 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

100.    Apple indirectly infringes the '482 Patent, by contributing to infringement by others, such as customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the customers, resellers, and/or end-use customers of the accused upload services and/or devices.  Apple received notice of the '482 Patent at least as of the date this lawsuit was filed.

101.    Apple's upload services and/or devices allow for the obtaining of digital content, pre-processing it, and transmitting it to another device, server, or location.  When the accused upload services and/or devices are used to send digital content of a certain size and/or dimension over carrier networks and/or wi-fi networks, the accused upload services and/or devices must necessarily pre-process and send digital media in an infringing manner.  Upon information and belief, the accused upload services and/or devices cannot operate in an acceptable manner absent the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location.

102.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is especially made or especially adapted to operate on Apple's upload services and/or devices.

103.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is not a staple article or commodity of commerce and that its use is required for operation of the accused upload services and/or devices.   Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

104.    Apple's accused upload services and/or devices, with the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location are each a material part of the invention of the '482 Patent and are especially made for the infringing manufacturing, offering for sale, sales, and use of the accused upload services and/or devices.  The accused upload services and/or devices are especially made or adapted to infringe the '482 Patent. Because the manufacturing, offering for sale, sales, and use of the accused upload services and/or devices infringe the '482 Patent, Apple's sales of its infringing products have no substantial non-infringing uses.

105.    Accordingly, a reasonable inference is that Apple offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '482 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

106.    Apple's acts have caused, and unless restrained and enjoined, will continue to cause irreparable injury and damage to Summit 6 and its affiliates for which there is no adequate remedy at law.  Unless enjoined by this Court, Apple will continue to infringe the '482 Patent.

**Twitter Infringes the '482 Patent**

107.    Twitter has and continues to directly infringe the '482 Patent by making, using, selling, offering for sale, or importing into the United States products and/or methods covered by claims 1, 4, 6, 8-10, 12-14, 16-23, 25, 35-38, 40-42, 44-46, and 49-51 of the '482 Patent (hereinafter the "'482 Twitter Asserted Claims"), including, but not limited to Twitter's upload services.  The accused upload services that infringe one or more of the above-listed claims include, but are not limited to, at least the following: the Twitter Application for iPhone, the

Twitter Application for iPad, the Twitter Application for Android, the Twitter Application for Android Tablet, and any other Twitter Application capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or location; the Twitter content upload functionality integrated into the native sharing options for iOS and Android devices; Twitter's APIs related to obtaining digital content, pre-processing it, and transmitting it to another device, server, or location; Twitter's mobile website; and Twitter's website-related infrastructure. Further discovery may reveal additional infringing products, models, and/or functionality.

108.    Twitter makes, uses, sells, offers for sale, or imports into the United States these upload services and thus directly infringes at least the '482 Twitter Asserted Claims. Additionally, upon information and belief, Twitter creates the source code related to each of these upload services.  These acts are a direct infringement of the '482 Twitter Asserted Claims. Upon information and belief, Twitter also uses these upload services via its internal use and testing in the United States, directly infringing each of the '482 Twitter Asserted Claims. Twitter also directly infringes the '482 Twitter Asserted Claims when it executes its code responsible for the operation of the accused upload services.

109.    Twitter has and continues to induce and to contribute to infringement of the '482 Patent by intending that others, including co-defendants HTC Corp., HTC America, LGE Inc., LGE USA, LGE MobileComm, Motorola, and Apple, make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by the '482 Twitter Asserted Claims, including, but not limited to Twitter's upload services listed above.  Twitter provides these upload services to others, such as co-defendants, manufacturers, customers, resellers, application developers, and end-use consumers who in turn use, offer for sale, or sell in the United States these upload services that infringe the '482 Twitter Asserted Claims.

McKool 950190v2

110.    Twitter indirectly infringes the '482 Patent by inducing infringement by others, such as co-defendants, manufacturers, customers, resellers, application developers, and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by co-defendants, manufacturers, customers, resellers, application developers, and/or end-use customers of the accused upload services. Twitter received notice of the '482 Patent at least as of the date this lawsuit was filed. Twitter provides the accused upload services to others, such as co-defendants, manufacturers, customers, resellers, application developers, and/or end-use customers, in the United States, who, in turn, offer for sale, sell, or use these upload services to infringe the '482 Patent. Through its manufacture and sale of the accused upload services, Twitter specifically intended co-defendants, manufacturers, customers, resellers, application developers, and/or end-use customers to infringe the '482 Patent.

111.    Twitter specifically intends for others, such as co-defendants, to directly infringe the '482 Twitter Asserted Claims in the United States. For example, Twitter provides its accused upload services to HTC Corp. for integration into HTC Corp.'s accused upload services and/or devices. For example, Twitter provides its accused upload services to HTC America for integration into HTC America's accused upload services and/or devices. For example, Twitter provides its accused upload services to LGE Inc. for integration into LGE Inc.'s accused upload services and/or devices. For example, Twitter provides its accused upload services to LGE USA for integration into LGE USA's accused upload services and/or devices. For example, Twitter provides its accused upload services to LGE MobileComm for integration into LGE MobileComm's accused upload services and/or devices. For example, Twitter provides its accused upload services to Motorola for integration into Motorola's accused upload services and/or devices. For example, Twitter provides its accused upload services to Apple for

integration into Apple's accused upload services and/or devices.  When co-defendants include the integrated Twitter content upload functionality in their accused upload services and/or devices, they directly infringe the '482 Twitter Asserted Claims.  Twitter knows that providing the integrated Twitter content upload functionality to co-defendants induces co-defendants to directly infringe the '482 Twitter Asserted Claims.  Twitter thus knows that its actions actively induce infringement.  Twitter performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '482 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

112.   Twitter also specifically intends for others, such as manufacturers, customers, resellers, application developers, and end-use customers, to directly infringe the '482 Twitter Asserted Claims in the United States.   For example, Twitter provides instructions to manufacturers, customers, resellers, application developers, and end-use customers regarding the use and operation of Twitter's accused services in an infringing way.  Such instructions include at least "Getting started with Twitter for iPhone,"[32] "Getting started with Twitter for Android,"[33] "Using mobile.twitter.com on a smartphone or tablet,"[34] "POST statuses/update_with_media,"[35] and other similar user guides and support documentation available on Twitter's support[36] and developer[37] websites.   When manufacturers, customers, resellers, application developers, and end-use customers follow such instructions, they directly infringe the '482 Twitter Asserted Claims.  Twitter knows that by providing such instructions, manufacturers, customers, resellers, application developers, and end-use customers follow those instructions, and directly infringe the

---

[32] Available on Twitter's website at https://support.twitter.com/articles/20169500.
[33] Available on Twitter's website at https://support.twitter.com/groups/54-mobile-apps/topics/223-android/articles/168930-getting-started-with-twitter-for-android.
[34] Available on Twitter's website at https://support.twitter.com/groups/54-mobile-apps/topics/224-mobile-web/articles/20113771-using-mobile-twitter-com-on-a-smartphone-or-tablet.
[35] Available on Twitter's website at https://dev.twitter.com/docs/api/1.1/post/statuses/update_with_media.
[36] *See* https://support.twitter.com/.
[37] *See* https://dev.twitter.com/.

McKool 950190v2

'482 Twitter Asserted Claims.  Twitter thus knows that its actions actively induce infringement. Twitter performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '482 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

113.    Twitter indirectly infringes the '482 Patent, by contributing to infringement by others, such as co-defendants, customers, resellers, application developers, and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by co-defendants, customers, resellers, application developers, and/or end-use customers of the accused upload services. Twitter received notice of the '482 Patent at least as of the date this lawsuit was filed.

114.    Twitter's upload services allow for the obtaining of digital content, pre-processing it, and transmitting it to another device, server, or location.  When the accused upload services are used to send digital content of a certain size and/or dimension over carrier networks and/or wi-fi networks, the accused upload services and/or devices pre-process and send digital media in an infringing manner.  Upon information and belief, the accused upload services cannot operate in an acceptable manner absent the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location.

115.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is especially made or especially adapted to operate on Twitter's upload services.

116.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is not a staple article or commodity of commerce and that its use is required for operation of the accused

upload services.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

117.    Twitter's accused upload services, with the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location are each a material part of the invention of the '482 Patent and are especially made for the infringing manufacturing, offering for sale, sales, and use of the accused upload services.  The accused upload services are especially made or adapted to infringe the '482 Patent.  Because the manufacturing, offering for sale, sales, and use of the accused upload services infringe the '482 Patent, Twitter's sales of its infringing products have no substantial non-infringing uses.

