## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | |
|---|---|
| **SUMMIT 6 LLC,** §<br>§ | |
| **Plaintiff,** §<br>§ | |
| **v.** §<br>§ | |
| **HTC CORPORATION, HTC** §<br>**AMERICA, INC., LG** § | **Civil Action No. 7:14-cv-0014-O** |
| **ELECTRONICS, INC., LG** §<br>**ELECTRONICS USA, INC., LG** §<br>**ELECTRONICS MOBILECOMM** §<br>**USA, INC., MOTOROLA** §<br>**MOBILITY LLC, APPLE INC., and** §<br>**TWITTER, INC.,** § | |
| **Defendants.** §<br>§ | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Defendants' Motion to Transfer to the Northern District of California,
filed June 10, 2014 (ECF No. 89) and Defendant Apple Inc.'s Motion to Sever, filed June 25, 2014
(ECF No. 111).  Having considered the motions, responses, replies, appendices, record, and for the
reasons that follow, the Court denies Defendants' Motion to Transfer to the Northern District of
California, and grants in part and denies in part Defendant Apple Inc.'s Motion to Sever.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Summit 6 LLC ("Summit 6") is a Dallas-based company which "provides media
upload technology to device manufacturers, and providers of online services."  *See* Summit 6
Overview, www.summit6.com (last visited September 5, 2014).  Summit 6 is the owner by
assignment of three United States Patents relating to processing digital images, specifically, U.S.

Patent Nos. 6,895,557 ("the '557 Patent"), 7,765,482 ("the '482 Patent"), and 8,612,515 ("the '515 Patent") (collectively, the "Patents-in-Suit"). The '557 Patent is entitled "Web-based Media Submission Tool," and relates to "the handling, manipulation and processing of digital content and more particularly to the transportation and Internet publishing of digital content, particularly image media objects and rich media." *See* U.S. Patent No. 6,895,557 col. 1 l. 11-12 (filed July 21, 1999). The '482 Patent is a continuation of the earlier '557 Patent, and is also entitled "Web-based Media Submission Tool," and relates to "the handling, manipulation and processing of digital content." *See* U.S. Patent No. 7,765,482 col. 1 l. 11-12 (filed October 8, 2004). The '515 Patent is entitled "System, Method and Apparatus for Media Submission," and, like the '557 and '482 Patents, relates to "the handling, manipulation and processing of digital content and more particularly to the transportation and Internet publishing of digital content, particularly image media objects and rich media." *See* U.S. Patent No. 6,895,515 col. 1 l. 11-12 (filed April 29, 2011).

In 2011, Summit 6 sued defendants Research in Motion Corp., Research in Motion Ltd., Samsung Electronics Co., Ltd., Samsung Telecommunications America LLC, Multiply Inc., and Facebook Inc. for infringing the '482 Patent and the '557 Patent in the Northern District of Texas. *See Summit 6 LLC v. Research in Motion Corp., et al.*, No. 3:11-cv-367-O. During the pendency of the case, the Court reviewed the technology, construed the '557 and '482 Patents, ruled on various evidentiary issues, presided over a jury trial on infringement and validity, and held a separate non-jury trial on inequitable conduct relating to the '482 Patent. The jury found infringement and awarded Summit 6 $15 million in damages. The Court entered judgment in favor of Summit 6 and the case is currently on appeal. *See Summit 6 LLC v. Samsung Electronics Co., Ltd.*, Federal Circuit Appeal No. 13-648.

2

On February 18, 2014, Summit 6 filed this patent infringement lawsuit alleging infringement of the '557 and '482 Patents, as well as the '515 Patent, against application developer Twitter, Inc. ("Twitter") and four mobile device manufacturers and their affiliates, namely, Apple Inc. ("Apple"), HTC Corporation and HTC America, Inc. (collectively, "HTC"), LG Electronics, Inc., LG Electronics USA, Inc., and LG Electronics MobileComm USA, Inc. (collectively, "LGE"), and Motorola Mobility LLC ("Motorola").   The gravamen of Summit 6's lawsuit is that Defendants are using Summit 6's patented technology without permission to produce and sell devices and/or operate online services capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or location.   *See generally* First Amended Compl., ECF No. 6.   Summit 6 alleges that all Defendants have infringed, and continue to infringe, directly, contributorily, and/or through the inducement of others, the claim inventions of the '482 Patent and the '515 Patent.   *See id.*   As to Twitter, Summit 6 alleges that Twitter has infringed, and continues to infringe, directly, contributorily, and/or through the inducement of others, the claim inventions of the three Patents-in-Suit through certain of its upload services.   *See id.* ¶¶ 107-119, 205-217, 219-230.   Twitter's accused upload services include "the Twitter Application for iPhone, the Twitter Application for iPad, the Twitter Application for Android Tablet, and any other Twitter Application capable of obtaining digital content, pre-processing it, and transmitting it to another device, server, or location; the Twitter content upload functionality integrated into the native sharing options for iOS and Android devices; Twitter's [Application Programming Interfaces] APIs related to obtaining digital content, pre-processing it, and transmitting it to another device, server, or location; Twitter's mobile website; and Twitter's website-related infrastructure."   *See id.* ¶¶ 107, 205, 219.   As to the mobile device manufacturers, Summit 6 alleges infringement of the '482 Patent and the '515 Patent based on each

3

device's messaging technology, including use of "MMS functionality," "Message-related APIs," "the integrated Twitter content upload functionality," and "MMS-to-Twitter functionality." *See id.* ¶¶ 23, 35, 47, 59, 71, 83, 95, 121, 133, 145, 153, 169, 181, 193. Summit 6 seeks injunctive relief, as well as damages, attorney's fees and costs.

Defendants deny infringement and have asserted the affirmative defense that the Patents-in-Suit are invalid, and, with regard to the '482 and '515 Patents, that the Patents are unenforceable due to inequitable conduct of the inventors and prior owners of these patents. Defendants Motorola, Twitter and HTC have also filed counterclaims for declaratory judgment of non-infringement and invalidity of the Patents-in-Suit. *See generally* Apple Inc.'s Ans. & Aff. Def., ECF No. 49; Def. Motorola's Ans. & Countercl., ECF No. 51; Twitter, Inc.'s Ans. & Countercl., ECF No. 53; Ans. & Aff. Def. & Countercl. of HTC Def., ECF No. 66; Ans. of LGE Def., ECF No. 64.

