# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# WICHITA FALLS DIVISION

| | | |
|---|---|---|
| SUMMIT 6 LLC, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | |
| HTC CORPORATION, HTC AMERICA, | § | Civil Action No. 7:14-CV-00014-O |
| INC., LG ELECTRONICS, INC., LG | § | |
| ELECTRONICS U.S.A., INC., LG | § | JURY TRIAL DEMANDED |
| ELECTRONICS MOBILECOMM U.S.A., | § | |
| INC., MOTOROLA MOBILITY LLC, and | § | |
| TWITTER INC., | § | |
| | § | |
| Defendants. | § | |
| SUMMIT 6 LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 7:14-CV-00106-O |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| APPLE INC., | § | |
| | § | |
| Defendant | § | |
| | § | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO
AMEND PRELIMINARY INVALIDITY CONTENTIONS**

# INTRODUCTION

Defendants' opening brief established both the necessary good cause and diligence (before and after August 11, 2014) for leave to amend Defendants' preliminary invalidity contentions to add the Axis prior art. Defendants also provided the certification required under Patent Local Rule 3-7. Summit 6's opposition does not dispute the certification, nor does it undermine Defendants' showing that the balance of factors weighs in favor of the motion. Instead, Summit 6 relies on a hindsight argument that Defendants could conceivably have discovered the Axis prior art sooner. That argument lacks merit, however, as evidenced by undisputed history: the Axis prior art went completely undiscovered for years by fifteen defendants, three Examiners, and Summit 6 itself, until LGE uncovered it in late September 2014, through extraordinary insight, hard work, and good fortune.

For the reasons set forth in Defendants' opening brief, the supporting declarations filed therewith, and herein, Defendants respectfully submit that the Court should grant the motion.

# ARGUMENT

## A.    The Court Should Reject Summit 6's Hindsight Arguments

### 1.    Knowledge of the Creamer Patent does not amount to knowledge or notice of the Axis prior art

Summit 6 essentially argues that because (1) Defendants knew of the Creamer Patent, and (2) Axis Communications eventually acquired the Creamer Patent, Defendants should have discovered the Axis prior art sooner. Opp. at 1-2. Summit 6's argument fails for at least the following three reasons.

First, mere knowledge of the *Creamer Patent* does not inform a party of, or provide any reason to search for, the *Axis prior art*. The Creamer Patent identifies *Pentax* as its assignee, not Axis Communications. Further, nowhere does the Creamer Patent mention or refer to the Axis

prior art. Summit 6's notice-based argument is further undermined by the fact that none of the seven *Samsung* defendants, the five non-LGE defendants in this case, the three Patent Examiners, or Summit 6 and its counsel, discovered the Axis prior art, notwithstanding their knowledge of the Creamer Patent.

Second, knowledge of the *Creamer Patent* is irrelevant to whether Defendants acted diligently in searching for prior art. Investigating prior art for purposes of invalidity contentions involves identifying potentially relevant prior art and assessing whether and to what extent each identified reference anticipates and/or renders obvious an asserted patent claim. Ownership and inventorship of known prior art, such as the Creamer Patent, ordinarily are not subjects of such an investigation. Not surprisingly, Summit 6 offers no support for its argument that a diligent prior art investigation would include a "routine process of determining ownership" and reviewing assignment histories (Opp. at 1-2). Indeed, that argument is inconsistent with the applicable law on amendment of preliminary invalidity contentions, as discussed herein and in Defendants' Memorandum in Support of Their Motion to Amend Preliminary Invalidity Contentions ("Def. Brief"), at 7-9. Moreover, if the Axis Prior Art should have been uncovered by as part of any "routine" review of the prior art, as Summit 6 now argues, then Summit 6 and its counsel should have found and disclosed that art to the Patent Office during prosecution of the patents-in-suit and/or in the re-examination of the '482 patent. *See* 37 C.F.R. 1.56. That Summit 6 failed to do so demonstrates the faulty premise.

