**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| SUMMIT 6 LLC, | |
| Plaintiff, | Case Action No. 7:14-cv-00014-O |
| v. | |
| HTC CORPORATION, HTC AMERICA, INC., LG ELECTRONICS INC., LG ELECTRONICS USA, INC., LG ELECTRONICS MOBILECOMM USA, INC., and MOTOROLA MOBILITY LLC, | JURY TRIAL DEMANDED |
| Defendants. | |
| SUMMIT 6 LLC, | |
| Plaintiff, | Case Action No. 7:14-cv-00106-O |
| v. | |
| APPLE, INC., | JURY TRIAL DEMANDED |
| Defendant. | |
| SUMMIT 6 LLC, | |
| Plaintiff, | Case Action No. 7:15-cv-0062-O |
| v. | |
| TWITTER, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF RULE 12(C) MOTION FOR
JUDGMENT ON THE PLEADINGS FOR LACK OF PATENTABLE SUBJECT
MATTER**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**ARGUMENT**................................................................................................................1

     **I.**    *Alice* **step one:  the concept of "pre-processing" content prior to publishing is merely an abstract idea, and is not a solution to an inherently technological problem**..............................................................2

     **II.**    *Alice* **step two:  there is nothing to transform the abstract idea into something patentable**....................................................................................6

     **III.**   **The claims fail the machine-or-transformation test**...........................8

     **IV.**   **There are no factual issues**......................................................................9

     **V.**    **Representative claims suffice under § 101**...........................................10

**CONCLUSION**.........................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Abele*,
    684 F.2d 902 (C.C.P.A. 1982) ..............................................................................8, 9

*Alice Corp. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ........................................................................... *passim*

*In re Bilski*,
    545 F.3d 943 (Fed. Cir. 2008), *aff'd, Bilski v. Kappos*, 130 S. Ct. 3218 (2010) ..................8, 9

*BuySAFE, Inc. v. Google, Inc.*,
    964 F. Supp. 2d 331 (D. Del. 2013)......................................................................4, 6

*California Inst. of Tech. v. Hughes Commc'ns Inc.*,
    2014 WL 5661290 (C.D. Cal. Nov. 3, 2014)...........................................................1

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014)..........................................................................10

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011)...................................................................1, 4, 8, 9

*DDR Holdings, LLC v. Hotels.com, L.P.*,
    773 F.3d 1245 (Fed. Cir. 2014).....................................................................4, 5, 10

*Dealertrack, Inc. v. Huber*,
    674 F.3d 1315 (Fed. Cir. 2012)............................................................................6

*Diamond v. Diehr*,
    450 U.S. 175 (1981)........................................................................................2

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
    758 F.3d 1344 (Fed. Cir. 2014)............................................................................7

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    2014 WL 4364848 (E.D. Tex. Sept. 2, 2014).........................................................3, 4

*Microsoft Corp. v. i4i Ltd. P'ship*,
    131 S. Ct. 2238 (2011)......................................................................................1

*OpenTV, Inc. v. Apple, Inc.*,
    2015 WL 1535328 (N.D. Cal. Apr. 6, 2015) ........................................................2, 4, 6

*Openwave Sys. Inc. v. Myriad France S.A.S.*,
  2011 WL 1832999 (N.D. Cal. May 13, 2011) ..........................................................................3

*Planet Bingo, LLC v. CKGS LLC*,
  576 F. App'x 1005 (Fed. Cir. 2014) .....................................................................................2, 4

*SiRF Tech., Inc. v. ITC*,
  601 F.3d 1319 (Fed. Cir. 2010)..................................................................................................9

*In re TLI Commc'ns LLC Patent Litig.*,
  2015 WL 627858 (E.D. Va. Feb. 6, 2015)...........................................................................3, 4

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)........................................................1, 5

**Statutes**

35 U.S.C. § 101.................................................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure Rule 12 .......................................................................10

Summit 6's Opposition confirms that the asserted patent claims do nothing but implement abstract ideas using generic computer components, which makes the claims *per se* unpatentable under *Alice Corp. v. CLS Bank International*, 134 S. Ct. 2347 (2014).   Regarding the first prong of the *Alice* test, Summit 6 does not dispute that "pre-processing" content is something that has been done for generations without the aid of a computer.  That the concept underlying the claims of the Summit 6 patents can be performed entirely by pen and paper, or by the human mind, is a telltale sign that they claim an abstract idea.