118.    Accordingly, a reasonable inference is that Twitter offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '482 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

119.    Twitter's acts have caused, and unless restrained and enjoined, will continue to cause irreparable injury and damage to Summit 6 and its affiliates for which there is no adequate remedy at law.  Unless enjoined by this Court, Twitter will continue to infringe the '482 Patent.

## COUNT II

### Infringement of the '515 Patent

120.    Summit 6 repeats and realleges the allegations in paragraphs 1-119 as though fully set forth herein.

### HTC Corp. Infringes the '515 Patent

121.    HTC Corp. has and continues to directly infringe the '515 Patent by making, using, selling, offering for sale, or importing into the United States products and/or methods covered by claims 1-3, 6, 7, 10, 11, 14-20, 23-30, 33-39, 44, and 48 of the '515 Patent (hereinafter the "'515 HTC Asserted Claims"), including, but not limited to HTC Corp.'s upload services and/or devices.  The accused upload services and/or devices that infringe one or more of the above-listed claims include, but are not limited to, at least the following: Desire, One, One max, One mini, Droid DNA, Evo 4G LTE, Droid Incredible 4G LTE, One SV, One X+, Desire C, One X, One VX, One S, One V, EVO Design 4G, Vivid, Rezound, Rhyme, Sensation, Hero S, and any other HTC Corp. mobile device capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or location; the integrated Twitter content upload functionality; and the MMS-to-Twitter functionality.  Further discovery may reveal additional infringing products, models, and/or functionality.

122.    HTC Corp. makes, uses, sells, offers for sale, or imports into the United States these upload services and/or devices and thus directly infringes at least the '515 HTC Asserted Claims.  Upon information and belief, HTC Corp. also uses these upload services and/or devices via its internal use and testing in the United States, directly infringing each of the '515 HTC Asserted Claims.  HTC Corp. also directly infringes the '515 HTC Asserted Claims when its mobile devices execute the code responsible for the operation of the accused upload services and/or devices.

123.    HTC Corp. has and continues to induce and to contribute to infringement of the '515 Patent by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by the '515 HTC Asserted Claims, including, but not limited to HTC Corp.'s upload services and/or devices listed above.  HTC Corp. provides these upload services and/or devices to others, such as manufacturers, customers, resellers, and end-

use consumers who in turn use, offer for sale, or sell in the United States these upload services and/or devices that infringe the '515 HTC Asserted Claims.

124.    HTC Corp. indirectly infringes the '515 Patent by inducing infringement by others, such as manufacturers, customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, customers, resellers, and/or end-use customers of the accused upload services and/or devices.  HTC Corp. received notice of the '515 Patent at least as of the date this lawsuit was filed.  HTC Corp. provides at least the accused upload services and/or devices to others, such as manufacturers, customers, resellers, and/or end-use customers, in the United States, who, in turn, offer for sale, sell, or use these upload services and/or devices to infringe the '515 Patent.  Through its manufacture and sale of the accused upload services and/or devices, HTC Corp. specifically intended its manufacturers, customers, resellers, and/or end-use customers to infringe the '515 Patent.

125.    HTC Corp. specifically intends for others, such as manufacturers, customers, resellers, and end-use customers, to directly infringe the '515 HTC Asserted Claims in the United States.  For example, HTC Corp. provides instructions to manufacturers, customers, resellers and end-use customers regarding the use and operation of HTC Corp.'s products in an infringing way.  Such instructions include at least "HTC Desire 601 User Guide,"[38] "Your HTC One User Guide,"[39] "HTC One Max User Guide,"[40] and other similar user guides and support documentation available on HTC Corp.'s support website.[41]  When manufacturers, customers, resellers, and end-use customers follow such instructions, they directly infringe the '515 HTC

---

[38] Available on HTC Corp.'s website at
http://dl4.htc.com/web_materials/Manual/HTC_Desire_601/HTC_Desire_601_Virgin_Mobile_User_Guide.pdf.
[39] Available on HTC Corp.'s website at
http://dl4.htc.com/web_materials/Manual/HTC_One/HTC_One_ATT_User_Guide.pdf.
[40] Available on HTC Corp.'s website at
http://dl4.htc.com/web_materials/Manual/HTC_One_max/HTC_One_max_Sprint_User_Guide.pdf.
[41] *See* http://www.htc.com/us/support/.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                      PAGE 45

Asserted Claims.   HTC Corp. knows that by providing such instructions, manufacturers, customers, resellers, and end-use customers follow those instructions, and directly infringe the '515 HTC Asserted Claims.  HTC Corp. thus knows that its actions actively induce infringement. HTC Corp. performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '515 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

126.    HTC Corp. indirectly infringes the '515 Patent, by contributing to infringement by others, such as customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the customers, resellers, and/or end-use customers of the accused upload services and/or devices.  HTC Corp. received notice of the '515 Patent at least as of the date this lawsuit was filed.

127.    HTC Corp.'s upload services and/or devices allow for the obtaining of digital content, pre-processing it, and transmitting it to another device, server, or location.  When the accused upload services and/or devices are used to send digital content of a certain size and/or dimension over carrier networks and/or wi-fi networks, the accused upload services and/or devices must necessarily pre-process and send digital content in an infringing manner.  Upon information and belief, the accused upload services and/or devices cannot operate in an acceptable manner absent the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location.

128.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is especially made or especially adapted to operate on HTC Corp.'s upload services and/or devices.

129.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is not a staple article or commodity of commerce and that its use is required for operation of the accused upload services and/or devices.    Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

130.    HTC Corp.'s accused upload services and/or devices, with the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location are each a material part of the invention of the '515 Patent and are especially made for the infringing manufacturing, offering for sale, sales, and use of the accused upload services and/or devices. The accused upload services and/or devices are especially made or adapted to infringe the '515 Patent.  Because the manufacturing, offering for sale, sales, and use of the accused upload services and/or devices infringe the '515 Patent, HTC Corp.'s sales of its infringing products have no substantial non-infringing uses.

131.    Accordingly, a reasonable inference is that HTC Corp. offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '515 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

132.    HTC Corp.'s acts have caused, and unless restrained and enjoined, will continue to cause irreparable injury and damage to Summit 6 and its affiliates for which there is no adequate remedy at law.  Unless enjoined by this Court, HTC Corp. will continue to infringe the '515 Patent.

**HTC America Infringes the '515 Patent**

133.    HTC America has and continues to directly infringe the '515 Patent by making, using, selling, offering for sale, or importing into the United States products and/or methods covered by the '515 HTC Asserted Claims, including, but not limited to HTC America's upload services and/or devices.  The accused upload services and/or devices that infringe one or more of the above-listed claims include, but are not limited to, at least the following: Desire, One, One max, One mini, Droid DNA, Evo 4G LTE, Droid Incredible 4G LTE, One SV, One X+, Desire C, One X, One VX, One S, One V, EVO Design 4G, Vivid, Rezound, Rhyme, Sensation, Hero S, and any other HTC America mobile device capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or location; the integrated Twitter content upload functionality; and the MMS-to-Twitter functionality.  Further discovery may reveal additional infringing products, models, and/or functionality.

134.    HTC America makes, uses, sells, offers for sale, or imports into the United States these upload services and/or devices and thus directly infringes at least the '515 HTC Asserted Claims.  Upon information and belief, HTC America also uses these upload services and/or devices via its internal use and testing in the United States, directly infringing each of the '515 HTC Asserted Claims.  HTC America also directly infringes the '515 HTC Asserted Claims when its mobile devices execute the code responsible for the operation of the accused upload services and/or devices.

135.    HTC America has and continues to induce and to contribute to infringement of the '515 Patent by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by the '515 HTC Asserted Claims, including, but not limited to HTC America's upload services and/or devices listed above.  HTC America provides these upload services and/or devices to others, such as manufacturers, customers,

resellers, and end-use consumers who in turn use, offer for sale, or sell in the United States these upload services and/or devices that infringe the '515 HTC Asserted Claims.

136.    HTC America indirectly infringes the '515 Patent by inducing infringement by others, such as manufacturers, customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, customers, resellers, and/or end-use customers of the accused upload services and/or devices.  HTC America received notice of the '515 Patent at least as of the date this lawsuit was filed.  HTC America provides at least the accused upload services and/or devices to others, such as manufacturers, customers, resellers, and/or end-use customers, in the United States, who, in turn, offer for sale, sell, or use these upload services and/or devices to infringe the '515 Patent.  Through its manufacture and sale of the accused upload services and/or devices, HTC America specifically intended its manufacturers, customers, resellers, and/or end-use customers to infringe the '515 Patent.