Plaintiff Summit 6 is a Delaware limited liability company with its principal place of business in Dallas, Texas. First Amended Compl. ¶¶ 219-230; App. Supp. Resp. Ex. 4 (Pate Decl.) ¶¶ 12-18, ECF No. 118-1. Defendants' places of incorporation and principal places of business are scattered. Defendant Apple is a California corporation with its headquarters in Cupertino, California, which is in the Northern District of California.. App. Supp. Mot. Transfer Ex. 240 (Buckley Decl.) ¶ 5, ECF No. 91-5. Defendant Twitter is a Delaware corporation with its principal place of business in San Francisco, California, which is in the Northern District of California. *Id.* Ex. 238 (Axelsen Decl.) ¶ 4. Defendant HTC Corporation is a Taiwanese corporation with its principal place of business in Taiwan, ROC. *Id.* Ex. 249 (Bariault Decl.) ¶ 2. Defendant HTC America, Inc. is incorporated in Washington and has its principal place of business in Bellevue, Washington. *Id.* Defendant LG Electronics Mobilecomm U.S.A., Inc. ("LGE MobileComm") is a

4

California corporation with its headquarters in San Diego, California, which is in the Southern District of California.  *Id.* Ex. 297 (Son Decl.) ¶ 3.  Defendant LG Electronics, Inc. ("LGE Inc.") is a Korean company with its headquarters in Seoul, South Korea.  *Id.* ¶ 4.  Defendant LG Electronics USA, Inc. is a wholly-owned subsidiary of LGE Inc., and has a warehouse facility in Fort Worth, Texas  *Id.* ¶¶ 4, 21-22.  Defendant Motorola is a Delaware limited liability company with its principal place of business in Chicago, Illinois.  *Id.* Ex. 245 (Brown Decl.) ¶ 3.

Defendants move to transfer all proceedings against them to the Northern District of California under 28 U.S.C. § 1404(a).  In the event the Court denies the motion to transfer venue, Apple has filed a contingent motion to sever and transfer.  The motions have been fully briefed and are ripe for adjudication.

## II.    MOTION TO TRANSFER VENUE

### A.    Legal Standard

Under 28 U.S.C. § 1404(a), a district court may transfer any civil case "[f]or the convenience of the parties and witnesses, in the interest of justice . . . to any other district or division where it might have [originally] been brought."   The decision to transfer a pending case is committed to the sound discretion of the district court.  *Jarvis Christian Coll. v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988).

A threshold inquiry is whether the suit "might have been brought" in the proposed transferee district.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (en banc) (*Volkswagen II*).  Once a defendant satisfies that burden, the Court weighs certain factors to determine if transfer is warranted.  *Id.* n.9; *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507-08 (1947).  "It is well settled that the party moving for a change of venue bears the burden of demonstrating why the forum

5

should be changed." *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993). Placing the burden on the moving party to show "good cause" for the transfer "reflects the appropriate deference to which the plaintiffs' choice of venue is entitled." *Volkswagen II*, 545 F.3d at 315. The burden on the movant is "significant," and for a transfer to be granted, the transferee venue must be "clearly more convenient than the venue chosen by the plaintiff." *Id.*

When considering whether to grant a motion to transfer venue, courts must consider a series of public and private interest factors, none of which is dispositive. *Id.* "The private interest factors are: '(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.'" *Id.* (quoting *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). "The public interest factors are: '(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws . . . .'" *Id.* A court may transfer venue when these factors show that a different venue would be more convenient for the parties involved. *Id.* at 314. "Although [these factors] are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Id.* at 315. Further, "none [of these factors] can be said to be of dispositive weight." *Id.* (quoting *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.*, 358 F.3d 337, 340 (5th Cir. 2004)). When transferring venues would simply shift inconveniences, transfer is inappropriate. *First Fitness Int'l, Inc. v. Thomas*, 533 F. Supp. 2d 651, 658 (N.D. Tex. 2008). Fifth Circuit precedent clarifies that the plaintiff's choice of venue is not a distinct factor in the § 1404(a) analysis, but "when the

6

transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Volkswagen II*, 545 F.3d at 314-15.

The purpose of § 1404(a) "is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted).  As a result, in addition to the private and public interest factors, "in appropriate circumstances, courts have analyzed the goal of preventing unnecessary inconvenience and expense under the rubric of 'judicial economy.'" *Patent Harbor, LLC v. Twentieth Century Fox Home Entm't, LLC*, 2012 WL 1903875, at *2 (E.D. Tex. May 25, 2012).  Further, "courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice." *Id.* (quoting *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010)) (additional citation omitted); *see also* 28 U.S.C. § 1404(a) ("For the convenience of the parties and witnesses, in *the interest of justice* . . . ") (emphasis added).  In certain cases, the potential "inconvenience" of the parties may be outweighed by judicial economy considerations.  *See, e.g., Patent Harbor*, 2012 WL 1903875 at *2 ; *ColorQuick LLC v. Vistaprint Ltd.*, 2010 WL 5136050, at *7 (E.D. Tex. Jul. 22, 2010), *mandamus denied*, *In re Vistaprint, Ltd.*, 628 F.3d 1342 (Fed. Cir. 2010) (denying transfer where most convenience factors weighed in favor of transfer since "[t]he parties and the judiciary would benefit from the Court's familiarity with the patent-in-suit, which would require a substantial investment of time, energy and money to replicate.")

### B.    Summary of Parties' Arguments

Defendants argue that transferring this case to the Northern District of California is proper because the majority of the public and private interest factors considered by the Fifth Circuit weigh

in favor of transfer.  *See* Defs.' Br. Supp. Mot. Transfer 9, ECF No. 90.  Specifically, Defendants

contend that the Northern District of California could compel third-party witnesses, would be more

convenient for known witnesses, would have easier access to sources of proof, and trial would be

more expeditious and less expensive.  *Id.* at 9-10.  Defendants argue that Wichita Falls would be an

inconvenient forum for all traveling witnesses because Wichita Falls does not have a major airport,

and therefore all flights must connect through Dallas/Fort Worth.  *Id.* at 14.  In particular, Defendants

note that travel time for witnesses located in the State of Washington, in San Diego, California,  in

Taiwan, and in Korea will be shorter if the trial is held in California rather than in Texas.  *Id.* at 15.

In short, Defendants argue that because the parties have extensive connections to the Northern

District of California but lack relevant connections to the Northern District of Texas, a transfer of

venue is warranted.