Finally, that LGE investigated ownership of the Creamer Patent after service of the invalidity contentions does not establish that LGE or the other defendants were not diligent either before or thereafter. More specifically, LGE's discovery of the Axis prior art after August 11, 2014 does not diminish or make less diligent Defendants' acts in preparing and serving the

preliminary contentions on that date. There is no basis for Summit 6's suggestion that Defendants sat on their hands notwithstanding notice of the Creamer Patent (Opp. at 1 and 7) until after serving the invalidity contentions. Indeed, the facts establish precisely the opposite; Defendants were diligent in analyzing dozens of prior art references from prosecution of the '482 and '515 patents,[1] invalidity contentions served in the prior case, and the re-examination proceeding of the '482 patent in order to select references to meet the Court's August 11 deadline for preliminary invalidity contentions. Defendants also conducted independent prior art searches and retained multiple search firms for that purpose. Defendants then distilled the voluminous prior art into invalidity contentions identifying 29 prior art references with claim charts totaling 3,400 pages against 73 claims that Summit 6 asserted at the time—all within a few months.

Moreover, after discovering documentation to the Axis prior art online on September 25, 2014, LGE remained diligent. In the subsequent few weeks, LGE acquired Axis devices and contacted Axis Communications' headquarters in Sweden to obtain technical details beyond the online documentation and to further assess the relevance and importance of the Axis prior art. Significantly, Summit 6 does not contest, and thereby concedes, Defendants' diligence *after* LGE's discovery of the Axis prior art, i.e., for the period following September 25, 2014.

To amend their preliminary invalidity contentions to add the Axis prior art, Defendants must show diligence, lack of prior knowledge, and good cause—each of which the motion papers amply demonstrate. Summit 6 can point to no lack of diligence or other reason why the motion should not be granted.

---

[1] The '515 patent alone identifies more than 200 prior art references disclosed by Summit 6 and another 26 disclosed by the Examiner during its prosecution (not counting the dozens of emails and claim chart exhibits that Summit 6 disclosed from the *Samsung* litigation).

## 2. Summit 6's hindsight identification of the Axis prior art rests on knowing both that a needle is in a haystack and where to look for it

Summit 6's hindsight argument that Defendants could have identified the Axis prior art because that art was publicly available also lacks merit. First, all § 102(a) and 102(b) prior art by definition must be "public" and thus could be found if defendants are assumed to know and understand all things public. But the law governing motions to amend does not employ such an assumption and instead allows for the addition of § 102(a) and 102(b) references in appropriate circumstances. Hence, general public availability is not determinative of diligence.

Summit 6 also is wrong in positing that Defendants were not diligent simply because it can now identify a number of ways that the Axis prior art might have been found sooner. See Opp. at 2-4. Those ways were all "found" by Summit 6 *after* LGE provided the roadmap that showed Summit 6 how the Axis prior art was connected to the Creamer Patent – that is, how and where to look. Tellingly, despite its own knowledge of the Creamer Patent for ten years or more as well as its duty to inform the Patent Office of all material prior art, Summit 6 never disclosed the Axis prior art to the USPTO prior to LGE's disclosure in October 2014.

In short, Summit 6's attack on diligence based on the purported ease of locating the Axis prior art fails because it is solely a product of after-the-fact hindsight informed by Defendant's motion to amend: it is easier to find a needle in a haystack, once one already knows there is a needle and where to look for it in the haystack. Here, it is uncontroverted that LGE did not know about the Axis prior art or the connection between Axis Communications and the Creamer Patent prior to its discovery on September 25, 2014 (Def. Brief at 6). Nor did any other defendant (nor, presumably, Summit 6 – which never disclosed the Axis prior art to the Patent Office or defendants), all of which is reasonable because the Creamer Patent and the Axis prior art are not related. In other words, finding the Axis prior art was difficult and took creativity because LGE

4

did not know whether the haystack of prior art still had more prior art needles to find, or that the Axis prior art needle was in the haystack.