Summit 6 attempts to save the claims by suggesting that they address a technological problem because they cover "digital" content and are implemented by a "computer."  But the mere fact that claims recite "digital" content does not mean that they address a uniquely computer-based, technological problem.  As the Supreme Court directed in *Alice*, courts must look past the computer jargon to determine whether the claims amount to anything more than abstract ideas implemented with generic computer components.  Here, they do not, and therefore they are invalid under Section 101.

## ARGUMENT

There is no presumption of patentability under § 101.  *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709 (Fed. Cir. 2014) ("no presumption of eligibility should attach when assessing whether claims meet the demands of section 101") (Mayer, J., concurring).  Likewise, because patent eligibility is a question of law, there is no "clear and convincing" burden on defendants to show patent ineligibility under § 101.  *See Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2253 (2011) (noting that the clear-and-convincing standard "applies to questions of fact and not to questions of law."); *see also CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1369 (Fed. Cir. 2011) (noting that patent ineligibility is a question of law); *California Inst. of Tech. v. Hughes Commc'ns Inc.*, 2014 WL 5661290, at *2 n. 6 (C.D. Cal. Nov. 3, 2014) ("the clear and

convincing evidence standard does not apply to § 101 analysis, because § 101 eligibility is a question of law.").[1]  To satisfy Section 101, Summit 6 must point to something in the patent claims to show that they solve a uniquely technological problem.  It simply has not.

I.    *Alice* **step one:  the concept of "pre-processing" content prior to publishing is merely an abstract idea, and is not a solution to an inherently technological problem**

A telltale sign of an abstract idea is a claim that can be performed without a computer at all, *e.g.*, by pen-and-paper or manually.  With respect to manipulating and publishing content, people can do just that.  (*See* Opening Br. (Dkt. 263) at 7, 16-17.)  Summit 6 does not suggest otherwise.  Instead, Summit 6 asserts that such an analogy is "improper" because the patents "claim the ideas of pre-processing *digital* content—not paper photographs." (Opp'n at 3.)  Because digital content is comprised of "1's and 0's," according to Summit 6, processing such content necessarily cannot be performed manually by a human.  (Opp'n at 3.)  By Summit 6's reasoning, no claim to any computer-implemented invention—which necessarily involves digital "1's and 0's"—would ever be invalid under *Alice* and Section 101.  No case supports Summit 6.

To cover an abstract idea, the recited limitations need not *literally* exist on paper—rather, the pen-and-paper test is an "analytical tool" that serves as a barometer for courts to gauge the abstractness of an idea embodied by a claim.  *OpenTV, Inc. v. Apple, Inc.*, 2015 WL 1535328, at *4 (N.D. Cal. Apr. 6, 2015) (applying the pen-and-paper test to find claims unpatentable even though a literal execution would "require[] a computer operation"); *see also Planet Bingo, LLC v. CKGS LLC*, 576 F. App'x 1005, 1006 (Fed. Cir. 2014) (applying the pen-and-paper test to

---

[1] Summit 6's argument that its patents are an improvement over the prior art are misleading— improvements over the prior art have nothing to do with a 101 analysis.  Nor do Summit 6's arguments about the supposed value of the patents-in-suit and the licenses (including settlements) taken by others (*see* Opp'n at 5) have any relevance to the inquiry under *Alice* and Section 101.  *See Diamond v. Diehr*, 450 U.S. 175, 190 (1981) ("The question therefore of whether a particular invention is novel is wholly apart from whether the invention fails into a category of statutory subject matter." (internal quotation marks and citations omitted))

claims reciting "computer-aided … systems for managing the game of bingo"); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 2014 WL 4364848, at *2 (E.D. Tex. Sept. 2, 2014) (same, applying to claims reciting a "computer program product").

Again, the decision in *In re TLI Communications LLC Patent Litigation*, 2015 WL 627858 (E.D. Va. Feb. 6, 2015), is particularly instructive.  In *TLI*, the court held patent ineligible claims from a patent (Mattes) over which the claims of a Summit 6 patent stand finally rejected in reexamination.[2]  In so doing, the court applied the pen-and-paper test to claims involving "***digital*** images."  In particular, the claims required "transmitting," "extracting," and "storing" "digital images," *see id.* at *3, *i.e.*, the ***very type*** of manipulation of "1's and 0's" that Summit 6 contends makes its claims "computer-specific."  (Opp'n at 3.)