137.    HTC America specifically intends for others, such as manufacturers, customers, resellers, and end-use customers, to directly infringe the '515 HTC Asserted Claims in the United States.  For example, HTC America provides instructions to manufacturers, customers, resellers and end-use customers regarding the use and operation of HTC America's products in an infringing way.  Such instructions include at least "HTC Desire 601 User Guide,"[42] "Your HTC One User Guide,"[43] "HTC One Max User Guide,"[44] and other similar user guides and support documentation available on HTC America's support website.[45]  When manufacturers, customers, resellers, and end-use customers follow such instructions, they directly infringe the

---

[42] Available on HTC America's website at
http://dl4.htc.com/web_materials/Manual/HTC_Desire_601/HTC_Desire_601_Virgin_Mobile_User_Guide.pdf.
[43] Available on HTC America's website at
http://dl4.htc.com/web_materials/Manual/HTC_One/HTC_One_ATT_User_Guide.pdf.
[44] Available on HTC America's website at
http://dl4.htc.com/web_materials/Manual/HTC_One_max/HTC_One_max_Sprint_User_Guide.pdf.
[45] *See* http://www.htc.com/us/support/.

'515 HTC Asserted Claims.    HTC America knows that by providing such instructions, manufacturers, customers, resellers, and end-use customers follow those instructions, and directly infringe the '515 HTC Asserted Claims.    HTC America thus knows that its actions actively induce infringement.    HTC America performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '515 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

138.    HTC America indirectly infringes the '515 Patent, by contributing to infringement by others, such as customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.    Direct infringement is the result of activities performed by the customers, resellers, and/or end-use customers of the accused upload services and/or devices.    HTC America received notice of the '515 Patent at least as of the date this lawsuit was filed.

139.    HTC America's upload services and/or devices allow for the obtaining of digital content, pre-processing it, and transmitting it to another device, server, or location.    When the accused upload services and/or devices are used to send digital content of a certain size and/or dimension over carrier networks and/or wi-fi networks, the accused upload services and/or devices must necessarily pre-process and send digital media in an infringing manner.    Upon information and belief, the accused upload services and/or devices cannot operate in an acceptable manner absent the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location.

140.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is especially made or especially adapted to operate on HTC America's upload services and/or devices.

141.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is not a staple article or commodity of commerce and that its use is required for operation of the accused upload services and/or devices.   Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

142.    HTC America's accused upload services and/or devices, with the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location, are each a material part of the invention of the '515 Patent and are especially made for the infringing manufacturing, offering for sale, sales, and use of the accused upload services and/or devices. The accused upload services and/or devices are especially made or adapted to infringe the '515 Patent.   Because the manufacturing, offering for sale, sales, and use of the accused upload services and/or devices infringe the '515 Patent, HTC America's sales of its infringing products have no substantial non-infringing uses.

143.    Accordingly, a reasonable inference is that HTC America offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '515 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

144.    HTC America's acts have caused, and unless restrained and enjoined, will continue to cause irreparable injury and damage to Summit 6 and its affiliates for which there is no adequate remedy at law.   Unless enjoined by this Court, HTC America will continue to infringe the '515 Patent.

**LGE Inc. Infringes the '515 Patent**

145.    LGE Inc. has and continues to directly infringe the '515 Patent by making, using, selling, offering for sale, or importing into the United States products and/or methods covered by claims 1-3, 6, 7, 10, 11, 14-20, 23-30, 33-39, 44, and 48 of the '515 Patent (hereinafter the "'515 LGE Asserted Claims"), including, but not limited to LGE Inc.'s upload services and/or devices. The accused upload services and/or devices that infringe one or more of the above-listed claims include, but are not limited to, at least the following: D820 Red, Optimus F3Q D520, G Flex AT&T D950, G Flex T-Mobile D959, G Flex Sprint LS995, G2 Verizon VS980 White, D820 T-Mobile Black, D820 Sprint Black, D820 Sprint White, G2 Verizon VS980, G2 AT&T D800, G2 T-Mobile D801, G2 Sprint LS980, G2 Sprint LS980 White, G2 AT&T D800 White, D2 T-Mobile D801 White, Wine III UN530, Optimus F6 MS500, Optimus F6 D500, Enact VS890, Exalt VN360, Optimus F3 MS659, Optimus F3 P659, Optimus F3 VM720, Rumor Reflex S LN272S Blue, Rumor Reflex S LN272S Red, Fluid AN160, Optimus F7 LG870, Optimus F3 LS720 Titanium Silver, Optimus F7 US780, Optimus F3 LS720 Purple, LGE960W, Optimus F5 AS870, Optimus G Pro E980, Optimus G Pro E980 White, Envoy II UN160, Optimus Exceed VS840PP, Revere 2 VN150S, Cosmos 3 VN251S, Optimus Zone VS410PP, Lucid2 VS870, Spirit 4G MS870, LGE960, Optimus REGARD LW770, Mach LS860, Optimus G LS970, Optimus L9 P769, Freedom UN272, Optimus G E970, Venice LG730, Escape P870, Spectrum 2 VS930, Splendor US730, Intuition VS950, Motion 4G MS770, Optimus Zip LGL75C, Optimus Plus AS695, Optimus Elite VM696, Elite LS696, Viper LS840, Xpression C395, A340, Rumor Reflex LG272, Rumor Reflex LN272, Optimus M+ MS695, Lucid VS840, Spectrum VS920, Connect 4G MS840, Extravert VN271, Optimus Net L45C, and any other LGE Inc. mobile device capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or location; the integrated Twitter content upload functionality; and the MMS-to-

Twitter functionality. Further discovery may reveal additional infringing products, models, and/or functionality.

146.    LGE Inc. makes, uses, sells, offers for sale, or imports into the United States these upload services and/or devices and thus directly infringes at least the '515 LGE Asserted Claims. Upon information and belief, LGE Inc. also uses these upload services and/or devices via its internal use and testing in the United States, directly infringing each of the '515 LGE Asserted Claims. LGE Inc. also directly infringes the '515 LGE Asserted Claims when its mobile devices execute the code responsible for the operation of the accused upload services and/or devices.

147.    LGE Inc. has and continues to induce and to contribute to infringement of the '515 Patent by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by the '515 LGE Asserted Claims, including, but not limited to LGE Inc.'s upload services and/or devices listed above. LGE Inc. provides these upload services and/or devices to others, such as manufacturers, customers, resellers, and end-use consumers who in turn use, offer for sale, or sell in the United States these upload services and/or devices that infringe the '515 LGE Asserted Claims.

148.    LGE Inc. indirectly infringes the '515 Patent by inducing infringement by others, such as manufacturers, customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the manufacturers, customers, resellers, and/or end-use customers of the accused upload services and/or devices. LGE Inc. received notice of the '515 Patent at least as of the date this lawsuit was filed. LGE Inc. provides at least the accused upload services and/or devices to others, such as manufacturers, customers, resellers, and/or end-use customers, in the United States, who, in turn, offer for sale, sell, or use these upload services and/or devices to infringe the '515 Patent. Through its manufacture and sale of the accused

upload services and/or devices, LGE Inc. specifically intended its manufacturers, customers, resellers, and/or end-use customers to infringe the '515 Patent.

149.    LGE Inc. specifically intends for others, such as manufacturers, customers, resellers, and end-use customers, to directly infringe the '515 LGE Asserted Claims in the United States.  For example, LGE Inc. provides instructions to manufacturers, customers, resellers and end-use customers regarding the use and operation of LGE Inc.'s products in an infringing way. Such instructions include at least "LG G2 User Guide,"[46] "User Guide, LG Optimus F3,"[47] "Owner's Manual, LG Envoy II,"[48] and other similar user guides and support documentation available on LGE Inc.'s support website.[49]  When manufacturers, customers, resellers, and end-use customers follow such instructions, they directly infringe the '515 LGE Asserted Claims. LGE Inc. knows that by providing such instructions, manufacturers, customers, resellers, and end-use customers follow those instructions, and directly infringe the '515 LGE Asserted Claims.  LGE Inc. thus knows that its actions actively induce infringement.  LGE Inc. performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '515 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

150.    LGE Inc. indirectly infringes the '515 Patent, by contributing to infringement by others, such as customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the customers, resellers, and/or end-use customers of the accused upload services and/or devices.  LGE Inc. received notice of the '515 Patent at least as of the date this lawsuit was filed.

---

[46] Available on LGE Inc.'s website at http://www.lg.com/us/support/software-manuals#.
[47] Available on LGE Inc.'s website at http://www.lg.com/us/support/software-manuals#.
[48] Available on LGE Inc.'s website at http://www.lg.com/us/support/software-manuals#.
[49] *See* http://www.lg.com/us/support.