Summit 6 opposes transfer, arguing that Defendants fail to meet their burden of showing the

transferee venue is "clearly more convenient than the venue chosen by Plaintiff."  Pl.'s Resp. Mot.

Transfer 17 (quoting *Volkswagen II*, 545 F.3d at 315), ECF No. 118.  Summit 6 contends that

Defendants' motion ignores ties to the Northern District of Texas, and misleadingly focuses on

undisclosed "likely" witnesses, unknown "potential" witnesses, and hypothetical third parties.  *Id.*

at 1.  Summit 6 also argues that the Court's past experience with two of the three Patents-in-Suit

weighs in favor of denying transfer:

> Defendants pay scant lip-service to the previous Summit 6 case against Facebook,
> Samsung, and others.  They minimize the fact that this very Court proceeded all the
> way through pre-trial on two of the three Patents-in-Suit, and went through a liability
> trial, an inequitable conduct trial, and post-trial briefing for one of the Patents-in-
> Suit.  *Summit 6, LLC v. RIM*, Case No. 3:11-cv-0367-O (N.D. Tex. filed Feb. 23,
> 2011) (O'Connor, J.).

*Id.* at 3.   According to Summit 6, "[t]his Court's past experience is significant, it substantially overlaps with the issues in the current case, and will likely involve similar or identical evidence as that in the current case.  *Id.* at 9.

### C.   Analysis

#### 1.   Proper Venue

The threshold question in a § 1404(a) analysis is whether the civil action might have been originally brought in the transferee court, here, the Northern District of California.  *Volkswagen II*, 545 F.3d at 312.  Summit 6 does not dispute that this case could have been originally brought in the Northern District of California.  The next question, then, is whether transferring the case would be for the convenience of parties and witnesses, and in the interest of justice.   To make this determination, the Court must consider and weigh the private and public interest factors set forth above.

#### 2.   Private Interest Factors

##### a.   *Relative Ease of Access to Sources of Proof*

The first private interest factor is relative ease of access to sources of proof.  *See Volkswagen II*, 545 F.3d at 316.   Defendants contend that it will be substantially more convenient to access sources of proof in the proposed transferee venue because the vast majority of sources of proof and documents relevant to the claims of infringement asserted against the majority of Defendants are located in the Northern District of California.  Through declarations, Defendants provide evidence that Apple's and Twitter's potentially relevant evidence and sources of proof are located in the transferee venue.  *See* App. Supp. Mot. Transfer Ex. 238 (Axelsen Decl.) ¶ 10, ECF No. 91-5 (Twitter); *id.* Ex. 238 (Buckley Decl.) ¶ 4 (Apple).  Defendant Motorola's relevant documents are

either in Chicago, Illinois (Motorola's principal place of business), or in Sunnyvale, California, where it has an office. *Id*. Ex. 245 (Brown Decl.) ¶ 10. HTC has no documents or proof in California, but instead in Taiwan or Bellevue, Washington. *Id.* Ex. 249 (Bariault Decl.) ¶¶ 5, 10-11. LGE MobileComm's relevant U.S.-based documents are located either in San Diego, California (its principal place of business), or in San Jose, California, where it has an office. *Id.* Ex. 297 (Son Decl.) ¶¶ 12-16.

In response, citing declarations submitted by Defendants, Summit 6 emphasizes that HTC has no documents or proof in California, but instead in Taiwan or Bellevue, Washington, and that LGE Inc.'s proof is in Seoul, Korea, not California. Further, Summit 6 argues that "although LG MobileComm states that most of its sources of proof are located in San Jose, California, it appears that at least some of this evidence is actually located in New Jersey." Pl.'s Resp. Mot. Transfer 19 (citing *Vertical Computer Sys., Inc. v. LG Electronics MobileComm USA, Inc.*, 2013 WL 2241947, at *3 (E.D. Tex. May 21, 2013) (noting that LGE argued in support of venue transfer to New Jersey that "several business functions related to LGE MobileComm's mobile phone business have been transitioning to LG Electronics, U.S.A., Inc. in New Jersey[]")). Through a declaration, Summit 6 provides evidence that its documents are, and have been, in Dallas, Texas since 2009. App. Supp. Resp. Ex. 4 (Pate Decl.) ¶¶ 14, 18-19.

"[T]his factor almost invariably turns on which party will most likely have the greater volume of relevant documents and their presumed physical location in relation to the venues under consideration." *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859, 869 (E.D. Tex. 2012). In patent infringement cases, the majority of relevant evidence comes from the accused infringers. *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Thus, "the place where the

10

defendant's documents are kept weighs in favor of transfer to that location." *Id.* (citation omitted).

The location of Apple's, Twitter's, and, in a more limited fashion, LGE MobileComm's, physical evidence lends weight to transfer. However, Defendants fail to establish that the greater volume and presumed physical location of documents and evidence relevant to the case are concentrated in or near the transferee forum. Defendant HTC Corporation's documents and other physical evidence relevant to the accused products are all located in Taiwan. App. Supp. Mot. Transfer Ex. 249 (Bariault Decl.) ¶ 5. Defendant HTC America, Inc.'s documents and other physical evidence relevant to the accused products are located in Washington. *Id.* ¶ 10. Defendant Motorola's documents and other physical evidence relevant to the accused products are located at its Illinois headquarters and at an office in California. *Id.* Ex. 245 (Brown Decl.) ¶ 13. LGE Inc.'s documents are located in Seoul, Korea. *Id.* Ex. 298 (Son Decl.) ¶ 4. Summit 6's documents and other physical evidence are in Texas. App. Supp. Resp. Ex. 4 (Pate Decl.) ¶¶ 14, 18-19.

Based on the evidence presented, where sources of proof originate from varied locations, including California, Washington, Texas, Illinois, Taiwan, and perhaps Korea and New Jersey, the Court concludes this factor is neutral. *See Frito-Lay*, 867 F. Supp. 2d at 869 (holding that where "the sources of proof originate from varied locations, this factor is neutral."); *Perritt v. Jenkins*, 2011 WL 3511468, at *3 (E.D. Tex. July 18, 2011) ("Because sources of proof originate from varied locations, this factor is neutral."); *see also Konami Dig. Entm't Co. Ltd. v. Harmonix Music Sys.*, 2009 WL 781134, at *4 (E.D. Tex. Mar. 23, 2009) ("While Defendants point to [the transferee district] as the location of significant sources of proof, they ignore the remaining sources of proof which originate from other locations.").