LGE's diligent efforts stand in stark contrast with Summit 6's lack of diligence in identifying relevant historic LGE products that it sought to add to its infringement contentions. Summit 6 actually knew of the existence of the historic LGE products, the type of products for which it should look (*i.e.*, at least those with the accused MMS feature), and precisely where to look for such products (LGE's and its carriers' websites, product literature and advertisements)– –i.e., the haystack that contained the LGE device needles that Summit 6 knew to exist.  Here, Summit 6 argues that "there is no question that 'parties with the vast combined resources of Defendants could have located [the Axis prior art] with relatively little effort." But the issue is not the parties' resources.  As noted, none of the fifteen defendants, three Patent Examiners, and Summit 6, with all of their collective resources, knew of the Axis prior art before LGE's discovery and disclosure of it.  Summit 6's hindsight-based argument fails.

Courts have recognized in cases such as this that there are times when prior art first appears after invalidity contentions have been diligently prepared and served, and that in such circumstances amendment is warranted. *See, e.g., Guardian Techs., LLC v. Radio Shack Corp.*, No. 3:09-cv-00649, Dkt. No. 74 (N.D. Tex. Aug. 13, 2010); *UltimatePointer, LLC v. Nintendo Co., Ltd.*, No. 6:11-cv-00496, Dkt. No. 269 (E.D. Tex. May 28, 2013); *see also* Def. Brief. at 11-12.  Amendment is similarly warranted here.

### 3. Defendants had no prior knowledge of the Axis prior art

Each defendant has provided a declaration to certify that it had no prior notice or knowledge of the Axis prior art. Def. Brief. at 5, 9.  Summit 6 does not dispute those declarations.  In addition, none of the patents-in-suit references the Axis prior art, because neither Summit 6 nor any Examiner cited it during prosecution.  Hence, Summit 6's reliance on

5

*GeoTag, Inc. v. Frontier Communs. Corp.*, 2013 U.S. Dist. LEXIS 86358 (E.D. Tex. June 11, 2013) is misplaced.

In *GeoTag*, "the patent-in-suit itself disclose[d] both AOL and Compuserve, and Defendants' original invalidity contentions cited a system that explicitly ran on Prodigy," yet the defendants sought to amend to assert additional references that described these same prior art systems. *GeoTag*, 2013 LEXIS 86358, at *161-162. Here, however, none of the patents-in-suit in the present action cites Axis publications or devices in its cover pages or descriptions. Recognizing this deficiency, Summit 6 has to resort to the argument that the knowledge of the Creamer Patent equates to knowledge of the Axis prior art. But *GeoTag* does not address that issue or so hold. Nor should it because knowledge of the Creamer Patent prior art does not automatically lead to the discovery of the Axis prior art. If it were reasonable to make that leap of faith, then the Axis prior art would have been unearthed earlier by one of the seven prior defendants, the three Examiners, and Summit 6, because they all had such notice before this action was filed.

The court's decision in *L.C. Eldridge Sales Co. v. Azen Mfg. Pte*, 2013 U.S. Dist. LEXIS 186319 (E.D. Tex. Oct. 11, 2013) is distinguishable on the same grounds. In *Eldridge*, one of the two additional references was listed on the face of the patent-in-suit and the arguments based on the other reference were contained in an article disclosed with the defendants' invalidity contentions. *Eldridge*, at *7. Here, unlike in *Eldridge*, the Axis prior art was not referenced by any of the prior art listed on the asserted patent covers nor by any of the 29 prior-art references Defendants relied upon in their preliminary invalidity contentions.

### B. The Amendment Is Important

Summit 6 flatly mischaracterizes Defendants' position as "boil[ing] down to the following statement: the Axis products are important because they invalidate the asserted claims

6

of the Patents-in-Suit." Opp. at 10. As Defendants explained in their moving papers, however, the Axis prior art is important because it anticipates many of the remaining asserted claims and distinct because the Axis prior art includes not only the § 102(b) printed publications (the various manuals) but also § 102(b) public sale and use of the Axis prior art products. Def. Brief, at 14-15; Exs. 2-4, and 11 thereto. That the Axis prior art *products* are distinguished from the other prior art reference *publications* is clear and critical because this Court is the only forum in which Defendants can take discovery and prove that the Axis products were offered for sale and in public use prior to the critical date of the patents-in-suit. For example, Defendants will not be permitted to rely on the Axis products in an *inter partes* review, because the rules governing those proceedings permit petitioners to rely on only "patents or printed publications"—not prior art *products*.[2] Accordingly, if the Court excludes the Axis prior art from the present action, Defendants will not be able to challenge the invalidity of the patents-in-suit based on the prior public sale and use aspect of the Axis prior art in any other forum.