Although the Mattes patents claimed ***digital*** images as opposed to "paper" ones, in applying the pen-and-paper test, the *TLI* court did not consider whether a human could ***literally*** perform the recited functions digitally.  Rather, the court expressly rejected that argument and made clear that under *Alice*, the appropriate focus is on the concept underlying the asserted claim at a higher level of generality:

> [P]laintiff argues that the [Mattes] patent is not directed to a longstanding practice or idea because the idea of telephones transmitting ***digital images*** to servers is a ***recent technological development***.  This argument, like the previous argument, fails because . . . it focuses incorrectly on a concrete application of the idea—transmitting digital images to servers—***instead of properly focusing at a higher level of generality on the abstract idea or concept underlying the [Mattes] patent***.  Indeed, *Alice* supports rejection of plaintiff's novelty arguments.  In *Alice*, the claim at issue recited a method for creating shadow records for each counterparty to a transaction, obtaining start-of-day balances based on the parties' accounts, and adjusting the shadow records as

---

[2] The Court may consider the reexamination proceedings and other aspects of the intrinsic record as part of this motion for judgment on the pleadings.  *See Openwave Sys. Inc. v. Myriad France S.A.S.*, 2011 WL 1832999, at *4 (N.D. Cal. May 13, 2011).

> transactions occurred.  *See Alice*, 134 S.Ct. at 2359.  Despite these
> complex steps, the Supreme Court, at step one of the § 101
> analysis, distilled the claim there in issue to its ***essential purpose***,
> finding that the claim was directed to the concept of 'intermediated
> settlement.'  *Id.* at 2356.  Similarly, ***the concept underlying the
> [Mattes] patent is the longstanding abstract idea of taking,
> organizing, classifying, and storing photographs***.  And this
> conclusion should not be obscured by the convoluted 'patent-ese,'
> language used in the [Mattes] patent.

*Id.* at \*9-10.[3]

In *TLI*, as in *Planet Bingo*, *OpenTV*, and *Loyalty Conversion* (among others), the courts

did not require the computer-implemented method to literally exist on pen and paper, but used

the test to confirm the abstractness of the underlying ideas.  Accordingly, Summit 6's assertions

to the contrary should be summarily rejected.  Here, like the concept of modifying digital images

claimed by the Mattes patent, the concept of "pre-processing" digital content claimed by the

Summit 6 patents can be performed without a computer at all—and for decades has been.  The

only meaningful difference between the claim language and a human's performance of the

concept is that the computer may be able to perform the "pre-processing" faster.  Accordingly,

the claims relate to an abstract idea.  *See BuySAFE, Inc. v. Google, Inc.*, 964 F. Supp. 2d 331,

336 (D. Del. 2013) ("In fact, the patent's process would be performed exactly the same way by a

person and by a computer, the only difference being that the computer performs the process

significantly faster than a human.  Such a process is not patent-eligible."); *see also CyberSource*,

654 F. 3d at 1373 ("[A] method that can be performed by human thought alone is merely an

abstract idea and is not patent-eligible under § 101.").

To avoid judgment on the pleadings, Summit 6 seeks to redraft the claims by casting

them as akin to the claims in *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir.

2014).  But the Summit 6 claims are nothing like the claims in *DDR*—they do not attempt to

---

[3] Emphasis added throughout unless otherwise noted.

solve a technological problem arising only in the realm of computers, networks, or the Internet. The *DDR* patent was directed to the problem of how to retain website visitors who clicked on links to third-party advertisements, which was "a challenge particular to the Internet." *DDR*, 773 F.3d at 1257. Specifically, the *DDR* patents addressed the problem whereby clicking on a banner advertisement within a web page would instantly transport the user away from the host website to the page of an unrelated third-party. *Id.* Before the Internet, there was ***no such thing*** as a web page or a clickable banner advertisement. The Federal Circuit rejected analogizing this problem to "real world," "brick and mortar" advertisements, because when reading an advertisement in the real world, there is no possibility that the viewer will be "suddenly and completely transported outside the . . . store and relocated to a separate physical venue associated with the third-party—the analog of what ordinarily occurs in 'cyberspace' after the simple click of a hyperlink." *Id.* at 1258. Thus, the *DDR* patent claims were intended to address a specific technological challenge inherent to the Internet.