151.    LGE Inc.'s upload services and/or devices allow for the obtaining of digital content, pre-processing it, and transmitting it to another device, server, or location.  When the accused upload services and/or devices are used to send digital content of a certain size and/or dimension over carrier networks and/or wi-fi networks, the accused upload services and/or devices must necessarily pre-process and send digital media in an infringing manner.  Upon information and belief, the accused upload services and/or devices cannot operate in an acceptable manner absent the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location.

152.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is especially made or especially adapted to operate on LGE Inc.'s upload services and/or devices.

153.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is not a staple article or commodity of commerce and that its use is required for operation of the accused upload services and/or devices.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

154.    LGE Inc.'s accused upload services and/or devices, with the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location, are each a material part of the invention of the '515 Patent and are especially made for the infringing manufacturing, offering for sale, sales, and use of the accused upload services and/or devices. The accused upload services and/or devices are especially made or adapted to infringe the '515 Patent.  Because the manufacturing, offering for sale, sales, and use of the accused upload services and/or devices infringe the '515 Patent, LGE Inc.'s sales of its infringing products have no substantial non-infringing uses.

155.    Accordingly, a reasonable inference is that LGE Inc. offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '515 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

156.    LGE Inc.'s acts have caused, and unless restrained and enjoined, will continue to cause irreparable injury and damage to Summit 6 and its affiliates for which there is no adequate remedy at law.  Unless enjoined by this Court, LGE Inc. will continue to infringe the '515 Patent.

## LGE USA Infringes the '515 Patent

157.    LGE USA has and continues to directly infringe the '515 Patent by making, using, selling, offering for sale, or importing into the United States products and/or methods covered by the '515 LGE Asserted Claims, including, but not limited to LGE USA's upload services and/or devices.  The accused upload services and/or devices that infringe one or more of the above-listed claims include, but are not limited to, at least the following: D820 Red, Optimus F3Q D520, G Flex AT&T D950, G Flex T-Mobile D959, G Flex Sprint LS995, G2 Verizon VS980 White, D820 T-Mobile Black, D820 Sprint Black, D820 Sprint White, G2 Verizon VS980, G2 AT&T D800, G2 T-Mobile D801, G2 Sprint LS980, G2 Sprint LS980 White, G2 AT&T D800 White, D2 T-Mobile D801 White, Wine III UN530, Optimus F6 MS500, Optimus F6 D500, Enact VS890, Exalt VN360, Optimus F3 MS659, Optimus F3 P659, Optimus F3 VM720, Rumor Reflex S LN272S Blue, Rumor Reflex S LN272S Red, Fluid AN160, Optimus F7 LG870, Optimus F3 LS720 Titanium Silver, Optimus F7 US780, Optimus F3 LS720 Purple, LGE960W, Optimus F5 AS870, Optimus G Pro E980, Optimus G Pro E980 White, Envoy II

UN160, Optimus Exceed VS840PP, Revere 2 VN150S, Cosmos 3 VN251S, Optimus Zone VS410PP, Lucid2 VS870, Spirit 4G MS870, LGE960, Optimus REGARD LW770, Mach LS860, Optimus G LS970, Optimus L9 P769, Freedom UN272, Optimus G E970, Venice LG730, Escape P870, Spectrum 2 VS930, Splendor US730, Intuition VS950, Motion 4G MS770, Optimus Zip LGL75C, Optimus Plus AS695, Optimus Elite VM696, Elite LS696, Viper LS840, Xpression C395, A340, Rumor Reflex LG272, Rumor Reflex LN272, Optimus M+ MS695, Lucid VS840, Spectrum VS920, Connect 4G MS840, Extravert VN271, Optimus Net L45C, and any other LGE USA mobile device capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or location; the integrated Twitter content upload functionality; and the MMS-to-Twitter functionality.  Further discovery may reveal additional infringing products, models, and/or functionality.

158.    LGE USA makes, uses, sells, offers for sale, or imports into the United States these upload services and/or devices and thus directly infringes at least the '515 LGE Asserted Claims.  Upon information and belief, LGE USA also uses these upload services and/or devices via its internal use and testing in the United States, directly infringing each of the '515 LGE Asserted Claims.  LGE USA also directly infringes the '515 LGE Asserted Claims when its mobile devices execute the code responsible for the operation of the accused upload services and/or devices.

159.    LGE USA has and continues to induce and to contribute to infringement of the '515 Patent by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by the '515 LGE Asserted Claims, including, but not limited to LGE USA's upload services and/or devices listed above.  LGE USA provides these upload services and/or devices to others, such as manufacturers, customers, resellers, and end-

use consumers who in turn use, offer for sale, or sell in the United States these upload services and/or devices that infringe the '515 LGE Asserted Claims.

160.    LGE USA indirectly infringes the '515 Patent by inducing infringement by others, such as manufacturers, customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, customers, resellers, and/or end-use customers of the accused upload services and/or devices.  LGE USA received notice of the '515 Patent at least as of the date this lawsuit was filed.  LGE USA provides at least the accused upload services and/or devices to others, such as manufacturers, customers, resellers, and/or end-use customers, in the United States, who, in turn, offer for sale, sell, or use these upload services and/or devices to infringe the '515 Patent.  Through its manufacture and sale of the accused upload services and/or devices, LGE USA specifically intended its manufacturers, customers, resellers, and/or end-use customers to infringe the '515 Patent.

161.    LGE USA specifically intends for others, such as manufacturers, customers, resellers, and end-use customers, to directly infringe the '515 LGE Asserted Claims in the United States.  For example, LGE USA provides instructions to manufacturers, customers, resellers and end-use customers regarding the use and operation of LGE USA's products in an infringing way. Such instructions include at least "LG G2 User Guide,"[50] "User Guide, LG Optimus F3,"[51] "Owner's Manual, LG Envoy II,"[52] and other similar user guides and support documentation available on LGE USA's support website.[53]  When manufacturers, customers, resellers, and end-use customers follow such instructions, they directly infringe the '515 LGE Asserted Claims. LGE USA knows that by providing such instructions, manufacturers, customers, resellers, and

---

[50] Available on LGE USA's website at http://www.lg.com/us/support/software-manuals#.
[51] Available on LGE USA's website at http://www.lg.com/us/support/software-manuals#.
[52] Available on LGE USA's website at http://www.lg.com/us/support/software-manuals#.
[53] *See* http://www.lg.com/us/support.

end-use customers follow those instructions, and directly infringe the '515 LGE Asserted Claims. LGE USA thus knows that its actions actively induce infringement. LGE USA performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '515 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

162.    LGE USA indirectly infringes the '515 Patent, by contributing to infringement by others, such as customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the customers, resellers, and/or end-use customers of the accused upload services and/or devices. LGE USA received notice of the '515 Patent at least as of the date this lawsuit was filed.

163.    LGE USA's upload services and/or devices allow for the obtaining of digital content, pre-processing it, and transmitting it to another device, server, or location. When the accused upload services and/or devices are used to send digital content of a certain size and/or dimension over carrier networks and/or wi-fi networks, the accused upload services and/or devices must necessarily pre-process and send digital media in an infringing manner. Upon information and belief, the accused upload services and/or devices cannot operate in an acceptable manner absent the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location.

164.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is especially made or especially adapted to operate on LGE USA's upload services and/or devices.

165.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is not a

staple article or commodity of commerce and that its use is required for operation of the accused upload services and/or devices.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

166.   LGE USA's accused upload services and/or devices, with the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location, are each a material part of the invention of the '515 Patent and are especially made for the infringing manufacturing, offering for sale, sales, and use of the accused upload services and/or devices. The accused upload services and/or devices are especially made or adapted to infringe the '515 Patent.  Because the manufacturing, offering for sale, sales, and use of the accused upload services and/or devices infringe the '515 Patent, LGE USA's sales of its infringing products have no substantial non-infringing uses.

167.   Accordingly, a reasonable inference is that LGE USA offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '515 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

168.   LGE USA's acts have caused, and unless restrained and enjoined, will continue to cause irreparable injury and damage to Summit 6 and its affiliates for which there is no adequate remedy at law.  Unless enjoined by this Court, LGE USA will continue to infringe the '515 Patent.