Further, the Court agrees with Summit 6 that Defendants' "conclusory statements that [their]

11

documents related to research, design, development, testing and marketing are located in California (or Taiwan or Washington) are too vague to meet their burden." *See* Pl.'s Resp. Mot. Trans. 16. *See generally Core Wireless Licensing, S.A.R.L. v. Apple, Inc.*, 2013 WL 682849, at *3 (E.D. Tex. Feb. 22, 2013) (holding as too speculative Apple, Inc.'s statement that "virtually all Apple business documents and records relating to the research, design, development, marketing strategy, and product revenue related to the Accused products are located in or near Cupertino."), *mandamus denied*, *In re Apple Inc.*, 743 F.3d 1377 (Fed. Cir. 2014). The declarations filed in this case regarding sources of proof and documents are equally conclusory and vague, making it difficult for the Court to weigh this factor.

In short, Defendants have not shown that the Northern District of California is clearly a more convenient forum to access sources of proof for all parties. Accordingly, this factor is neutral.

### b.  Cost of Attendance for Willing Witnesses

The second private interest factor is the cost of attendance of willing witnesses. *See Volkswagen II*, 545 F.3d at 317. "[I]t is the convenience of non-party witnesses, rather than of party witnesses, that is more important and accorded greater weight in a transfer of venue analysis." *Frito Lay*, 867 F. Supp. 2d at 871. The Fifth Circuit established the "100-mile" rule to determine the convenience of the transferee district to the witnesses and parties. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of the convenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-06. Where witnesses are from widely scattered locations, a trial court should not consider its "central location . . . in the absence of witnesses within the plaintiff's choice of venue." *In re Genentech*, 566 F.3d at 1344.

12

Defendants have identified over twenty party witnesses likely to possess specific knowledge relevant to the accused products who reside in the Northern District of California.  Defs.' Br. Supp. Mot. Transfer 11-15.  Defendants also list Lisa T. Wood, the first named inventor of all three Patents-in-Suit, who resides in the transferee district.  Defendants further assert: "To the extent that Summit 6's infringement allegations require Defendants to call trial witnesses with relevant knowledge of the MMS functionalities within the Android operating system used in some of Defendants' accused products (e.g., Google employees), such Google employees are believed to reside in the Northern District of California." *Id.* at 12.

In response, Summit 6 notes that Defendants focus on the convenience of party witnesses, rather than non-party witnesses. Pl.'s Resp. Mot. Transfer 14-15.  Summit 6 also accuses Defendants of "cherry-pick[ing] a large number of redundant witnesses, [and] ignoring those with highly relevant information outside of California.  For example, Motorola neglects to mention that one of the witnesses in its initial disclosure (Andy Koziol) is located in Chicago, Illinois[.]" *Id.* at 13.  Summit 6 lists third-party witnesses who do not reside in California, including one of the inventors who lives in the Czech Republic, the attorney who prosecuted two of the Patents-in-Suit in front of the United States Patent and Trademark Office who resides in Reston, Virginia, and several customers and licensees that use Summit 6's inventions that are in Texas.  App. Supp. Resp. Ex. 4 (Pate Decl.) 2-3, ECF No. 118-1.

 Inconvenience to the party-witnesses residing in the Northern District of California will increase as the distance they must travel increases, and traveling to a local court would be more convenient than traveling to Texas. *See Volkswagen I*, 371 F.3d at 204-06.  While Summit 6 has pointed to a handful of non-party witnesses who will also be inconvenienced, overall the Court

concludes that this factor weighs in favor of transfer. *See generally In re Genentech*, 566 F.3d at 1348 (reversing trial court's decision to deny venue transfer from Eastern District of Texas to Northern District of California, in part, due to "a substantial number of witnesses with material and relevant information residing in either the transferee venue or the state of California who will be unnecessarily inconvenienced in having to travel to Texas to testify.").

>            c.      *Availability of Compulsory Process to Secure Attendance of Witnesses*

Federal Rule of Civil Procedure 45(b)(2) allows a federal court to compel a witness' attendance at a trial or hearing by subpoena. The Court's subpoena power is limited by Rule 45(b)(3), to those witnesses who work or reside less than 100 miles from the courthouse. *See Volkswagen II*, 545 F.3d at 316. This factor would weigh in favor of transfer if the majority of non-party witnesses are located in the Northern District of California. *See id.* The Court gives more weight to those specifically identified witnesses and affords less weight to vague assertions that witnesses are likely located in a particular forum. *Core Wireless Licensing*, 2013 WL 682849, at *3. "The factor will weigh the heaviest in favor of transfer when a transferee venue is said to have 'absolute subpoena power' [which is] subpoena power for both depositions and trials." *Eolas Techs., Inc. v. Adobe Sys., Inc.*, 2010 WL 3835762, at *5 (E.D. Tex. Sept. 28, 2010), *mandamus denied*, *In re Google Inc.*, 412 F. App'x 295 (Fed. Cir. 2011) (citations omitted and punctuation altered).

As described above, the parties have identified potential third-party witnesses located not just in California, but elsewhere in the United States and in foreign countries. As neither district would have absolute subpoena power, on the record presented, the Court concludes this factor is neutral.

14

*See Eolas Techs., Inc.*, 2010 WL 3835762, at *5 (finding this factor neutral where neither district would have absolute subpoena power).

> d.   *All Practical Problems that Make Trial of Case Easy, Expeditious, and Inexpensive*

In addition to repeating prior arguments concerning convenience of witnesses and location of sources of proof, Defendants argue that trying this case in the Northern District of California would resolve many practical problems, including that Wichita Falls does not have an international airport, while the transferee district can be accessed via three international airports.  Defendants also point out that their operations will be disrupted if their employees have to travel to Wichita Falls. Defs.' Br. Supp. Mot. Transfer 19-21.  Summit 6 argues that concerns of judicial economy weigh against transfer.  Pl.'s Resp. Mot. Transfer 9-12.  For the reasons set forth in a separate section below, *see infra* at 19-22, while Defendants raise valid practical problems, the Court concludes that this factor weighs against transfer.[1]  *See PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, 2013 WL 960033, at *5 (E.D. Tex. Mar. 21, 2013) (citing *Volkswagen II*, 566 F.3d at 1351) ("Practical problems include those that are rationally based on judicial economy.")