In addition, to explain the importance of the Axis prior art, Defendants provided claim charts spanning 858 pages detailing how the Axis prior art, including the devices and their commercial implementations, invalidates the asserted patent claims. Exs. 2-3 to Def. Brief (APPII0005-0862). Defendants further included evidence related to the commercial use and implementation of the Axis prior art by Weyerhaeuser and KinderCam. *Id.*

Summit 6 also is incorrect in arguing that the Axis prior art is cumulative of the other twenty-nine prior art references already asserted and thus should not be added to the present action. Opp. at 10. Summit 6 does not explain why the Axis art is allegedly cumulative. In any

---

[2] *See* 35 U.S.C. § 311(b) ("A petitioner in an inter partes review may request to cancel as unpatentable 1 or more claims of a patent only on a ground that could be raised under section 102 or 103 and only on the basis of prior art consisting of patents or printed publications").

7

event, its argument fails because "the importance of the amendment" is the proper inquiry, not "cumulativeness" of the additional prior art. *See* Opp. at 10. Moreover, Defendants—not the patent owner—should be permitted to select what they consider to be the best prior art to assert.[3]

Finding no mandatory or persuasive authority in support of its argument, Summit 6 cites the *UltimatePointer* defendants' *reply brief*. *See* Opp. at 10 (citing *UltimatePointer*, Dkt. No. 254 (Defs' Reply Brief). But the *UltimatePointer* court itself did not analyze cumulativeness; it instead addressed the importance of the amendment.. *See UltimatePointer*, Dkt. 269, at 6 (finding that "[d]efendants discovered the importance of the additional prior-art references after further investigation and cooperation by a third party").

Summit 6 further misses the point in arguing that Defendants do not demonstrate the importance of the amendment because they "fail to show that the additional prior art reference is non-cumulative in light of the other references already asserted." Opp. at 11 (citing *MacroSolve Inc. v. Antenna Software, Inc.,* 2013 U.S. Dist. LEXIS 102954 (E.D. Tex. July 23, 2013)). But, like *UltimatePointer*, *MacroSolve* does not support Summit 6's cumulativeness argument. Instead, whether a prior art reference is cumulative is only one of many factors a court looks to in assessing and weighing the importance factor. *MacroSolve* is distinguishable on its facts because unlike Defendants' showing here, including detailed invalidity claim charts, the defendants there did not explain why the amendment was important or how the additional

---

[3] Indeed, the importance of the Axis prior art is demonstrated in its election by all Defendants as prior art to the '482 and '557 patents in each of Defendants' December 15, 2014 Preliminary Election of Prior Art. As the Court is aware, the Parties entered a joint stipulation whereby Summit 6 would reduce the number of asserted claims against each Defendant, and in turn, each Defendant would reduce the number of asserted prior art references (both reductions occurred after Defendants' motion was filed). Dkt. No. 148. While Summit 6 did not choose all of the same claims to assert against each Defendant, and each Defendant did not choose all of the same prior art references, *every* Defendant chose the Axis prior art, subject to the Court granting Defendants' motion to amend.

references applied to the asserted claims, *MacroSolve*, at *15-16. Those facts, in combination with the fact that the additional references were cumulative, weighed against adding the additional references. *Id.* at *15-*17.

Regardless, as Defendants have shown, the Axis prior art, which includes on-sale and in-use products, is distinct and non-cumulative. Hence, this factor weighs in favor of amendment.