By comparison, the problem addressed by the Summit 6 patents is not inherent to the Internet or even computer systems generally. As shown by Defendants' John and Mary example, when publishing content in the non-digital "real world," the submitter may need to identify parameters by which the content (*e.g.*, an image) must be processed, modify the content according to those parameters, and deliver the processed content. Summit 6 does not contend differently. (Opp'n at 9.) Processing according to parameters is plainly not inherent to the Internet or computer systems, and merely inserting the "digital" label in the claims does not change this fact. *See Ultramercial*, 772 F.3d 709 (invalidating patent claims related to distributing "text data, music data, and video data" over the Internet). Because there is nothing inherently technological in the patents, they cover nothing more than an abstract idea.

II.    *Alice* **step two:  there is nothing to transform the abstract idea into something patentable**

Summit 6 wholly fails to point to anything in the claims that would transform the abstract idea of "pre-processing" content into something patentable.  Summit 6 does not dispute that the only physical components recited in the claims are generic hardware components.  The case law is clear that an abstract idea implemented with generic hardware components is not patent eligible.  *See Alice*, 134 S. Ct. at 2358 ("[M]ere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.").

The only supposed "inventive concept" Summit 6 points to is an alleged "built in intelligence" purportedly described in the specification.  (Opp'n at 9.)  "Built in intelligence" is itself an abstract idea, and, in any event, there is no "built in intelligence" ***recited in the claims***.  Pointing to passages in the ***specification*** is insufficient to establish that the patent ***claims*** are eligible.  *See Alice*, 134 S.Ct. at 2359 (explaining that the court must evaluate the claims "[o]n their face"); *id.* at 2355 ("First, we determine whether the ***claims at issue*** are directed to one of those patent-ineligible concepts."); *OpenTV*, 2015 WL 1535328, at *4 (the *Alice* inquiry focuses on what is claimed; not what is described in the specification).  Further, the alleged "built in intelligence" Summit 6 trumpets appears to be no more than the automation of the abstract concept of pre-processing content in accordance with pre-processing parameters.  Again, however, merely using a computer to "automate" an abstract idea cannot transform the abstract idea into patentable subject matter.  *See BuySafe*, 964 F. Supp. 2d at 336.

While Summit 6 contends that the "media object identifier" is the "crux of the alleged invention," (Opp'n at 12), it fails to explain what it is, why it is not a generic computer function, or how it aids the "pre-processing."  Summit 6's inability to provide this information confirms the abstractness of the claims.  *See, e.g.*, *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed.

Cir. 2012) ("The claims are silent as to how a computer aids the method, the extent to which a computer aids the method, or the significance of a computer to the performance of the method."). Furthermore, the "media object identifier" only appears in the asserted claims of the '557 patent.

Unable to point to anything specific in the claims that provides an "inventive concept," Summit 6 pastes into its brief a chart of several limitations and declares—without explanation— that they reflect "meaningful limitations."  (Opp'n at 10.)  But each of those limitations relates to the abstract "pre-processing" idea itself—indeed, each recites the "pre-processing" language. But step two under the *Alice* test focuses on what "***additional*** limitations" ***beyond those that define the abstract idea itself*** are present to ensure that the claim is "significantly more" than a "patent on the ineligible concept itself."  *Alice*, 134 S.Ct. at 2355.  Even the invalidated claims in *Digitech Image Technologies, LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014), had specific limitations, as they recited steps requiring the generating and combining of digital data.  There was nothing else in those claims, however, which restricted use of the abstract idea.  Thus, the Federal Circuit found that "[w]ithout additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible."  *Id.* at 1351; *see also Open Text*, 2014 WL 4684429, at *2 (invalidating claims under Section 101 that implemented the abstract idea "on a generic computer system without any meaningful limitations").[4]

---

[4] Even when Summit 6 refers to the patent specification that Summit 6 characterizes as "almost completely dedicated to explaining the manner in which the multiple computer components are combined with programming and software … to facilitate efficient pre-processing and distribution of digital content," all Summit 6 can muster to describe the claimed invention is an aspirational list of the invention's supposed "***benefits***" such as "the ***ability*** to submit media objects to web pages immediately without needing to overcome technical obstacles" or "'as is' without making modifications to the media objects prior to sending" and "the ***ability*** to provide web site visitors with an easy, error free way to contribute media."  (Opp'n at 13.)

In short, Summit 6's opposition confirms that the abstract idea of "preprocessing" content before publishing is implemented through "well-understood, routine, conventional activit[y]." *Alice*, 134 S. Ct. at 2359.  Hence, and notwithstanding Summit 6's general and repeated proclamation that the claimed invention "solves [a] digital problem with a digital solution" (Opp'n at 18, 19), the claims fail to provide any "inventive concept" that supports patentability. *Alice*, 134 S. Ct. at 2359.