## LGE MobileComm Infringes the '515 Patent

169.   LGE MobileComm has and continues to directly infringe the '515 Patent by making, using, selling, offering for sale, or importing into the United States products and/or

methods covered by the '515 LGE Asserted Claims, including, but not limited to LGE MobileComm's upload services and/or devices.  The accused upload services and/or devices that infringe one or more of the above-listed claims include, but are not limited to, at least the following: D820 Red, Optimus F3Q D520, G Flex AT&T D950, G Flex T-Mobile D959, G Flex Sprint LS995, G2 Verizon VS980 White, D820 T-Mobile Black, D820 Sprint Black, D820 Sprint White, G2 Verizon VS980, G2 AT&T D800, G2 T-Mobile D801, G2 Sprint LS980, G2 Sprint LS980 White, G2 AT&T D800 White, D2 T-Mobile D801 White, Wine III UN530, Optimus F6 MS500, Optimus F6 D500, Enact VS890, Exalt VN360, Optimus F3 MS659, Optimus F3 P659, Optimus F3 VM720, Rumor Reflex S LN272S Blue, Rumor Reflex S LN272S Red, Fluid AN160, Optimus F7 LG870, Optimus F3 LS720 Titanium Silver, Optimus F7 US780, Optimus F3 LS720 Purple, LGE960W, Optimus F5 AS870, Optimus G Pro E980, Optimus G Pro E980 White, Envoy II UN160, Optimus Exceed VS840PP, Revere 2 VN150S, Cosmos 3 VN251S, Optimus Zone VS410PP, Lucid2 VS870, Spirit 4G MS870, LGE960, Optimus REGARD LW770, Mach LS860, Optimus G LS970, Optimus L9 P769, Freedom UN272, Optimus G E970, Venice LG730, Escape P870, Spectrum 2 VS930, Splendor US730, Intuition VS950, Motion 4G MS770, Optimus Zip LGL75C, Optimus Plus AS695, Optimus Elite VM696, Elite LS696, Viper LS840, Xpression C395, A340, Rumor Reflex LG272, Rumor Reflex LN272, Optimus M+ MS695, Lucid VS840, Spectrum VS920, Connect 4G MS840, Extravert VN271, Optimus Net L45C, and any other LGE MobileComm mobile device capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or location; the integrated Twitter content upload functionality; and the MMS-to-Twitter functionality.  Further discovery may reveal additional infringing products, models, and/or functionality.

170.    LGE MobileComm makes, uses, sells, offers for sale, or imports into the United States these upload services and/or devices and thus directly infringes at least the '515 LGE Asserted Claims.  Upon information and belief, LGE MobileComm also uses these upload services and/or devices via its internal use and testing in the United States, directly infringing each of the'515 LGE Asserted Claims.  LGE MobileComm also directly infringes the '515 LGE Asserted Claims when its mobile devices execute the code responsible for the operation of the accused upload services and/or devices.

171.    LGE MobileComm has and continues to induce and to contribute to infringement of the '515 Patent by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by the '515 LGE Asserted Claims, including, but not limited to LGE MobileComm's upload services and/or devices listed above.  LGE MobileComm provides these upload services and/or devices to others, such as manufacturers, customers, resellers, and end-use consumers who in turn use, offer for sale, or sell in the United States these upload services and/or devices that infringe the '515 LGE Asserted Claims.

172.    LGE MobileComm indirectly infringes the '515 Patent by inducing infringement by others, such as manufacturers, customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, customers, resellers, and/or end-use customers of the accused upload services and/or devices.  LGE MobileComm received notice of the '515 Patent at least as of the date this lawsuit was filed.  LGE MobileComm provides at least the accused upload services and/or devices to others, such as manufacturers, customers, resellers, and/or end-use customers, in the United States, who, in turn, offer for sale, sell, or use these upload services and/or devices to infringe the '515 Patent.  Through its manufacture and sale of

the accused upload services and/or devices, LGE MobileComm specifically intended its manufacturers, customers, resellers, and/or end-use customers to infringe the '515 Patent.

173.    LGE MobileComm specifically intends for others, such as manufacturers, customers, resellers, and end-use customers, to directly infringe the '515 LGE Asserted Claims in the United States.    For example, LGE MobileComm provides instructions to manufacturers, customers, resellers and end-use customers regarding the use and operation of LGE MobileComm's products in an infringing way.    Such instructions include at least "LG G2 User Guide,"[54] "User Guide, LG Optimus F3,"[55] "Owner's Manual, LG Envoy II,"[56] and other similar user guides and support documentation available on LGE MobileComm's support website.[57] When manufacturers, customers, resellers, and end-use customers follow such instructions, they directly infringe the '515 LGE Asserted Claims.    LGE MobileComm knows that by providing such instructions, manufacturers, customers, resellers, and end-use customers follow those instructions, and directly infringe the '515 LGE Asserted Claims.    LGE MobileComm thus knows that its actions actively induce infringement.    LGE MobileComm performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '515 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

174.    LGE MobileComm indirectly infringes the '515 Patent, by contributing to infringement by others, such as customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.    Direct infringement is the result of activities performed by the customers, resellers, and/or end-use customers of the

---

[54] Available on LGE MobileComm's website at http://www.lg.com/us/support/software-manuals#.
[55] Available on LGE MobileComm's website at http://www.lg.com/us/support/software-manuals#.
[56] Available on LGE MobileComm's website at http://www.lg.com/us/support/software-manuals#.
[57] *See* http://www.lg.com/us/support.

accused upload services and/or devices.  LGE MobileComm received notice of the '515 Patent at least as of the date this lawsuit was filed.

175.    LGE MobileComm's upload services and/or devices allow for the obtaining of digital content, pre-processing it, and transmitting it to another device, server, or location.  When the accused upload services and/or devices are used to send digital content of a certain size and/or dimension over carrier networks and/or wi-fi networks, the accused upload services and/or devices must necessarily pre-process and upload digital media in an infringing manner. Upon information and belief, the accused upload services and/or devices cannot operate in an acceptable manner absent the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location.

176.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is especially made or especially adapted to operate on LGE MobileComm's upload services and/or devices.

177.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is not a staple article or commodity of commerce and that its use is required for operation of the accused upload services and/or devices.   Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

178.    LGE MobileComm's accused upload services and/or devices, with the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location, are each a material part of the invention of the '515 Patent and are especially made for the infringing manufacturing, offering for sale, sales, and use of the accused upload services and/or devices. The accused upload services and/or devices are especially made or adapted to infringe the '515

Patent. Because the manufacturing, offering for sale, sales, and use of the accused upload services and/or devices infringe the '515 Patent, LGE MobileComm's sales of its infringing products have no substantial non-infringing uses.

179. Accordingly, a reasonable inference is that LGE MobileComm offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '515 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

180. LGE MobileComm's acts have caused, and unless restrained and enjoined, will continue to cause irreparable injury and damage to Summit 6 and its affiliates for which there is no adequate remedy at law. Unless enjoined by this Court, LGE MobileComm will continue to infringe the '515 Patent.

## Motorola Infringes the '515 Patent

181. Motorola has and continues to directly infringe the '515 Patent by making, using, selling, offering for sale, or importing into the United States products and/or methods covered by claims 1-3, 6, 7, 10, 11, 14-20, 23-30, 33-39, 44, and 48 of the '515 Patent (hereinafter the "'515 Motorola Asserted Claims"), including, but not limited to Motorola's upload services and/or devices. The accused upload services and/or devices that infringe one or more of the above-listed claims include, but are not limited to, at least the following: Moto X, Moto G, Droid Maxx, Droid Ultra, Droid Mini, Moto X Developer Edition (GSM Networks), Moto X Developer Edition Verizon, Droid Maxx Developer Edition, Droid Razr M, Droid Razr Maxx HD, Motorola Photon Q 4G LTE, and any other Motorola mobile device capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or location; the integrated

Twitter content upload functionality; and the MMS-to-Twitter functionality.  Further discovery may reveal additional infringing products, models, and/or functionality.

182.    Motorola makes, uses, sells, offers for sale, or imports into the United States these upload services and/or devices and thus directly infringes at least the '515 Motorola Asserted Claims.  Upon information and belief, Motorola also uses these upload services and/or devices via its internal use and testing in the United States, directly infringing each of the '515 Motorola Asserted Claims.  Motorola also directly infringes the '515 Motorola Asserted Claims when its mobile devices execute the code responsible for the operation of the accused upload services and/or devices.

183.    Motorola has and continues to induce and to contribute to infringement of the '515 Patent by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by the '515 Motorola Asserted Claims, including, but not limited to Motorola's upload services and/or devices listed above.  Motorola provides these upload services and/or devices to others, such as manufacturers, customers, resellers, and end-use consumers who in turn use, offer for sale, or sell in the United States these upload services and/or devices that infringe the '515 Motorola Asserted Claims.