> 2.    **The Public Interest Factors**

> a.    *Court Congestion*

To determine court congestion, "courts commonly consider the Federal Judicial

---

[1] In the Joint Report for Contents of Scheduling Order, HTC, LGE and Motorola request that, in the event the Court denies the current motion, the Court preside over the trial of this civil action in Dallas or Fort Worth, thereby minimizing the additional inconvenience of having witnesses travel from Dallas/Fort Worth International Airport to Wichita Falls.  *See* Joint Report at 4-5, ECF No. 92.  The Court declines to address the issue of intra-district transfer at this time, though the parties may re-urge it at a later time.  In the interim, the Court will endeavor to accommodate out-of-town counsel by permitting them to confer on locations for pretrial conferences.  The Court notes that United States Magistrate Judge Robert K. Roach has presided over several preliminary matters and has provided the option for telephonic discovery hearings.

caseload statistics." *USPG Portfolio Two, LLC v. John Hancock Real Estate Fin., Inc.*, 2011 WL 1103372, at *5 (N.D. Tex. Mar. 25, 2011) (Fitzwater, J.).   Court congestion can be measured by "whether a trial may be speedier in another court because of a less crowded docket."   *In re Genentech*, 566 F.3d at 1347.   The Federal Circuit has described court congestion as "the most speculative [factor]" since "case-disposition statistics may not always tell the whole story."   *Id.*

The evidence presented by both parties shows that the median time to trial in the Northern District of California (2.3 years) is greater than in the Northern District of Texas (1.68 years).   *See* App. Supp. Resp. Ex. 7 (March 2013 U.S. District Courts Chart), ECF No. 118-1; App. Supp. Mot. Transfer 73-75 (March 2013 U.S. District Courts Chart), ECF No.91-1.   Though Defendants also cite statistics for the median time interval from filing to disposition to argue this factor is neutral, the median time to disposition is of limited relevance.   *See In re Genentech*, 566 F.3d at 1347 (in patent infringement case, court congestion can be measured by "whether a *trial* may be speedier in another court because of a less crowded docket.") (emphasis added).   Summit 6 also correctly notes that this Court has set the case for trial on November 30, 2015, which is less time than the Northern District of Texas median time to trial, and approximately half the time reflected in the statistics for the Northern District of California.   App. Supp. Resp. Ex. 8 (Scheduling Order), ECF No. 118-1.[2]

In sum, based on the evidence presented concerning a faster median time from filing to trial in this district, coupled with the deadlines and trial date set forth in the June 12, 2014 Scheduling Order (ECF No. 93), the Court concludes that, overall, this Court would likely be able to resolve this

---

[2] While Summit 6 also argues that transfer of the case to California would delay the case and therefore increase the cost, which would disadvantage the smaller party (Summit 6) and be advantageous to the Defendants, *see* Pl.'s Resp. Mot. Transfer 7, these concerns do not factor into the Court's analysis.  *See In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013) (holding that "garden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer.")

action more quickly than the transferee court.  Thus, this factor weighs in favor of keeping the case in this Court.

> b.  *Local Interest in Having Localized Interests Decided at Home*

The Court considers local interest in this litigation because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (quoting *Gulf Oil*, 330 U.S. at 508-09).  Defendants argue that the transferee district has a strong local interest in resolving this dispute because, among other things, "Summit 6's infringement allegations call into question the work and reputation of thousands of people in and around the Northern District of California[.]"  Defs.' Br. Supp. Mot. Transfer 23. Defendants also argue this factor weighs in favor of transfer since: (i) one of Summit 6's two employees resides in Northern California; (ii) this action concerns claimed inventions conceived and developed in the Northern District of California; (iii) many of the actions giving rise to Defendants' inequitable conduct defense (including the due diligence performed on Point2 prior art) took place in the Northern District of California; and (iv) considered collectively, Defendants employ nearly 20,000 employees in the Northern District of California, where the majority of Defendants are either headquartered or have offices, and which is also where they developed many of the accused products and services.  *Id.* at 22.  Defendants contend this case has minimal connections with the Northern District of Texas, despite Summit 6 maintaining its principal place of business in Dallas, Texas for several years.  Specifically, Defendants argue that Summit 6's "presence in this District is recent, ephemeral, and an artifact of litigation." *Id.* at 24 (quoting *In re Zimmer Holdings*, 609 F.3d 1378, 1381 (Fed. Cir. 2009)).

It is undisputed that a number of Defendants are headquartered or have offices in the

Northern District of California, that the research and design of some of the accused products took place in the Northern District of California, and that, therefore, the Northern District of California has a local interest in this dispute. *See In re Hoffmann-La Roche*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009) (encouraging courts to consider the work and reputation of individuals involved in developing the accused products). The Northern District of Texas, however, also has a local interest in the outcome of this case since: Summit 6's principal place of business is in this District;[3] Summit 6 has been a Dallas-based company, paying property taxes, and working with Dallas-based Sell.com for almost ten years; all of Summit 6's corporate records, hard-copy documents, historic software packages, and other business materials are located in Dallas and have been since 2009; and Summit 6 has paid property taxes in Dallas every year since 2009, and paid franchise taxes in 2013. App. Supp. Resp. Ex. 4 (Pate Decl.) at 2-3; First Amended Compl. ¶ 4. Contrary to Defendants' argument, this is not an instance where Plaintiff lacks any ties with the transferor forum. *Compare Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 1003 (E.D. Tex. 2009) (granting transfer where transferor forum had no meaningful connection to case) *with Eolas Techs.*, 2010 WL 3835762, at *4 (denying transfer in part based on plaintiff's ties with the transferor forum) and *Novelpoint Learning LLC v. Leapfrog Enters, Inc.*, 2010 WL 5068146, at *5 (E.D. Tex. Dec. 6, 2010) (same). Further, on this record, where Defendants have failed to marshal any evidence of forum manipulation, the Court is not willing to disregard Summit 6's connections to this District as ephemeral or an "artifact of litigation." *See generally In re Hoffmann-La Roche*, 587 F.3d at 1336-

---

[3] The Court does not give weight to Summit 6's choice of venue. *See In re Volkswagen II*, 545 F.3d at 315. The Court, however, does consider Summit 6's location in determining whether transfer would be more convenient for it, just as the Court considers every other party's location for the same purpose. *See id.*

37 (holding that connection with forum should be discounted where evidence revealed plaintiff's counsel's deliberate acts to manipulate venue in anticipation of litigation by sending all documents to the offices of its litigation counsel in Texas).