### C. Summit 6 Would Not Suffer Prejudice

Summit 6's argument that it will be prejudiced in claim construction if the Court adds the Axis prior art has no basis in fact and is unpersuasive. Opp. at 11. Summit 6 never identifies any act that it would or would not do, any construction it would add or revise, or any harm it would suffer, if the Axis prior art publications and products are added to the present action. Summit 6's unsupported speculation is not probative evidence of prejudice.

Furthermore, there is no merit to in Summit 6's complaint that the addition of the Axis prior art would require Summit 6 to devote time to the Axis prior art. Opp. at 11. That argument fails for at least the following reasons. First, the same argument would apply to any prior art added by amendment of preliminary invalidity contentions; therefore, a mere increased burden of addressing an added reference cannot *ipso facto* establish prejudice, because the rules permit amendment where the balance of factors permits it. Second, Summit 6 has now had notice of the Axis prior art and Defendants' intent to add it to in this action for two months, and received detailed, representative invalidity claim charts, two months before the opening claim construction briefs are due. Def. Brief. at 6-7. Hence, any burden is minimized and not prejudicial. Third, Defendants served their preliminary election of prior art on December 15, 2014, which reduces the number of asserted prior art references from 29 to 15. Each defendant made a conditional election of the Axis prior art, pending the Court's ruling on this motion. No additional or undue burden will be imposed on Summit 6 beyond the normal burdens imposed on

9

any patentee filing an infringement action against Defendants asserting invalidity defenses. Accordingly, Summit 6 has identified no prejudice that would weigh against amendment.

### D.     The Amendment Will Not Delay the Current Schedule

Summit 6 again misstates Defendants' arguments regarding scheduling. Summit 6 argues that "Defendants' arguments as to diligence are irreconcilable with their arguments related to delay in the Court's scheduling" because Defendants argue that "discovery related to the Axis products required 'extensive hard work and ingenuity' and took months to acquire." Opp. at 12. But what requires "extensive hard work and ingenuity" is the "[t]he task of *unearthing the evidence s*et forth in the claim charts." Def. Brief. at 10 (emphasis added). All of this work already has been done, without any impact on the schedule. Fact discovery on the Axis prior art is no different from normal discovery the parties will pursue here.

Furthermore, Summit 6 does not explain how the addition of the Axis prior art would possibly delay the current schedule. Summit 6 fails to identify what it will do differently, requiring a rescheduling, if the Axis prior art is added. In fact, it cannot, because expert reports are due months from now in April 2015, and all discovery (including fact and expert) is scheduled to close in July 2015. Also, Summit 6 admits to having already studied the Axis prior art sufficiently to represent to the Court—albeit inaccurately—that it is cumulative. The present schedule provides ample time for all parties to take discovery on the Axis prior art. This factor also weighs in favor of amendment.

### CONCLUSION

For the forgoing reasons as well as those in Defendants' opening brief, Defendants respectfully requests that the Court grant leave to amend the preliminary invalidity contentions to incorporate the newly discovered Axis prior art.

Dated:  December 29, 2014

Respectfully submitted,

By: s/     *Hsiwen Lo*
Deborah L. Sterling
Texas Bar No. 19170950
QUILLING SELANDER LOWNDS
    WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone:  214-871-2111
Facsimile:   214-871-2111
*dsterling@qslwm.com*

Steven J. Routh (*pro hac vice*)
ORRICK HERRINGTON & SUTCLIFFE LLP
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Tel.: (202) 339-8400
Fax: (202) 339-8500

Robert M. Isackson (*pro hac vice*)
ORRICK HERRINGTON & SUTCLIFFE LLP
666 Fifth Avenue
New York, NY 10103-0001
Tel.: (212) 506-5000
Fax: (212) 506-5151

Stacey E. Stillman (*pro hac vice*)
ORRICK HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Tel: (650) 614-7400
Fax: (650) 614-7401

Hsiwen Lo (*pro hac vice*)
ORRICK HERRINGTON & SUTCLIFFE LLP
2050 Main Street
Suite 1100
Irvine, CA 92614-8255
Tel: (949) 567-6700
Fax: (949) 567-6710