## III.   The claims fail the machine-or-transformation test

The asserted claims fail both elements of the machine-or-transformation test.  First, Summit 6 does not even contest that the generic computer described in the claims is insufficient to satisfy the "machine" prong.  (Opp'n at 11 (discussing only the "transformation" prong).)  Nor can it.  Indeed, the fact that the claimed abstract method can be performed without a computer at all disposes of the "machine" prong of the test.  *See CyberSource*, 654 F.3d at 1375.

Regarding the "transformation" prong, Summit 6 misapprehends the test—merely manipulating data is not enough.  The transformation under *Bilski* must be a ***physical*** transformation, *i.e.*, "into a different state or thing."  *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008).  Here, there is no physical transformation.  Instead, there is just the processing of ***data***, *i.e.*, as Summit 6 puts it "1's and 0's."

While Summit 6 cites to *In re Abele* and *Bilski* to support its proposition that transforming data that represents physical and tangible objects is sufficient transformation under the *Bilski* test, these cases actually support Defendants' position.  In *In re Abele*, while the court held that a claim directed to a method of processing data for display in a picture was not directed to statutory subject matter, a dependent claim specifying that the raw data was "X-ray attenuation data produced . . . by a computed tomography scanner" was held patentable.  *In re Abele*, 684 F.2d 902, 908 (C.C.P.A. 1982).  In other words, the method of processing abstract

picture data (*i.e.*, digital content) was unpatentable, whereas the method was patentable when the data was expressly tied to a physical object via a scanner.  Summit 6's claims, however, do not describe any connection between the claimed digital content and any physical object.  Summit 6 argues that the claimed "digital content can be a digital image that represents a landscape, a building, or a person," but the claims themselves merely recite abstract digital content, and are thus more similar to the digital picture processing claim that was found invalid in *In re Abele*. And merely manipulating this data is not a transformation under *Bilski* because the claimed digital images, video, and audio are not—and they do not represent—physical objects or substances themselves.  *See CyberSource*, 654 F.3d at 1375 ("[T]he mere manipulation or reorganization of data . . . does not satisfy the transformation prong.").

## IV.    There are no factual issues

This issue can and should be decided now.  Subject matter eligibility is a "***threshold***" issue that should be decided as early as possible.  *In re Bilski*, 545 F.3d 950-51 (Fed. Cir. 2008), *aff'd, Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010).

Summit 6 points to a list of supposed disputed "factual" issues that purportedly preclude a ruling at this time, such as whether the concept underlying the patent claims can be performed without a computer.  (Opp'n at 16.)  Summit 6 also points to supposed "well-plead facts" alleged in the complaint.  (Opp'n at 17.)  But this is not a motion brought under *Twombly* or *Iqbal* to test the sufficiency of the pleadings.  The standard here is not whether the complaint alleges a "plausible claim to relief."  Rather, this motion challenges the patent-eligibility of the three asserted patents—a pure issue of law.  *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1331 (Fed. Cir. 2010) ("Whether a [patent] claim is drawn to patent-eligible subject matter is an issue of law.").

There are no factual allegations in the complaint that could change what the words of the patents say, the abstract concept to which they are directed, or the generic way in which they are

implemented by a computer.  Neither party submitted expert declarations.  There are no factual allegations at issue.  Summit 6 has cited no post-*Alice* case that holds that a "factual" analysis is necessary under § 101, and neither *Alice* itself nor the post-*Alice* cases have engaged in any "factual" analyses.  Even *DDR*, upon which Summit 6 so heavily relies, denied JMOL on the § 101 issue not because of any factual issues, but because the claims passed the two-part *Alice* test as a matter of law.  *DDR*, 773 F.3d at 1258.

The only issue that some courts have pointed to as potentially precluding a Rule 12 judgment of patent ineligibility is claim construction.  But the claims have already been construed and, in any event, ***Summit 6 does not point to a single claim construction issue that is implicated by Defendants' § 101 motion***.  Accordingly, Summit 6's list of purported "factual issues" are not factual issues at all and are no more than mere argument of counsel in an effort to delay resolution of this "threshold" and important issue.

## V.     Representative claims suffice under § 101

Defendants demonstrated that each and every limitation of each asserted claim covers unpatentable subject matter.  *See, e.g.*, Appendices.  While Summit 6 says otherwise, it does not explain why.  Nor does Summit 6 explain why the representative claims identified in the body of Defendants' motion are not "representative."  The law is clear that it is more than appropriate to analyze representative claims instead of all 62 asserted claims.  *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) ("addressing each claim of the asserted patents [is] unnecessary.").