184.    Motorola indirectly infringes the '515 Patent by inducing infringement by others, such as manufacturers, customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, customers, resellers, and/or end-use customers of the accused upload services and/or devices.  Motorola received notice of the '515 Patent at least as of the date this lawsuit was filed.  Motorola provides at least the accused upload services and/or devices to others, such as manufacturers, customers, resellers, and/or end-use customers, in the United States, who, in turn, offer for sale, sell, or use these upload services

and/or devices to infringe the '515 Patent. Through its manufacture and sale of the accused upload services and/or devices, Motorola specifically intended its manufacturers, customers, resellers, and/or end-use customers to infringe the '515 Patent.

185.    Motorola specifically intends for others, such as manufacturers, customers, resellers, and end-use customers, to directly infringe the '515 Motorola Asserted Claims in the United States. For example, Motorola provides instructions to manufacturers, customers, resellers and end-use customers regarding the use and operation of Motorola's products in an infringing way. Such instructions include at least "Moto G User Guide,"[58] "Moto X User Guide,"[59] "User's Guide, Droid Ultra,"[60] and other similar user guides and support documentation available on Motorola's support website.[61] When manufacturers, customers, resellers, and end-use customers follow such instructions, they directly infringe the '515 Motorola Asserted Claims. Motorola knows that by providing such instructions, manufacturers, customers, resellers, and end-use customers follow those instructions, and directly infringe the '515 Motorola Asserted Claims. Motorola thus knows that its actions actively induce infringement. Motorola performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '515 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

186.    Motorola indirectly infringes the '515 Patent, by contributing to infringement by others, such as customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by the customers, resellers, and/or end-use customers of the accused upload

---

[58] Available on Motorola's website at https://motorola-global-portal.custhelp.com/ci/fattach/get/745538/1385483328/redirect/1/filename/68017554027a.pdf.
[59] Available on Motorola's website at https://motorola-global-portal.custhelp.com/ci/fattach/get/753325/1386258990/redirect/1/filename/Xfon_UG_KK_68017630001b.pdf.
[60] Available on Motorola's website at https://motorola-global-portal.custhelp.com/ci/fattach/get/675621/1377023134/redirect/1/filename/68017476001A.pdf.
[61] See https://motorola-global-portal.custhelp.com/app/home/.

McKool 950190v2

services and/or devices. Motorola received notice of the '515 Patent at least as of the date this lawsuit was filed.

187.    Motorola's upload services and/or devices allow for the obtaining of digital content, pre-processing it, and transmitting it to another device, server, or location. When the accused upload services and/or devices are used to send digital content of a certain size and/or dimension over carrier networks and/or wi-fi networks, the accused upload services and/or devices must necessarily pre-process and upload digital media in an infringing manner. Upon information and belief, the accused upload services and/or devices cannot operate in an acceptable manner absent the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location.

188.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is especially made or especially adapted to operate on Motorola's upload services and/or devices.

189.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is not a staple article or commodity of commerce and that its use is required for operation of the accused upload services and/or devices.    Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

190.    Motorola's accused upload services and/or devices, with the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location, are each a material part of the invention of the '515 Patent and are especially made for the infringing manufacturing, offering for sale, sales, and use of the accused upload services and/or devices. The accused upload services and/or devices are especially made or adapted to infringe the '515 Patent. Because the manufacturing, offering for sale, sales, and use of the accused upload

services and/or devices infringe the '515 Patent, Motorola's sales of its infringing products have no substantial non-infringing uses.

191.    Accordingly, a reasonable inference is that Motorola offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '515 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

192.    Motorola's acts have caused, and unless restrained and enjoined, will continue to cause irreparable injury and damage to Summit 6 and its affiliates for which there is no adequate remedy at law.  Unless enjoined by this Court, Motorola will continue to infringe the '515 Patent.

**Apple Infringes the '515 Patent**

193.    Apple has and continues to directly infringe the '515 Patent by making, using, selling, offering for sale, or importing into the United States products and/or methods covered by claims 1-3, 6, 7, 10, 11, 14-30, 33-41, 43, 44, 47-48, and 50-53 of the '515 Patent (hereinafter the "'515 Apple Asserted Claims"), including, but not limited to Apple's upload services and/or devices.  The accused upload services and/or devices that infringe one or more of the above-listed claims include, but are not limited to, at least the following: iPhone 3G, iPhone 3GS, iPhone 4, iPhone 4S, iPhone 5, iPhone 5S, iPhone 5C, iPad (first generation), iPad 2, iPad (third generation), iPad (fourth generation), iPad Air, iPad Mini (first generation), iPad Mini (second generation), iPod Touch (third generation), iPod Touch (fourth generation), iPod Touch (fifth generation), and any other Apple mobile device capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or location; Apple's Messages

Application, including its iMessage functionality and infrastructure; Apple's Messaging-related APIs; the integrated Twitter content upload functionality; and the MMS-to-Twitter functionality. Further discovery may reveal additional infringing products, models, and/or functionality.

194.    Apple makes, uses, sells, offers for sale, or imports into the United States these upload services and/or devices and thus directly infringes at least the '515 Apple Asserted Claims.  Additionally, upon information and belief Apple drafts the source code related to at least some of these upload services and/or devices.  These acts are a direct infringement of the '515 Apple Asserted Claims.  Upon information and belief, Apple also uses these upload services and/or devices via its internal use and testing in the United States, directly infringing each of the '515 Apple Asserted Claims.  Apple also directly infringes the '515 Apple Asserted Claims when its mobile devices and/or its servers execute the code responsible for the operation of the accused upload services and/or devices.

195.    Apple has and continues to induce and to contribute to infringement of the '515 Patent by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by the '515 Apple Asserted Claims, including, but not limited to Apple's upload services and/or devices listed above.  Apple provides these upload services and/or devices to others, such as manufacturers, customers, resellers, and end-use consumers who in turn use, offer for sale, or sell in the United States these upload services and/or devices that infringe the '515 Apple Asserted Claims.

196.    Apple indirectly infringes the '515 Patent by inducing infringement by others, such as manufacturers, customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the manufacturers, customers, resellers, and/or end-use customers of the accused upload services and/or devices.  Apple received notice of the '515

Patent at least as of the date this lawsuit was filed. Apple provides at least the accused upload services and/or devices to others, such as manufacturers, customers, resellers, and/or end-use customers, in the United States, who, in turn, offer for sale, sell, or use these upload services and/or devices to infringe the '515 Patent. Through its manufacture and sale of the accused upload services and/or devices, Apple specifically intended its manufacturers, customers, resellers, and/or end-use customers to infringe the '515 Patent.

197.    Apple specifically intends for others, such as manufacturers, customers, resellers, and end-use customers, to directly infringe the '515 Apple Asserted Claims in the United States. For example, Apple provides instructions to manufacturers, customers, resellers and end-use customers regarding the use and operation of Apple's products in an infringing way. Such instructions include at least "iPhone User Guide for iPhone OS 3.1 Software,"[62] "iPhone User Guide For iOS 7 (October 2013),"[63] "iPad User Guide For iOS 7 (October 2013),"[64] "iPod touch User Guide For iOS 7 (October 2013),"[65] "MFMessageComposeViewController Class Reference,"[66] and other similar user guides and support documentation available on Apple's support[67] and developer[68] websites. When manufacturers, customers, resellers, and end-use customers follow such instructions, they directly infringe the '515 Apple Asserted Claims. Apple knows that by providing such instructions, manufacturers, customers, resellers, and end-use customers follow those instructions, and directly infringe the '515 Apple Asserted Claims.

---

[62] Available on Apple's website at
http://manuals.info.apple.com/MANUALS/0/MA616/en_US/iPhone_iOS3.1_User_Guide.pdf.
[63] Available on Apple's website at
http://manuals.info.apple.com/MANUALS/1000/MA1565/en_US/iphone_user_guide.pdf.
[64] Available on Apple's website at
http://manuals.info.apple.com/MANUALS/1000/MA1595/en_US/ipad_user_guide.pdf.
[65] Available on Apple's website at
http://manuals.info.apple.com/MANUALS/1000/MA1596/en_US/ipod_touch_user_guide.pdf.
[66] Available on Apple's website at
https://developer.apple.com/library/ios/documentation/MessageUI/Reference/MFMessageComposeViewController_
class/Reference/Reference.html.
[67] *See* http://www.apple.com/support/.
[68] *See* https://developer.apple.com/.

McKool 950190v2

Apple thus knows that its actions actively induce infringement.  Apple performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '515 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

198.    Apple indirectly infringes the '515 Patent, by contributing to infringement by others, such as customers, resellers, and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by the customers, resellers, and/or end-use customers of the accused upload services and/or devices.  Apple received notice of the '515 Patent at least as of the date this lawsuit was filed.