In sum, each district has a local interest in the outcome of this dispute. Thus, this factor is neutral.

### c.   Familiarity with the Law and Conflicts of Law

The parties agree that the third and fourth public interest factors — familiarity of the forum with the law that will govern the case and avoidance of unnecessary problems of conflicts of laws — are neutral. Accordingly, the Court need not address these factors in detail.

### 3.   Judicial Economy

"Generally, a court should transfer a case where most of the witnesses and evidence in the case are closer to the transferee venue, with few or no convenience factors favoring the venue chosen by the plaintiff." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). In certain circumstances, however, the Federal Circuit has found that "[c]onsideration of interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents of Univ. of Cal. v. Eli Lilly and Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (citation and internal marks omitted); *see also In re Aliphcom*, Misc. No. 971, 449 F. App'x 33, 34-35 (Fed. Cir. Feb. 9, 2011); *Patent Harbor, LLC*, 2012 WL 1903875 at *2; *ColorQuick LLC*, 2010 WL 5136050 at *7; 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. § 3854, pp. 439-40 (2d ed. 1986) (suggesting that "the interests of justice may be decisive in ruling on a transfer motion even though the convenience of parties and witnesses point in a different direction.").

Summit 6 argues that judicial economy weighs in favor of denying transfer as this Court will give the parties a more expeditious and less expensive trial because the Court is "exceedingly familiar" with the Patents-in-Suit and many of the issues at hand, after this Court heard the previous *Summit 6* case. *Id.* Summit 6 notes that the Court has significant experience:

> (1) construing terms from both the '557 and '482 Patents; (2) ruling on summary judgment motions related to validity and infringement of both the '557 and '482 Patents; (3) ruling on evidentiary issues, (4) holding a liability trial on infringement and validity for the '482 Patent; and (5) holding an inequitable conduct trial relating to facts that would be the same across both the '482 Patent and the newly-issued '515 Patent.

*Id.* Summit 6 argues that the instant case is likely to involve "similar or identical evidence" as the first *Summit 6* case, and therefore the Court should keep the case in the interest of judicial economy. *Id.*

Defendants counter that the relevance of the previous *Summit 6* case is overstated and any judicial economy is minimal because:

> (1) this case involves different defendants, different claims, an additional patent, and different accused products and services and, in Apple's case, a different operating system altogether; (2) none of the products and services accused here was at issue in the prior matter; (3) the five adjudged claims of the '482 patent are currently under reexamination; and (4) the PTO recently issued a Final Rejection that held all five claims unpatentable.

Defs.' Reply Br. Supp. Mot. Transfer 8, ECF No. 119. In addition, Defendants argue that judicial economy concerns do not control when another venue is clearly more convenient. Defs.' Br. Supp. Mot. Transfer 20 (citing *In re Zimmer Holdings, Inc.*, 609 F.3d 1378 (Fed. Cir. 2010); *In re Verizon Bus. Network Servs., Inc.*, 635 F.3d 559 (Fed. Cir. 2011)).

The Court finds that the cases upon which Defendants rely are distinguishable. In *In re Zimmer*, the Federal Circuit overruled a district court that had denied transfer to a more convenient

venue because the patentee had a pending suit in the transferor venue involving one of numerous patents asserted in the two cases. 609 F.3d at 1382. The Federal Circuit found that overlap of only one out of numerous patents was not compelling enough to deny a transfer to a clearly more convenient venue based solely on judicial economy grounds. *Id.* In *In re Verizon*, the Federal Circuit found that the " . . . [district court]'s previous claim construction in a case that settled more than five years before the filing of this lawsuit to be too tenuous" a reason to deny transfer. 635 F.3d at 562. In contrast, the Court notes that the previous and instant *Summit 6* cases are more closely related in subject matter and much closer in time than in the cases cited by the Defendants. The previous *Summit 6* litigation, though not concurrent, was filed in 2011, went to trial in 2013, and involved two out of three of the patents at issue in this case. Unlike *In re Zimmer* and *In re Verizon*, both of which only made it to early stages in litigation, the first *Summit 6* case was tried before a jury and finally litigated in this Court.

Although Defendants assert that the opportunity for judicial economy based on this Court's familiarity with the Patents-in-Suit is overstated and the efficiencies are minimal, the Court finds this argument unpersuasive. An evaluation of the public and private interest factors should not ignore this forum's knowledge and experience with the patents and technology, and with the inequitable conduct defenses, as well as the judicial resources the Court previously invested in the first *Summit 6* dispute. *See, e.g., Realtime Data, LLC v. Stanley*, 2010 WL 1064474, at *3 (E.D. Tex. Mar. 18, 2010) ("Where there are related lawsuits involving the same plaintiff, the same patent, and similar technology, transfer to another venue will prevent the parties from taking advantage of the built-in efficiencies that result from having related cases before the same judge.") (citation and internal marks omitted); *Novartis Vaccines and Diagnostics, Inc. v. Bayer Healthcare, LLC*, 2009 WL

3157455, at *5 (E.D. Tex. Sept. 28, 2009) (concluding that because the two actions involve the same patent, "[t]he two cases involve the same claim construction issues and transferring the case will only consume unnecessarily additional judicial resources."); *In re Google*, 412 F. App'x 295, 296 (Fed. Cir. 2011) ("Courts have consistently held that judicial economy plays a paramount role in trying to maintain an orderly, effective, administration of justice and having one trial court decide all of these claims clearly furthers that objective."); *ColorQuick*, 2010 WL 5136050 at *2, 7, 8 (denying transfer where court, in previous case involving the patent-in-suit, had "reviewed technical tutorials, familiarized itself with the patented technology, held a *Markman* hearing, and issued a claim construction opinion").[4]

Further, "the risk of inconsistent claim construction is an important consideration when assessing the importance of judicial economy in transfer analysis." *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, 2010 WL 2771842, at *7 n.8 (E.D. Tex. July 13, 2010); *see also Zoltar Satellite Sys. v. LG Elecs. Mobile Commc'ns Co.*, 402 F. Supp. 2d 731, 735, 736-37 (E.D. Tex. 2005) (in cases involving "highly technical subject matter, such as patent litigation[,]" court's familiarity with patents-in-suit and judicial economy must be considered in transfer analysis).[5]

---

[4] The Court remains mindful that judicial economy concerns generally do not overcome an otherwise compelling case for transfer. *See, e.g., In re Morgan Stanley*, 417 F. App'x 947, 950 (Fed. Cir. 2011) (noting that the proper administration of justice may be to transfer to a far more convenient venue even when the trial court has some familiarity with a matter from prior litigation.). Here, however, the majority of the public and private interest factors are neutral, and the Court concludes that transferring this action now would result in a waste of judicial and party resources and create burdens and redundancies by compelling another court to familiarize itself with the Patents-in-Suit.