***Attorneys for Defendants LG ELECTRONICS, INC., LGE ELECTRONICS U.S.A., INC., AND LG***

11

|  | ELECTRONICS MOBILECOMM U.S.A., INC. |
|---|---|

By:  *s/ Mark D. Selwyn*
Mark D. Selwyn  (*pro hac vice*)
Jason Kipnis (*pro hac vice*)
Katherine D. Prescott (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
Telephone:  650 858 6000
Facsimile:   650 858 6100
mark.selwyn@wilmerhale.com
jason.kipnis@wilmerhale.com
katherine.prescott@wilmerhale.com

Kevin S. Prussia (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  617 526 6000
Facsimile:   617 526 5000
kevin.prussia@wilmerhale.com

Russell Emerson
HAYNES & BOONE
2323 Victory Avenue, Suite 700
Dallas, TX  75219
Telephone:  214 651 5328
Facsimile:   214 200 0884
russ.emerson@haynesboone.com

*Attorneys for Defendant APPLE INC.*

 *s/ D. Clay Holloway*
Steven D. Moore (*pro hac vice*)
smoore@kilpatricktownsend.com
KILPATRICK TOWNSEND LLP
Eighth Floor
Two Embarcadero Center
San Francisco, CA 94111
(415) 576.0200 (telephone)
(415) 576.0300 (facsimile)

By:  *s/ David J. Silbert*
David J. Silbert  (*pro hac vice*)
Leo L. Lam (*pro hac vice*)
Julie A. Duncan (*pro hac vice*)
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188
dsilbert@kvn.com
llam@kvn.com
jduncan@kvn.com

Brett C. Govett
FULBRIGHT & JAWORSKI
2200 Ross Ave., Suite 2800
Dallas, TX 75201-2784
Telephone:  214.855.8118
Facsimile:  214.855.8200
brett.govett@nortonrosefulbright.com

*Attorneys for Defendant TWITTER, INC.*

*s/ Philip Ou*
Yar R. Chaikovsky
Bryan K. James (*pro hac vice*)
Philip Ou (*pro hac vice*)
MCDERMOTT WILL & EMERY LLP
275 Middlefield Road, Suite 100
Menlo Park, California  94025-4004
Telephone: +1 650 815 7400
Facsimile: +1 650 815 7401

D. Clay Holloway (*pro hac vice*)
dholloway@kilpatricktownsend.com
Bonnie M. Grant (Tex. Bar No. 24067634)
bgrant@kilpatricktownsend.com
Akarsh P. Belagodu (*pro hac vice*)
abelagodu@kilpatricktownsend.com
Shayne E. O'Reilly (*pro hac vice*)
soreilly@kilpatricktownsend.com
KILPATRICK TOWNSEND LLP
Suite 2800
1100 Peachtree Street
Atlanta, Georgia 30309-4530
(404) 815-6500 (Telephone)
(404) 815-6555 (Facsimile)

GRUBER HURST JOHANSEN HAIL SHANK
MICHAEL K. HURST (Bar No. 10316310)
mhurst@ghjhlaw.com
JOSHUA M. SANDLER (Bar No. 24053680)
jsandler@ghjhlaw.com
1445 Ross Avenue
Suite 2500
Dallas, Texas 75202
Telephone: 214 855 6800
Facsimile:  214 855 6808

*Attorneys for Defendant MOTOROLA MOBILITY LLC*

Email: ychaikovsky@mwe.com
Email: bjames@mwe.com
Email: pou@mwe.com
Email: djong@mwe.com

E. Leon Carter (Texas Bar No. 03914300)
Linda R. Stahl (Texas Bar No. 00798525)
CARTER SCHOLER ARNETT HAMADA & MOCKLER, PLLC
Campbell Centre II
8150 N. Central Expressway, 5th Floor
Dallas, Texas 75206
Telephone: +1 214 550 8160
Facsimile: +1 214 550 8185
Email: lcarter@carterscholer.com

*Attorneys for Defendants HTC CORPORATION and HTC AMERICA, INC.*

13

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule 5.1(d) on December 29, 2014.

                                        s/ *Hsiwen Lo* .
                                        Hsiwen Lo