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court declare all asserted claims of the '482, '515, and '557 patents invalid under 35 U.S.C. § 101 for failing to claim patent-eligible subject matter and grant judgment on the pleadings in Defendants' favor.

Dated:  April 20, 2015

Respectfully submitted,

*s/ Philip Ou*

By:  *s/Mark D. Selwyn*

Yar R. Chaikovsky
Philip Ou (*pro hac vice*)
Bryan K. James (*pro hac vice*)
PAUL HASTINGS LLP
1117 California Avenue
Palo Alto, California  94304
Telephone: +1 650 320 1800
Facsimile: +1 650 320 1900
Email: yarchaikovsky@paulhastings.com
Email: philipou@paulhastings.com
Email: bryanjames@paulhastings.com

E. Leon Carter (Texas Bar No. 03914300)
Linda R. Stahl (Texas Bar No. 00798525)
CARTER SCHOLER ARNETT HAMADA &
MOCKLER, PLLC
Campbell Centre II
8150 N. Central Expressway, 5th Floor
Dallas, Texas 75206
Telephone: +1 214 550 8160
Facsimile: +1 214 550 8185
Email: lcarter@carterscholer.com

**Attorneys for Defendants**
**HTC CORPORATION and HTC**
**AMERICA, INC.**

Mark D. Selwyn  (*pro hac vice*)
Jason Kipnis (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
950 Page Mill Road
Palo Alto, CA  94304
Telephone:  (650) 858-6000
Facsimile:  (650) 858-6100
mark.selwyn@wilmerhale.com
jason.kipnis@wilmerhale.com

Kevin S. Prussia (*pro hac vice*)
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
Telephone:  (617) 526-6000
Facsimile:  (617) 526-5000
kevin.prussia@wilmerhale.com

John R. Emerson (Texas Bar No. 24002053)
HAYNES and BOONE, LLP
2323 Victory Avenue, Suite 700
Dallas, TX  75219
Telephone:  (214) 651-5328
Facsimile:  (214) 200-0884
russ.emerson@haynesboone.com

**Attorneys for Defendant APPLE INC.**

*s/ David J. Silbert*
David J. Silbert  (*pro hac vice*)
Leo L. Lam (*pro hac vice*)
Julie A. Duncan (*pro hac vice*)
KEKER & VAN NEST LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188
dsilbert@kvn.com
llam@kvn.com
jduncan@kvn.com

Brett C. Govett
NORTON ROSE FULBRIGHT US LLP
2200 Ross Ave., Suite 3600
Dallas, TX 75201-2784
Telephone:  214.855.8118
Facsimile:  214.855.8200
brett.govett@nortonrosefulbright.com

**Attorneys for Defendant TWITTER, INC.**

*s/ D. Clay Holloway*
Steven D. Moore (*pro hac vice*)
smoore@kilpatricktownsend.com
KILPATRICK TOWNSEND LLP
Eighth Floor
Two Embarcadero Center
San Francisco, CA 94111
(415) 576.0200 (telephone)
(415) 576.0300 (facsimile)

D. Clay Holloway (*pro hac vice*)
dholloway@kilpatricktownsend.com
Bonnie M. Grant (Tex. Bar No. 24067634)
bgrant@kilpatricktownsend.com
Akarsh P. Belagodu (*pro hac vice*)
abelagodu@kilpatricktownsend.com
Shayne E. O'Reilly (*pro hac vice*)
soreilly@kilpatricktownsend.com
KILPATRICK TOWNSEND LLP
Suite 2800
1100 Peachtree Street
Atlanta, Georgia 30309-4530
(404) 815-6500 (Telephone)
(404) 815-6555 (Facsimile)

GRUBER HURST JOHANSEN HAIL
SHANK
MICHAEL K. HURST (Bar No. 10316310)
mhurst@ghjhlaw.com
JOSHUA M. SANDLER (Bar No. 24053680)
jsandler@ghjhlaw.com
1445 Ross Avenue
Suite 2500
Dallas, Texas 75202
Telephone: 214 855 6800
Facsimile:  214 855 6808

**Attorneys for Defendant MOTOROLA
MOBILITY LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 20th day of April 2015, all counsel of record

who are deemed to have consented to electronic service are being served with a copy of this

document through the Court's CM/ECF system pursuant to Local Rule 5.1(d).

_s/ John R. Emerson_
John R. Emerson