199.    Apple's upload services and/or devices allow for the obtaining of digital content, pre-processing it, and transmitting it to another device, server, or location.  When the accused upload services and/or devices are used to send digital content of a certain size and/or dimension over carrier networks and/or wi-fi networks, the accused upload services and/or devices must necessarily pre-process and upload digital media in an infringing manner.  Upon information and belief, the accused upload services and/or devices cannot operate in an acceptable manner absent the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location.

200.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is especially made or especially adapted to operate on Apple's upload services and/or devices.

201.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is not a staple article or commodity of commerce and that its use is required for operation of the accused

upload services and/or devices.    Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

202.    Apple's accused upload services and/or devices, with the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location, are each a material part of the invention of the '515 Patent and are especially made for the infringing manufacturing, offering for sale, sales, and use of the accused upload services and/or devices.    The accused upload services and/or devices are especially made or adapted to infringe the '515 Patent. Because the manufacturing, offering for sale, sales, and use of the accused upload services and/or devices infringe the '515 Patent, Apple's sales of its infringing products have no substantial non-infringing uses.

203.    Accordingly, a reasonable inference is that Apple offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '515 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

204.    Apple's acts have caused, and unless restrained and enjoined, will continue to cause irreparable injury and damage to Summit 6 and its affiliates for which there is no adequate remedy at law.  Unless enjoined by this Court, Apple will continue to infringe the '515 Patent.

### Twitter Infringes the '515 Patent

205.    Twitter has and continues to directly infringe the '515 Patent by making, using, selling, offering for sale, or importing into the United States products and/or methods covered by claims 1-3, 5-7, 10, 11, 14-19, 21-30, 33-38, 40, 41, 44, and 48 of the '515 Patent (hereinafter the "'515 Twitter Asserted Claims"), including, but not limited to Twitter's upload services.  The

accused upload services that infringe one or more of the above-listed claims include, but are not limited to, at least the following: the Twitter Application for iPhone, the Twitter Application for iPad, the Twitter Application for Android, the Twitter Application for Android Tablet, and any other Twitter Application capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or location; the Twitter content upload functionality integrated into the native sharing options for iOS and Android devices; Twitter's APIs related to obtaining digital content, pre-processing it, and transmitting it to another device, server, or location; Twitter's mobile website; and Twitter's website-related infrastructure.  Further discovery may reveal additional infringing products, models, and/or functionality.

206.    Twitter makes, uses, sells, offers for sale, or imports into the United States these upload services and thus directly infringes at least the '515 Twitter Asserted Claims. Additionally, upon information and belief, Twitter creates the source code related to each of these upload services.  These acts are a direct infringement of the '515 Twitter Asserted Claims. Upon information and belief, Twitter also uses these upload services via its internal use and testing in the United States, directly infringing each of the '515 Twitter Asserted Claims. Twitter also directly infringes the '515 Twitter Asserted Claims when it executes its code responsible for the operation of the accused upload services.

207.    Twitter has and continues to induce and to contribute to infringement of the '515 Patent by intending that others, including co-defendants HTC Corp., HTC America, LGE Inc., LGE USA, LGE MobileComm, Motorola, and Apple, make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by the '515 Twitter Asserted Claims, including, but not limited to Twitter's upload services listed above.  Twitter provides these upload services to others, such as co-defendants, manufacturers, customers, resellers, application

developers, and end-use consumers who in turn use, offer for sale, or sell in the United States these upload services that infringe the '515 Twitter Asserted Claims.

208.    Twitter indirectly infringes the '515 Patent by inducing infringement by others, such as co-defendants, manufacturers, customers, resellers, application developers, and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.    Direct infringement is the result of activities performed co-defendants, the manufacturers, customers, resellers, application developers, and/or end-use customers of the accused upload services.    Twitter received notice of the '515 Patent at least as of the date this lawsuit was filed.    Twitter provides at least the accused upload services to others, such as co-defendants, manufacturers, customers, resellers, application developers, and/or end-use customers, in the United States, who, in turn, offer for sale, sell, or use these upload services to infringe the '515 Patent.    Through its manufacture and sale of the accused upload services, Twitter specifically intended co-defendants, manufacturers, customers, resellers, application developers, and/or end-use customers to infringe the '515 Patent.

209.    Twitter specifically intends for others, such as co-defendants, to directly infringe the '515 Twitter Asserted Claims in the United States.    For example, Twitter provides its accused upload services to HTC Corp. for integration into HTC Corp.'s accused upload services and/or devices.    For example, Twitter provides its accused upload services to HTC America for integration into HTC America's accused upload services and/or devices.    For example, Twitter provides its accused upload services to LGE Inc. for integration into LGE Inc.'s accused upload services and/or devices.    For example, Twitter provides its accused upload services to LGE USA for integration into LGE USA's accused upload services and/or devices.    For example, Twitter provides its accused upload services to LGE MobileComm for integration into LGE MobileComm's accused upload services and/or devices.    For example, Twitter provides its

accused upload services to Motorola for integration into Motorola's accused upload services and/or devices.    For example, Twitter provides its accused upload services to Apple for integration into Apple's accused upload services and/or devices.    When co-defendants include the integrated Twitter content upload functionality in their accused upload services and/or devices, they directly infringe the '515 Twitter Asserted Claims.    Twitter knows that providing the integrated Twitter content upload functionality to co-defendants induces co-defendants to directly infringe the '515 Twitter Asserted Claims.    Twitter thus knows that its actions actively induce infringement.    Twitter performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '515 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

210.    Twitter also specifically intends for others, such as manufacturers, customers, resellers, application developers, and end-use customers, to directly infringe the '515 Twitter Asserted Claims in the United States.    For example, Twitter provides instructions to manufacturers, customers, resellers, application developers, and end-use customers regarding the use and operation of Twitter's accused services in an infringing way.    Such instructions include at least "Getting started with Twitter for iPhone,"[69] "Getting started with Twitter for Android,"[70] "Using mobile.twitter.com on a smartphone or tablet,"[71] "POST statuses/update_with_media,"[72] and other similar user guides and support documentation available on Twitter's support[73] and developer[74] websites.    When manufacturers, customers, resellers, application developers, and end-use customers follow such instructions, they directly infringe the '515 Twitter Asserted

---

[69] Available on Twitter's website at https://support.twitter.com/articles/20169500.
[70] Available on Twitter's website at https://support.twitter.com/groups/54-mobile-apps/topics/223-android/articles/168930-getting-started-with-twitter-for-android.
[71] Available on Twitter's website at https://support.twitter.com/groups/54-mobile-apps/topics/224-mobile-web/articles/20113771-using-mobile-twitter-com-on-a-smartphone-or-tablet.
[72] Available on Twitter's website at https://dev.twitter.com/docs/api/1.1/post/statuses/update_with_media.
[73] *See* https://support.twitter.com/.
[74] *See* https://dev.twitter.com/.

McKool 950190v2

Claims.  Twitter knows that by providing such instructions, manufacturers, customers, resellers, application developers, and end-use customers follow those instructions, and directly infringe the '515 Twitter Asserted Claims.  Twitter thus knows that its actions actively induce infringement. Twitter performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '515 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

211.    Twitter indirectly infringes the '515 Patent, by contributing to infringement by others, such as co-defendants, customers, resellers, application developers, and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States.  Direct infringement is the result of activities performed by co-defendants, customers, resellers, application developers, and/or end-use customers of the accused upload services. Twitter received notice of the '515 Patent at least as of the date this lawsuit was filed.

212.    Twitter's upload services allow for the obtaining of digital content, pre-processing it, and transmitting it to another device, server, or location.  When the accused upload services are used to send digital content of a certain size and/or dimension over carrier networks and/or wi-fi networks, the accused upload services and/or devices pre-process and send digital media in an infringing manner.  Upon information and belief, the accused upload services cannot operate in an acceptable manner absent the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location.

213.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is especially made or especially adapted to operate on Twitter's upload services.

214.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location is not a

staple article or commodity of commerce and that its use is required for operation of the accused upload services. Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

215.    Twitter's accused upload services, with the ability to obtain digital content, pre-process it, and transmit it to another device, server, or location, are each a material part of the invention of the '515 Patent and are especially made for the infringing manufacturing, offering for sale, sales, and use of the accused upload services. The accused upload services are especially made or adapted to infringe the '515 Patent. Because the manufacturing, offering for sale, sales, and use of the accused upload services infringe the '515 Patent, Twitter's sales of its infringing products have no substantial non-infringing uses.