[5] Summit 6 correctly notes that at least one Defendant has acknowledged the importance of allowing the same court to hear cases "involv[ing] some of the same claim terms, inventors, patent counsel, and technologies" because it allows "similar, and in some instances identical, issues or claim construction, invalidity, and enforceability." *See* Pl.'s Resp. Mot. Transfer 9-10 (citing HTC's Memorandum of Law in Support of Motion to Transfer Venue in *Flashpoint Tech. Inc. v. HTC Corp.*, 1:14-cv-00317 (E.D.N.C. Nov. 7, 2013)).

### 4.      Conclusion

The Court has considered the private and public interest factors together and does not assign dispositive weight to any one factor.  *See Volkswagen I*, 371 F.3d at 203.  The majority of private and public interest factors are neutral, though the convenience of witnesses weighs slightly in favor of transfer and court congestion weighs slightly against transfer.  Based on the unique factual circumstances presented, the Court concludes that any additional convenience in the transferee venue is outweighed by the concerns of judicial economy and uniformity of claim construction, which favor this Court.  Because Defendants have failed to meet their burden to show good cause that this case should be transferred to the Northern District of California, the motion to transfer venue is denied.[6]

## III.    DEFENDANT APPLE INC.'S CONTINGENT MOTION TO SEVER

Apple has filed a contingent motion to sever requesting that the Court, pursuant to 35 U.S.C. § 299 and Fed. R. Civ. P. 21, "sever Summit 6's claims against Apple from Summit 6's claims against the other defendants."  *See* Mem. Supp. Def. Apple's Mot. Sever ("Apple's Mot. Sever"), 1, ECF No. 112.  Apple further requests that, "to the extent this Court does not transfer this entire action pursuant to the defendants' pending joint motion to transfer to the Northern District of California . . . , this Court transfer at least the severed action against Apple to the Northern District of California."  *Id.*  Summit 6 opposes the motion.  *See* Pl.'s Resp. Def. Apple's Mot. Sever 1, ECF No. 122.

---

[6] To the extent it can be argued that this conclusion relies on fewer than all the private and public interest factors, or emphasizes certain factors over others, the Court notes that "[a]lthough [these] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive."  *Volkswagen II*, 545 F.3d at 315.

### A.      Applicable Legal Standard

In *In re EMC*, the Federal Circuit addressed the proper standard to evaluate whether joinder of a defendant is proper under Rule 20.  *In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012). It clarified that in patent cases "joinder is not appropriate where different products or processes are involved." *Id.*   "Unless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are coincidentally identical." *Id.*  "[T]he mere fact that infringement of the same claims of the same patent is alleged does not support joinder, even though the claims would raise common questions of claim construction and patent invalidity." *Id.* at 1357.  However, the Federal Circuit made clear that *In re EMC* is not an absolute bar to joinder, and the Court must assess whether the challenged actions are part of the "same transaction, occurrence, or series of transactions or occurrences." *Id.*  (using the "transaction or occurrence" test).

The Federal Circuit in *In re EMC* also made clear that "even if joinder is not permitted under Rule 20, the district court has considerable discretion to consolidate cases for discovery and for trial under Rule 42." *Id.* at 1360.  Rule 42 states: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a).  Further, "district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *In re EMC*, 677 F.3d at 1360 (quoting *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010)).  "In a complicated patent litigation a large number of defendants might prove unwieldy, and a district court would be justified in exercising its discretion to deny joinder 'when

different witnesses and documentary proof would be required.'" *Id*. (quoting *Acevdeo*, 600 F.3d at 522).

Ordinarily, issues of joinder and severance are governed by the Federal Rules of Civil Procedure, Rules 20, 21 and 42.  Effective September 16, 2011, joinder in patent cases is governed by the Leahy-Smith America Invents Act ("AIA") under which "accused infringers may not be joined in one action as defendants . . . based solely on allegations that they each have infringed the patent or patents in suit." 35 U.S.C. § 299(b).  Instead, defendants in patent infringement cases may be joined only if:

> (1) [a]ny right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of *the same transaction, occurrence, or series of transactions and occurrences* relating to the making, using, importing into the United States, offering for sale, or selling *of the same accused product or process*; and

> (2) questions of fact common to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. § 299(a) (emphasis added).  The AIA's joinder requirement is more stringent than Rule 20, and adds a requirement that the transaction or occurrence must relate to making, using, or selling of the same accused product or process.  *In re Nintendo*, 544 F. App'x 934, 939 (Fed. Cir. 2013).[7] Thus the AIA limits the number of accused infringers that can be joined as defendants in one lawsuit, thereby creating the possibility of more lawsuits on the same patent.  *See Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272, 1293 (Fed. Cir. 2014).  If parties are misjoined in violation of the AIA, Federal Rule of Civil Procedure 21 provides the remedy of severance.  Fed.

---

[7] Before the AIA, courts permitted joinder of defendants accused of infringing the same patents because there was a common nucleus of operative facts or law in the claims against all the defendants.  *See, e.g., Mymail, Ltd. v. Am. Online, Inc.*, 223 F.R.D. 455, 457 (E.D. Tex. 2004).

R. Civ. P. 21.  Under Rule 21, on motion, or on its own, the court may at any time, on just terms, add or drop a party, or sever any claims against a party.  *Id.*

### B.    Analysis

The propriety of severance in this action hinges on the AIA's first requirement, namely, whether the right to relief against Apple and the other Defendants arises out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process.  *See* 35 U.S.C. § 299(a).  In support of its motion, Apple argues that these AIA requirements are not met since: (1) the accused Apple products are distinct from the accused products and services of the other Defendants, and (2) the facts underlying Summit 6's infringement claims against Apple are distinct from the facts underlying Summit 6's infringement claims against the other Defendants.  Apple also argues that, in addition to being prohibited by the AIA, Apple's joinder with Twitter and the other co-Defendants would be highly prejudicial and confusing to a jury.  Apple's Mot. Sever at 3-9.