216.    Accordingly, a reasonable inference is that Twitter offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '515 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

217.    Twitter's acts have caused, and unless restrained and enjoined, will continue to cause irreparable injury and damage to Summit 6 and its affiliates for which there is no adequate remedy at law. Unless enjoined by this Court, Twitter will continue to infringe the '515 Patent.

## <u>COUNT III</u>

### Infringement of the '557 Patent

218.    Summit 6 repeats and realleges the allegations in paragraphs 1-217 as though fully set forth herein.

### Twitter Infringes the '557 Patent

219.    Twitter has and continues to directly infringe the '557 Patent by making, using, selling, offering for sale, or importing into the United States products and/or methods covered by claims 1, 2, 4, 7, 10-16, 18, 23-29, 31, 33-38, and 41-44 of the '557 Patent (hereinafter the "'557 Twitter Asserted Claims"), including, but not limited to Twitter's upload services.  The accused upload services that infringe one or more of the above-listed claims include, but are not limited to, at least the following: Twitter's mobile website, mobile.twitter.com, and related infrastructure when used on a smartphone or tablet device, and any other Twitter website and related infrastructure capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or location.  Further discovery may reveal additional infringing products, models, and/or functionality.

220.    Twitter makes, uses, sells, offers for sale, or imports into the United States these upload services and thus directly infringes at least the '557 Twitter Asserted Claims. Additionally, upon information and belief, Twitter creates the source code related to each of these upload services.  These acts are a direct infringement of the '557 Twitter Asserted Claims. Upon information and belief, Twitter also uses these upload services via its internal use and testing in the United States, directly infringing each of the '557 Twitter Asserted Claims. Twitter also directly infringes the '557 Twitter Asserted Claims when it executes its code responsible for the operation of the accused upload services.

221.    Twitter has and continues to induce and to contribute to infringement of the '557 Patent by intending that others make, use, import into, offer for sale, or sell in the United States, products and/or methods covered by the '557 Twitter Asserted Claims, including, but not limited to Twitter's upload services listed above.  Twitter provides these upload services to others, such as co-defendants, manufacturers, customers, resellers, application developers, and end-use

consumers who in turn use in the United States these upload services that infringe the '557 Twitter Asserted Claims.

222.    Twitter indirectly infringes the '557 Patent by inducing infringement by others, such as co-defendants, manufacturers, customers, resellers, application developers, and end-use customers, in accordance with 35 U.S.C. § 271(b) in this District and elsewhere in the United States.    Direct infringement is the result of activities performed co-defendants, the manufacturers, customers, resellers, application developers, and/or end-use customers of the accused upload services.  Twitter received notice of the '557 Patent at least as of the date this lawsuit was filed.  Twitter provides at least the accused upload services to others, such as co-defendants, manufacturers, customers, resellers, application developers, and/or end-use customers, in the United States, who, in turn, use these upload services to infringe the '557 Patent.  Through its manufacture and sale of the accused upload services, Twitter specifically intended co-defendants, manufacturers, customers, resellers, application developers, and/or end-use customers to infringe the '557 Patent.

223.    Twitter specifically intends for others, such as manufacturers, customers, resellers, application developers, and end-use customers, to directly infringe the '557 Twitter Asserted Claims in the United States.    For example, Twitter provides instructions to manufacturers, customers, resellers, application developers, and end-use customers regarding the use and operation of Twitter's accused services in an infringing way.  Such instructions include at least "Using mobile.twitter.com on a smartphone or tablet,"[75] "I'm having trouble with mobile.twitter.com,"[76] "FAQs about mobile.twitter.com,"[77] and other similar user guides and

---

[75] Available on Twitter's website at https://support.twitter.com/articles/20113771-using-mobile-twitter-com-on-a-smartphone-or-tablet.
[76] Available on Twitter's website at https://dev.twitter.com/docs/api/1.1/post/statuses/update_with_media.
[77] Available on Twitter's website at https://support.twitter.com/groups/54-mobile-apps/topics/224-mobile-web/articles/20169900-faqs-about-mobile-twitter-com.

support documentation available on Twitter's support[78] and developer[79] websites. When manufacturers, customers, resellers, application developers, and end-use customers follow such instructions, they directly infringe the '557 Twitter Asserted Claims. Twitter knows that by providing such instructions, manufacturers, customers, resellers, application developers, and end-use customers follow those instructions, and directly infringe the '557 Twitter Asserted Claims. Twitter thus knows that its actions actively induce infringement. Twitter performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '557 Patent, and with knowledge or willful blindness that the induced acts would constitute infringement.

224. Twitter indirectly infringes the '557 Patent, by contributing to infringement by others, such as co-defendants, customers, resellers, application developers, and end-use customers, in accordance with 35 U.S.C. § 271(c) in this District and elsewhere in the United States. Direct infringement is the result of activities performed by co-defendants, customers, resellers, application developers, and/or end-use customers of the accused upload services. Twitter received notice of the '557 Patent at least as of the date this lawsuit was filed.

225. Twitter's upload services allow for the obtaining of digital content, pre-processing it, and transmitting it to or receiving it at another device, server, or location. When the accused upload services are used to send digital content of a certain size and/or dimension over carrier networks and/or wi-fi networks, the accused upload services pre-process that digital content in an infringing manner. Upon information and belief, the accused upload services cannot operate in an acceptable manner absent the ability to pre-process media objects.

---

[78] *See* https://support.twitter.com/.
[79] *See* https://dev.twitter.com/.

226.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to or receive it at another device, server, or location is especially made or especially adapted to operate on Twitter's upload services.

227.    A reasonable inference to be drawn from the facts set forth is that the ability to obtain digital content, pre-process it, and transmit it to or receive it at another device, server, or location is not a staple article or commodity of commerce and that its use is required for operation of the accused upload services.  Any other use would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental.

228.    Twitter's accused upload services, with the ability to obtain digital content, pre-process it, and transmit it to or receive it at another device, server, or location, are each a material part of the invention of the '557 Patent and are especially made for the infringing manufacturing, offering for sale, sales, and use of the accused upload services.  The accused upload services are especially made or adapted to infringe the '557 Patent.  Because the manufacturing, offering for sale, sales, and use of the accused upload services infringe the '557 Patent, Twitter's sales of its infringing products have no substantial non-infringing uses.

229.    Accordingly, a reasonable inference is that Twitter offers to sell, or sells within the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing the '557 Patent, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

230.    Twitter's acts have caused, and unless restrained and enjoined, will continue to cause irreparable injury and damage to Summit 6 and its affiliates for which there is no adequate remedy at law.  Unless enjoined by this Court, Twitter will continue to infringe the '557 Patent.

## DEMAND FOR JURY TRIAL

Summit 6 hereby demands a jury for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Summit 6 respectfully requests that this Court enter judgment in its favor and grant the following relief:

A.    that Defendants' accused products infringe the claims of the Patents-in-Suit;

B.    award Summit 6 damages in an amount adequate to compensate Summit 6 for Defendants' accused products' infringement of the claims of the Patents-in-Suit, but in no event less than a reasonable royalty under 35 U.S.C. § 284;

C.    award enhanced damages pursuant to 35 U.S.C. § 284;

D.    award Summit 6 pre-judgment interest and post-judgment interest at the maximum rate allowed by law;

E.    award Summit 6 its costs of court;

F.    enter an order declaring that this is an exceptional case and award Summit 6 its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

G.    order an accounting for damages;

H.    enter a preliminary and permanent injunction enjoining Defendants, and all others in active concert with Defendants, from further infringement of the Patents-in-Suit;

I.    award a compulsory future royalty for any patent of the Patents-in-Suit for which an injunction does not issue; and

J.    award such further relief as the Court deems just and proper.

Dated:  February 18, 2014          Respectfully submitted,

                                   **MCKOOL SMITH, P.C.**

                                   By:  /s/ Douglas A. Cawley
                                   Douglas A. Cawley
                                   Lead Attorney
Texas State Bar No. 04035500
dcawley@mckoolsmith.com
Theodore Stevenson III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
Phillip M. Aurentz
Texas State Bar No. 24059404
paurentz@mckoolsmith.com
Ashley N. Moore
Texas State Bar No. 24074748
amoore@mckoolsmith.com
Mitchell R. Sibley
Texas State Bar No. 24073097
msibley@mckoolsmith.com
Richard A. Kamprath
Texas State bar No. 24078767
rkamprath@mckoolsmith.com
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Bradley W. Caldwell
Texas State Bar No. 24040630
bcaldwell@caldwellcc.com
Caldwell Cassady & Curry
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
Telecopier: (214) 888-4849

**ATTORNEYS FOR PLAINTIFF
SUMMIT 6 LLC**