In opposition, Summit 6 argues that joinder is permissible since Apple's accused products meet the sameness requirements for joinder, even though they run on the iOS platform and not the Android platform.  *See* Pl.'s Resp. Def. Apple's Mot. Sever 5, ECF No. 122.  Summit 6 further contends that there are common underlying facts with regard to all Defendants, thereby satisfying the same transaction or occurrence test.  *See* Pl.'s Resp. Def. Apple's Mot. Sever 7, ECF No. 122.  Summit 6 states that all handset defendants have common underlying facts, including: "(1) information related to limits on MMS message size, (2) carrier requirements related to MMS messages, and (3) any other third-party requirements related to sending photos via MMS." *Id*. at 7-8.  Summit 6 further posits that there are common underlying facts related to Twitter integration and

photo size restrictions for Twitter.  *Id.* at 8.  In addition, Summit 6 argues Apple's presence in the suit would not be prejudicial or tend to confuse a jury, and that severance of Apple's case could result in "an unnecessary risk of inconsistent claim construction and adjudication."  *See id.* at 10. According to Summit 6, severance would be "a duplicative use of judicial resources" and would "only cause delay and increase costs for the parties and the Court."  *See id.* at 10-11. Finally, Summit 6 argues that even if this Court grants Apple's Motion to Sever, this Court should consolidate the defendants for pre-trial matters and should deny the transfer of this case to the Northern District of California.

Summit 6's Complaint joining Apple with the co-Defendants fails the threshold statutory requirements of 35 U.S.C. § 299.  *See also In re EMC*, 677 F.3d at 1359 ("joinder is not appropriate where different products or processes are involved.").  Summit 6's infringement actions against Apple and the remaining Defendants do not implicate "the same accused product[s] or process[es]" 35 U.S.C. § 299.  As summarized by Apple:

> S6's attempt to join together the defendants based on the existence of two purported "facts" — "MMS functionality" and "Twitter integration," — that allegedly "link" the defendants, rings hollow.  Neither of these "facts" establishes that the accused products are the "same," nor do they constitute a "substantial evidentiary overlap in the facts" that give rise to S6's claims against each defendant.

The Court agrees.  Summit 6's claims against Apple relate to Apple's products, including the iPhone, iPad, and iPad Touch, and Apple's iOS-based proprietary services, including iMessaging, MMS Messaging, Message-related APIs and Twitter integration/functionality on Apple devices.  *See* First Am. Compl. ¶¶ 95, 193.  Summit 6's claims against LGE, HTC and Motorola relate to their Android-based proprietary services for MMS Messaging, Message-related APIs and Twitter integration/functionality on their devices.  *See id.* ¶¶ 23, 35, 47, 59, 71, 83, 121,133, 145, 157, 169,

27

181.  Finally, Summit 6's claims against Twitter do not involve any products but relate to Twitter's upload services.  *See id.* ¶¶ 12, 107, 205, 219.

In sum, Apple's accused products are not the same as the accused products of the remaining Defendants, a requirement for joinder under the AIA.   Accordingly, the Court will grant Apple's motion to sever.[8]

The Court, however, denies Apple's motion to transfer the severed action to the Northern District of California.  It is undisputed that Apple is headquartered in the Northern District of California, the development of Apple's accused products occurred in California, and the bulk of Apple's physical evidence relevant to this lawsuit and employees with relevant knowledge are in the Northern District of California.  *See* App. Supp. Mot. Transfer Ex. 240 (Buckley Decl.) ¶¶ 5-8, ECF No. 91-5.  This evidence would result in the factors concerning ease of access to sources of proof, cost of attendance of willing witnesses, and availability of compulsory process to weigh in favor of transfer. *See In re Nintendo*, 589 F.3d at 1198 ("Generally, a court should transfer a case where most of the witnesses and evidence in the case are closer to the transferee venue, with few or no convenience factors favoring the venue chosen by the plaintiff.").   Nevertheless, the final private interest factor and all of the contested public interest factors continue to weigh in favor of retaining the litigation in this district.   Considering all of these factors, the Court finds that avoidance of piecemeal litigation and the risk of inconsistent claim construction defeat any additional convenience to Apple and its witnesses of litigating in their home forum.   In addition, Apple is not the only Defendant in this suit, and even if Apple is transferred to another district court, this case must

---

[8] The Court's determination that Summit 6's Complaint joining Apple with co-Defendants fails the threshold statutory requirements of 35 U.S.C. § 299 obviates the need to consider Apple's remaining arguments in support of its motion to sever, or Summit 6's responses to these arguments.

proceed with the other Defendants. "Piecemeal litigation in the complex and technical area of patent and trademark law is especially undesirable." *Datatreasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 594 (N.D. Tex. 2003) (Kaplan, M.J.). Further, "[b]y permitting two different courts to interpret the same patent claims, there is a heightened risk of inconsistent rulings which, in turn, promotes uncertainty and impedes the administration of justice." *Id.* at 596; *see also U.S. Ethernet Innovations*, 2010 WL 2771842, at *7 n.8 ("the risk of inconsistent claim construction is an important consideration when assessing the importance of judicial economy in transfer analysis."); *Zoltar Satellite*, 402 F. Supp. 2d at 736-37 (in cases involving "highly technical subject matter, such as patent litigation[,]" court's familiarity with patents-in-suit and judicial economy must be considered in transfer analysis).

Finally, in light of overlapping issues, common subject matter and closely related questions, and to permit efficient case management, the Court orders the newly severed action consolidated with the original filed case as to all issues through pretrial only. *See* Fed. R. Civ. P. 42(a).

## IV.    CONCLUSION

Based on the foregoing, the Court **denies** Defendants' Motion to Transfer to the Northern District of California, and **grants in part** and **denies in part** Defendant Apple Inc.'s Motion to Sever. Specifically, Apple Inc.'s motion to sever is **granted** and its motion to transfer venue is **denied**. The Court **orders** that all claims against Defendant Apple be severed into a separate cause of action. The Court further **orders** the above-severed case consolidated with the original filed action, Cause No. 7-14-cv-0014-O, which is the lead case. All parties are instructed to file any future motions in the lead case. The severed action remains active for trial.

**SO ORDERED this 10th day of September 2014.**

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**